UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————————x

ELIZABETH PARRINO,

                          Plaintiff          DOCKET NO.

        -against-                    **COMPLAINT**
                                                *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK, MELISSA
AVILES-RAMOS, Chancellor and
KATHERINE RODI, Director of Employee
Relations,

                      Defendants

———————————————————————————x

DONNELLY, J.

CHO, M.J.

CV 24 - 8892

REC'D IN PRO SE OFFICE
DEC 30 24 PM12:32

**PLAINTIFF ELIZABETH PARRINO,** ("Plaintiff") proceeding Pro Se, as and for her

Summons and Complaint filed to protect her Constitutional rights against the above-

captioned Defendants the **DEPARTMENT OF EDUCATION OF THE CITY OF NEW**

**YORK, MELISSA AVILES-RAMOS,** Chancellor**, and KATHERINE RODI,** Director

of Employee Relations (henceforth "Defendants"), alleges upon knowledge as to her own

facts and upon information and belief as to all other matters:

### PRELIMINARY STATEMENT

1. This is a civil action seeking injunctive relief, monetary relief, including past and

    on- going economic loss, compensatory and equitable damages for the deprivation

    of Constitutionally protected due process rights given to her as a tenured teacher

    pursuant to 42 U.S.C. Section 1983, 1st, 5th and 14th Amendments to the United

    States Constitution, protected property and liberty rights under Education Law

1

§§3020 and 3020-a, and New York State and New York City Human Rights Law
(NYSHRL and NYCHRL), which prevent employers from (1) discriminating
against employees based on an employee's religious belief; (2) wrongfully forcing
Plaintiff into a suspension without pay and then terminating her, a tenured teacher,
by circumventing public policy employment, due process laws, and the property
and liberty rights of the Tenure Law.

2. Despite giving religious-based accommodations (RA) to more than 160 other
tenured employees similarly situated, and placing many unvaccinated employees
on reassignment ("rubber rooms") in Defendants' district offices and at home on
full salary, Defendants, acting at all times under color of law, did not grant
Plaintiff's religious exemption/accommodation request ("RA"), offered no
accommodation whatsoever, and terminated her.

3. Defendants engaged in widespread religious discrimination in implementing its
vaccine mandates by discarding due process rights outright, and adopting a facially
discriminatory religious accommodation policy that conditioned an exemption on
membership in a favored religion.

4. Defendants denied Plaintiff's request for an RA without any factual basis or proof
after Plaintiff requested a RA in September 2021. Then, she was punished by
Defendants for not getting the vaccine by being terminated after being placed on a
"problem code" by Defendant Katherine Rodi, Director of the Office of Personnel
Investigations. Rodi oversees the placement of the Problem Code on the personnel
files of educators working for Defendants. She is in charge of making sure that
anyone who is accused of misconduct – such as refusing to get vaccinated for any

reason- has a Problem Code placed on their personnel file so that any prospective employer is made aware of the so-called "bad acts" committed by the person being considered for a job. The Problem Code has been called a "no hire" flag. (PERB Case # U-32479, June 2022).

5. While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020).

6. The City created the COVID Vaccine Mandate ("CVM") in order to lay off as many municipal workers as possible. The lie told by the Defendants was, "to protect the children". However, the goal was to fire municipal workers who had employment protections soundly despised by the leaders of City politics.

7. Within their lies was a huge error. By placing Plaintiff's fingerprints into a "problem code" or no-hire database, LWOP became a disciplinary action that charged Plaintiff with misconduct/insubordination for refusing the vaccine. These actions by Defendants may clearly be defined as disciplinary retaliation, motivated by intentional harm with actual malice.

## PARTIES

8. Plaintiff was a tenured employee of the Department of Education of the City of New York in good standing as a tenured teacher since 2012. She had an impeccable reputation and record. Plaintiff was a public employee of Defendants within the meaning of an "employee" as defined in New York State Civil Service Law § 75-b(1)(b). Plaintiff lives in 292 Shelter Road, Ronkonkoma, N.Y., 11779.

9. Defendant the Department of Education of the City of New York ("DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, acts under color of law with its' principal place of business located in 65 Court Street in Brooklyn, New York 11201.

10. Defendant Melissa Aviles-Ramos is the Chancellor of the Department of Education of the City of New York ("DOE") and has a responsibility to oversee the NYC system of public schools located throughout all five (5) boroughs of the City of New York.

11. Defendant Katherine Rodi is employed by the Department of Education of the City of New York ("DOE") and started work as the Director of Employee Relations in 2012. She also has the responsibility of overseeing the DOE's Office of Safety and Health and the Office of Personnel Investigations, where she decides who among the DOE's employees are placed on a "Problem Code". She monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee.

## JURISDICTION AND VENUE

4

12.   The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, Equal Protection Clause, First, Fifth, and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Education Law §§3020 and 3020-a (the "tenure law"). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4)  for claims arising federal questions under 42 U.S.C. 1983.

13. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

14. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

15.  . This action seeks recovery of monetary damages for the violation of constitutional rights of property, liberty and due process enshrined in Federal Statute and state law protecting the rights of tenured employees in public service in

New York State.

16. Plaintiff was hired as a teacher by the New York City Department of Education ("DOE") in 2012. Plaintiff has earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law Sections §§3020 and 3020-a of the New York State Education Law. **EXHIBIT A.**

17. On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents.

18. On August 12, 2021 Harry Nespoli, Chairperson of the Municipal Labor Committee, wrote a letter to Renee Campion, Commissioner of the New York City Office of Labor Relations ("OLR") wherein Nespoli wrote about MLC's officers meeting with the City to negotiate working conditions for municipal employees who could not get the vaccine due to religious, medical, or other reasons. He also mentioned:

"Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under the collective bargaining agreements and law….no policy should be implemented before it is negotiated."

**EXHIBIT C.**

Once again, the Defendants ignored this plea in favor of intentional, malicious, mass terminations without due process.

19. In August 2020 Plaintiff requested and was approved for a medical accommodation work remotely due to increased risk for severe illness from COVID-19.  Thus, from September 2020 to June 2021 Plaintiff had the approved medical accommodation. **EXHIBIT F.**  However, a series of police power rulings followed, culminating in a

Department of Health Mandate issued on September 15, 2021 which ordered all employees of the NYC Department of Education ("DOE") to get vaccinated or stay away from their school buildings. Of note is ¶6, where it is written: "Nothing in the Order shall be construed to prohibit any reasonable accommodations otherwise required by law." Defendants ignored ¶6 and proceeded to deny religious accommodation appeals for no valid or lawful reason. **EXHIBIT B**

20. On September 10, 2021 the DOE sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021. This alleged "policy" never changed the terms of Plaintiff's tenured employment status, although claiming to do so. Indeed, although Scheinman insisted the terms of employment for DOE employees had been changed and the Award was NOT disciplinary, both of these statements were false and part of the conspiracy of harm brought by the City and the DOE against teachers such as Plaintiff. No citation to Education Law §3020 or 3020-a was included in the LWOP, in violation of her constitutional rights. See **EXHIBIT D**, Scheinman Award Dated September 10, 2021.  See also Judge Abadi's Order in the case of Kambouris v NYC Depart. Of Educ., Index No. 518863/2022, and **EXHIBIT E** LWOP.

21. Plaintiff was suspended without pay suddenly on October 4, 2021. Inexpicably, she was never informed that she also lost her UFT membership and her insurances – Life, Car, etc., leaving her in dire straits.

22. Plaintiff has not become vaccinated with a COVID-19 vaccine because she holds

sincere religious beliefs that prohibit her from getting vaccinated. She was denied by the DOE, she appealed to Scheinman's Appeal Panel and was denied; she wrote her plea to the Citywide Panel and was denied because of "undue hardship" – unexplained. See **EXHIBITS F, F(1), F(2), F(3), F(4).**

23. On 11/28/21, United States Court of Appeals for the Second Circuit merit panel concluded :

"It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation. In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."

Martin Scheinman's Appeal Process was thrown out as unconstitutional, also making the LWOP invalid as a matter of Law.

**EXHIBIT G** Court of Appeals Order

24. On March 24, 2022, the City of New York issued EMERGENCY EXECUTIVE ORDER 62, which gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work. This infuriated  municipal workers and DOE employees who were terminated for not getting vaccinated, because the City and the DOE showed their cards – the COVID Vaccine Mandate ("CVM") was an Order that was not neutral, and did not have general applicability, but targeted DOE educators and municipal workers. The CVM was forever afterwards seen as a discriminatory weapon used to punish employees at any and all levels of seniority, tenured or not. Everyone was fired. Except delivery people, volunteers to schools, cafeteria workers and school bus

drivers. None of these groups of people were ever told they had to get the vaccine

to work. See **EXHIBIT H**

25. In June, 2022, Arbitrator Martin Scheinman issued a second Citywide Award where

he apologized for setting up the LWOP. In Scheinman's June 27 Award Scheinman

wrote:

"Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
employees whose requests for a medical or religious exemption were denied. This is
because such employees intentionally decided to disregard the mandate they be
vaccinated by September 27, 2021, the date established by Commissioner Chokshi and
Mayor de Blasio."

See **EXHIBIT I**

26. On July 7, 2022 Attorney Austin Graff cited this fraud in a letter to this Court:

"Scheinman's words establish that but-for the Award, the NYCDOE could not have
placed the Plaintiffs on leave without pay.....the NYCDOE did not have any
authority to place the Plaintiffs on leave without pay without due process, thereby
violating Plaintiffs' due process rights. Scheinman's words are additional evidence
that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation
of 42 U.S.C. §1883 meaning the NYCDOE's Motion To Dismiss should be
denied......his actions caused Plaintiffs to suffer a denial of [their] federal statutory
rights, or [their] constitutional rights or privileges........but-for his Award, "the
Department was without the authority to remove these employees from the payroll
without providing a due process hearing..... admitting that his actions caused the
Plaintiff to "suffer[] a denial of [their] federal statutory rights, or [their]
constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d
239,245 (2d Cir. 1998)."

**EXHIBIT J** Scher Letter.

27. On or about April 28, 2022 Plaintiff was informed that the DOE's Office of

Personnel Investigations ("OPI") had placed her personnel file and fingerprints on

the "Problem Code" database in October, meaning that she would not be able to

work in any position for the NYC DOE or any vendor because she was deemed

guilty of misconduct/insubordination. Defendant Katherine Rodi has been Director

of OPI and in charge of placing problem codes on personnel files since 2012. Plaintiff was, by Rodi's action, blocked from getting paid by the NYC DOE or any vendor. Karen King at the UFT confirmed this action, and two Declarations were filed in the Kane v DeBlasio and Keil v City of New York federal cases. **EXHIBIT K** email from UFT Karen King; **EXHIBIT L**, Eric Amato email; **EXHIBIT M** Problem code "PR".

28. Plaintiff was found guilty of misconduct, then terminated for her religious beliefs. The misconduct charge was placed on Plaintiff's personnel file on October 4, 2021. Secretly. Plaintiff did not know anything about this until after April, 2022. Plaintiff saw proof of this fraudulent charging process when other teachers were denied unemployment benefits and made their denial of benefits public. The denial was based upon termination due to "misconduct", solely due to the fact that they, like Plaintiff, held sincere religious beliefs prohibiting getting vaccinated.

29. On February 10, 2023 Mayor Adams ended the COVID-19 vaccine mandate and made it voluntary. Yet no one at the DOE told Plaintiff she could re-apply for her job. Nonetheless, Plaintiff requested that she be reinstated to her former position, now that the CVM could not be used against her. She received no reply, evidence that the CVM was a cover up of the targeted mass terminations and layoffs at the DOE, not due to any alleged " student safety" issues. **EXHIBIT N**

30. On March 27, 2023, Plaintiff filed a Notice of Claim against the City of New York and the NYC Department of Education.

**CAUSES OF ACTION**
**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR RELIGIOUS DISCRIMINATION**

31. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 30 as if the same were fully set forth at length herein.

32. Plaintiff submitted to Defendants in September 2021 a statement on her sincere religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine.

33. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

34. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. .....
>
> Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

35. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to

submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

36. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones. All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

37. Plaintiff's unemployment and her unvaccinated status led directly to her being harassed and belittled by employees and her workplace peer and supervisors who were vaccinated. See: **NYC teachers with vaccine exemptions are being treated like pariahs,** https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

38. In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and

humiliated by her peers both inside and outside of the workplace. She was discriminated against because of her religious beliefs.

39. Defendants started with suspension without pay, then secretly charged Plaintiff with misconduct/insubordination, falsely informed her that they had changed the terms of her employment when no change took place, flagged her files with a "Problem Code" without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination. The U.S. Supreme Court has ruled that this is retaliatory discrimination: Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006) ("that **White suffered retaliatory discrimination** when she was reassigned to less desirable duties and suspended without pay").

40. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed, wrongfully terminated, and permanently stigmatized by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

41. Defendants' deliberate targets were employees similarly situated as the Plaintiff here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, Constitutionally protected property and liberty rights to continued employment. Defendants never liked this policy. Defendants wanted – and succeeded – in fraudulently harassing and discriminating against Plaintiff to get her out of her position quickly without due process. Their procedure, namely allowing Martin Scheinman to hold hearings where everyone would be denied their appeal, worked..... until November 28, 2021 when his Appeals process was thrown out in the Kane/Keil case 21-cv-2711 brought to this Court. **EXHIBIT G**.

42. On October 4, 2021 Plaintiff's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB) to taint and scar Plaintiff's character and career. Anyone with the flag or Code on their fingerprints cannot get paid by the Defendants or any of the thousands of vendors working in the City of New York. This scarlet letter is extremely damaging to Plaintiff's career and character. See the following post on Parentadvocates.org:

"The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints"
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

The Code is accessible by government agencies and principals, and UFT Representatives, among others. The label means that the individual has committed misconduct, and that Scheinman gave false information in his September 10 Award when he wrote that LWOP was not disciplinary. It was, and he knew it. He wrote and negotiated the CBA for the UFT.

43. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of her Constitutional rights to property, liberty and a due process 3020-a hearing, 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

### AS AND FOR A SECOND CAUSE OF ACTION
### FOR FAILURE TO REASONABLY ACCOMMODATE
### THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

44. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

14

paragraphs 1 through 43 as if the same were fully set forth at length herein.

45. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine.

46. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

47. No reasonable accommodation was offered to Plaintiff yet other employees of the Defendants received accommodations for their religious and/or medical accommodations.

48. At all relevant times Defendants knew that they had "rubber rooms" and reassignments to home as the new workplace for employees similarly removed from their positions in the Department:

New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions
https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html

and "rubber homes"

Idled NYC educators do nothing but sign in remotely, even from Europe
https://nypost.com/2023/01/14/idled-nyc-educators-do-nothing-but-sign-in-remotely-even-from-europe/ By Susan Edelman, NY POST, Published Jan. 14, 2023

49. Defendants never engaged in a dialogue about Plaintiff's accommodation or reassignment. This deprivation of a lawful procedure was intentional, acted on under color or law, and pursued in bad faith.

50. Defendants claimed "undue burden" while simultaneously omitting information of

their long-term policy re-assigning employees to "rubber rooms", some of which held about 1-2000+ employees from 2002 until 2010. After 2010 Defendants scattered the re-assigned employees who could not be near children to rooms throughout New York City. The re-assigned employees not only were not told what they were guilty of, but were awaiting charges of incompetency or misconduct for some act that may never have happened. A problem code was put on these re-assigned employees when they were removed from their classrooms and school. Some remained reassigned to the rubber room for more than 7-15 years. All reassigned personnel received their full salary and benefits while they waited for a hearing unless they were removed from salary at a probable cause hearing. During the pandemic, these re-assigned employees awaited their §3020-a hearings at home.

51. Defendants could have given all the so-called "miscreants" similarly unvaccinated as Plaintiff, a reassignment to home or a rubber room. Defendants chose to claim that no accommodation was available and any accommodation was an "undue burden". This lack of consideration directly contradicts the ruling in Groff.

52. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

<u>**AS AND FOR A THIRD CAUSE OF ACTION:**</u>
<u>**VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL**</u>
<u>**PROTECTION CLAUSE**</u>

53. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 52 as if the same were fully set forth at length herein.

54. Defendants while acting under the color of law, unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

55. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

56. New York City was the only location in New York State which mandated the vaccine or termination for public employees. New York City was also the only place where tenured educators were suspended without pay and terminated without a 3020-a hearing. Every other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing. Anyone designated for charged misconduct received a 3020-a hearing. As a direct result of Defendants'

violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

57. Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages including backpay.

58. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her religious beliefs, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her disabling condition, in violation of 42 U.S.C. § 1983; 1st, 5th and 14th Amendments due process clauses; Tenure rights and Law; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT TO DENY PLAINTIFF HER PROPERTY AND LIBERTY RIGHTS TO A CONSTITUTIONALLY PROTECTED DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 58 as if the same were fully set forth at length herein.

60. Plaintiff was punished with wrongfully being disciplined for her alleged "insubordination" in not getting vaccinated with the COVID vaccine  without any §3020-a hearing and no accommodation offers or review by the Defendants.

61. Education Law Section §3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;

2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

See EXHIBIT A

62. Plaintiff did not, at any time, waive her rights to a §3020-a hearing on her religious exemption/accommodation. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged and her fingerprints tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI.

63. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

64. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

"Presuming waiver from a silent record is impermissible. The record must show, or thise must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

65. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

66. Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause. Judge Desmond Green in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that:

> "New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a, 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985].
> New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " Education Law § 3020."

See Kambouris v NYC DOE, Index no. 518863/2022, Decision dated January 5, 2023. Defendants DOE did not appeal.

67. Plaintiff did not have standing to protest the Scheinman Award issued to all teachers in September 2021, so she was forced to submit to the procedure that subsequently led to her wrongful termination without due process. Clearly, Scheinman made up the LWOP by changing the commonly known AWOP ("Absence Without Pay") which is disciplinary to a forced leave without pay in order to throw out senior, tenured teachers such as Plaintiff without a due process hearing.

68. Scheinman and the Defendants committed a fraud against Plaintiff and breached an implied covenant of good faith and fair dealing by issuing lawless requirements of

procedure that Plaintiff could not comply with yet relied on to her detriment. Scheinman's actions and those of the Defendants in this case were intentional, malicious, and deliberate.

69. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religious beliefs, and unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religious beliefs, in violation of Education Law §3020, §3020-a (Tenure Law); 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

70. Plaintiff requests (1) backpay and all benefits and pension steps due after Defendants' violations of law, public policy and rights removed her from her salary under color of law and deprived her of Constitutionally protected due process;  (2) reinstatement to her former working title with a salary that reflects 2 ½ years of missing time and wages, with pension steps and raises included; (3) judgment against Defendants for refusing to, or neglecting to, prevent such deprivations and denials to Plaintiff.

71. Plaintiff has had actual, documented impairments and damages to her life and career.


## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested

that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

      1.      Awarding Plaintiff her tenured position, salary steps and raises, earned before October 2021, in full, with benefits; and

      2.      Awarding Plaintiff all the back pay owed since she was removed from her salary in 2021;

      3.      Considering Plaintiff is prose, an opportunity to Amend her Complaint after submission of Defendants' papers.

      4.      Granting such other and further relief that the Court deems just and proper.

61.

Dated: December 30, 2024
      Ronkonkoma, N.Y.

Elizabeth Parrino

# Exhibit A



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
89 Washington Ave., Room 987 EBA
Albany, New York 12234

Ph:   (518) 473-2829
Fax:  (518) 402-5940

(09/21)

## Rights of Tenured Employees
*(This document only applies to cases where charges were filed on or after July 1, 2015.)*

**This document, while not intended to be exhaustive, describes certain rights of tenured employees in Education Law §3020-a and §3020-b\* proceedings. The information contained in this document should not act as a substitute for the applicable statutes or regulations. Individuals are advised to consult with an attorney as significant adverse consequences may result from these proceedings.**

> ### Special Notice to Tenured Employees of the
> ### New York City Department of Education
>
> *Many of the provisions in Education Law §3020-a and/or §3020-b, including those described in this document, have been substantially modified by the collective bargaining agreement and subsequent amendments and/or revisions between the United Federation of Teachers ("UFT") and the New York City Department of Education ("NYCDOE"). Education Law §3020(3) permits the NYCDOE to modify the provisions of Education Law §3020-a through the collective bargaining process. If you are a tenured employee of the NYCDOE, you are advised to review your collective bargaining agreement and any amendments and/or revisions thereto to determine whether your rights may deviate from the provisions described below. If you have any questions, you should consult with the UFT and/or an attorney.*

Tenured individuals cannot be disciplined or removed from employment except for "just cause" pursuant to Education Law §3020. The procedures for such discipline or removal are set forth in Education Law §3020-a, Education Law §3020-b, and the Commissioner's Regulations 8 NYCRR Ch. II, Sub. C. Part 82-3.

### Charges

1. The employing board of education ("board") must determine, by a majority vote, that probable cause exists to bring a disciplinary proceeding against the tenured employee ("employee").
2. If the board finds probable cause, the tenured employee must be provided with a written statement specifying: a.) the charges in detail; b.) the maximum penalty the board will seek if the employee is found guilty of the charges or that will be imposed if the employee does not request a hearing; and c.) a copy of this form outlining the employee's rights. The charges must be sent by certified or registered mail, return receipt requested or by personal delivery.
3. Charges cannot be brought more than three years after the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed.

### Suspension Pending Hearing

The employee may be suspended pending a hearing on the charges and the final determination thereof. An employee may be suspended without pay if: a.) the employee has pleaded guilty to or has been convicted of certain felony drug crimes or a felony crime involving the physical abuse of a minor or student; or b.) the employee is charged with misconduct constituting physical or sexual abuse of a student. Employees suspended without pay due to charges constituting physical or sexual abuse of a student, are entitled to an expedited probable cause hearing.

### Termination Without Hearing

The employee shall be terminated without a hearing upon conviction of a sex offense as defined by Education Law §305(7-a)(b)(2). Employees acting as school administrators or supervisors shall be terminated without a hearing upon conviction of defrauding the government as defined by Education Law §305(7-b)(b)(2).

### Hearing Request/Failure to Request

1. Within 10 days of receiving charges, the employee must provide a written request to the clerk or the secretary of the employing board if the employee desires a hearing on the charges.
2. In the written request for hearing, the employee should indicate the name and contact information for the attorney who will represent the employee, if any. Such attorney shall be authorized to receive all correspondence related to the proceeding on the employee's behalf.

## Rights of Tenured Employees *(cont.)*

3. If the employee does not request a hearing within 10 days of receipt of the charges, the employee shall be deemed to have waived the right to a hearing if there is an unexcused failure to request a hearing.
4. If the employee waives his right to a hearing, the board shall proceed, within fifteen days, by a majority vote to determine the case and fix the penalty, if any, to be imposed.

### Hearing Officer Selection Process

1. Within 3 business days of receipt of the written hearing request, the clerk or secretary of the board shall notify the commissioner of the need for a hearing.
2. Upon receipt of such notification, the commissioner shall request that the American Arbitration Association provide a list of names of individuals to potentially serve as hearing officers along with relevant biographical information concerning the individual. The commissioner shall forthwith send such list to both parties.
3. For charges brought pursuant to §3020-a, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 15 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 15 days, the commissioner shall appoint a hearing officer from the list.
4. For charges brought pursuant to §3020-b, where an employee has received two consecutive ineffective ratings, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 7 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 7 days, the commissioner shall appoint a hearing officer from the list.
5. For charges brought pursuant to §3020-b, where an employee has received three consecutive ineffective ratings, the commissioner shall appoint a hearing officer from the list.

### Pre-Hearing Conference

1. The pre-hearing conference shall be private.
2. The hearing officer shall hold a pre-hearing conference within 10-15 days of receipt of notice from the commissioner confirming his or her acceptance to serve in such position, in the case of a standard or expedited §3020-a hearing.
3. For expedited §3020-b hearings where the employee has received 2 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 7 days of receiving notice confirming the hearing officer's agreement to serve.
4. For expedited §3020-b hearings where the employee has received 3 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 5 days of receiving notice confirming the hearing officer's agreement to serve.
5. At the pre-hearing conference, the hearing officer has the power to: a.) issue subpoenas; b.) hear and decide motions and applications made by either party; c.) set a schedule for full and fair disclosure of witnesses and evidence for both parties; and d.) set the time and place for hearings to ensure that the hearing is conducted within the statutory timelines.
6. Generally, pre-hearing motions must be made on written notice to the hearing officer and adverse party at least 5 days before the pre-hearing conference. Any pre-hearing motions not made as provided for herein shall be deemed waived. However, for expedited hearings, written notice to the adverse party shall be made no later than 2 days before the pre-hearing conference.

### General Hearing Procedures

1. The hearing will be conducted by a single hearing officer.
2. The employee shall have a reasonable opportunity to defend his or herself, including making any additional motions and applications and an opportunity to testify on his or her own behalf, however, the employee shall not be required to testify.
3. Each party has the right to be represented by counsel, and may subpoena and cross-examine witnesses. All testimony shall be under oath.
4. An accurate record of the hearing shall be kept at the expense of the commissioner. Upon request, the employee is entitled to a copy of the record without charge.
5. If the hearing officer needs to be replaced and the parties fail to notify the commissioner of their mutually agreed upon replacement within 2 business days, the commissioner shall select the replacement.

## Rights of Tenured Employees *(cont.)*

6. At the conclusion of the testimony, the hearing officer may allow the parties to submit memoranda of law; however, such submission may not delay the date that the hearing officer is required to render a decision.
7. In general hearings must be completed within 60 days of the pre-hearing conference. Please see below for the time periods applicable to particular expedited hearings.
8. In general, all evidence must be submitted within 125 days of the filing of charges and no additional evidence shall be accepted after such time, absent extraordinary circumstances beyond control of the parties.

### Expedited Hearing Based on Revocation of Certification

1. If the charges are based upon revocation of the employee's certification, an expedited hearing must be held.
2. The hearing shall commence within 7 days of the pre-hearing conference and is limited to one day. The hearing may not be adjourned except upon request of a party and only for good cause as determined by the hearing officer.

### Expedited Hearing Based on Charges Constituting Physical or Sexual Abuse of Student

1. If the charges are based upon allegations of physical or sexual abuse of a student, an expedited hearing must be held.
2. The hearing shall commence within seven days after the pre-hearing conference and shall be completed within sixty days after the pre-hearing conference. Adjournments may not be granted that would extend the hearing beyond 60 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Expedited Hearing Based on Two Consecutive Ineffective APPR Ratings

1. The Board may bring charges alleging incompetence based upon two consecutive ineffective APPR ratings, in which case an expedited hearing would be held, but the board is not required to bring charges.
2. The hearing must begin within 7 days of the pre-hearing conference and be completed within 90 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 90 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.
3. The charges must allege that the board has developed and substantially implemented a teacher or principal improvement plan for the employee following the first evaluation in which the employee was rated ineffective and the immediately preceding evaluation if the employee was rated developing.

### Expedited Hearing Based on Three Consecutive Ineffective APPR Ratings

1. The Board shall bring charges alleging incompetence where any teacher or principal receives three consecutive ineffective APPR ratings, in which case an expedited hearing must be held.
2. The hearing must commence within 5 days of the pre-hearing conference and be completed within 30 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 30 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Decision

1. With the exception of expedited hearings, the hearing officer shall render a written decision within 30 days of the last hearing date.
2. For expedited hearings, the hearing officer shall render a written decision within 10 days of the last hearing date.
3. The commissioner must immediately forward copies of the decision to the parties.
4. The hearing officer shall render a written decision that includes findings of fact and conclusions, based upon the findings of fact, as to each charge and shall state the penalty, or other action, if any, against the employee on each charge.

## Rights of Tenured Employees *(cont.)*

5. In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, a suspension for a fixed time without pay, or dismissal.

6. In determining penalty, the hearing officer shall give serious consideration to the penalty recommended by the board, and if the hearing officer imposes a different penalty, then the hearing officer must indicate the reasons for the alternate penalty based upon the record.

7. Within 15 days of the receipt of the hearing officer's decision, the board shall implement the decision. If the employee is acquitted of the charges, he or she must be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record.

8. The hearing officer shall indicate in the decision whether any of the charges brought by the board were frivolous as defined by the Civil Practice Law and Rules §8303-a. If the hearing officer finds that all of the charges were frivolous, the hearing officer shall order the board to reimburse both the employee and the department reasonable costs that were incurred. If the hearing officer finds that some, but not all of the charges were frivolous, the hearing officer shall order the board to reimburse a portion of the reasonable costs incurred to the department and the employee.

### Appeal

1. Not later than 10 days after receipt of the hearing officer's decision, either the employee or the board may make an application to the New York State Supreme Court to vacate or modify the hearing officer's decision pursuant to Civil Practice Law and Rules §7511.

2. The filing of the pendency of an appeal shall not delay the implementation of the hearing officer's decision.

### Restoration of Rights

If an employee who was convicted of a felony crime as specified in Education Law §3020-a(2)(b) has his or her conviction reversed, the employee, upon application, shall be entitled to have his or her pay and other emoluments restored, for the period of time extending from the date of suspension to the date of the decision.

*Pursuant to §§ 30-2.14 and 30-3.17 of the Rules of the Board of Regents, educators whose Annual Professional Performance Reviews (APPRs) include results from the State's growth model (i.e., teachers of grades 4-8 ELA and Mathematics; principals of buildings including those grade levels; and principals of buildings including all of grades 9-12) or any other measures based on the grades 3-8 ELA and Mathematics State assessments will receive both an "original" evaluation and a "transition" evaluation. This process will continue through the 2018-19 school year, during the time that the State transitions to new ELA and Mathematics learning standards and assessments and during that time the State will explore potential revisions to the evaluation framework. The "original" evaluation will include the results of the State's growth model and any other measures based on the grades 3-8 ELA and Mathematics State assessments. This evaluation is provided for advisory purposes only and cannot be used for employment related decisions. Affected educators will also receive a "transition" evaluation that excludes the above referenced measures. During the transition period, only this transition score and rating will be used for purposes of employment decisions, including tenure determinations and for purposes of proceedings under Education Law §§3020-a and 3020-b.

# Exhibit B

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## DEPARTMENT OF EDUCATION
## EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS

**WHEREAS,** on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS,** on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS,** pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS,** pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS,** the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS,** on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

      **WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

      **WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

      **WHEREAS,** a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

      **WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

      **WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

      **WHEREAS,** unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

      **NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

      **RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

      I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2. An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3. Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
   a. Been fully vaccinated; or
   b. Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Received the first dose of a two-dose vaccine.

4. Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5. For the purposes of this Order:

   "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

   "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

   "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Proof of vaccination" means proof that an individual:
   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

   a. Students attending school or school-related activities in a DOE school setting;
   b. Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
   c. Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
   d. Individuals present in a DOE school building to make repairs at times when students are not present in the building;
   e. Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
   f. Individuals entering for the purpose of COVID-19 vaccination;
   g. Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
   h. Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7. This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

Page 4 of 4

# Exhibit C

# Municipal Labor Committee

55 Water Street, 23rd Floor / New York, NY 10041 / (212) 815-1474

**CHAIRPERSON**
HARRY NESPOLI
Local 831, I.B.T. Uniformed
Sanitationmen's Association, AFL-CIO

**CO-CHAIRPERSON**
HENRY A. GARRIDO
District Council 37, AFSCME, AFL-CIO

**EXECUTIVE VICE-CHAIR**
MICHAEL MULGREW
United Federation of Teachers, AFL-CIO

**SECRETARY**
GREGORY FLOYD
Local 237
City Employees Union, I.B.T., AFL-CIO

**TREASURER**
MARK CANNIZZARO
Council of School Supervisors &
Administrators

**VICE CHAIRPERSONS**

ANDREW ANSBRO
Uniformed Firefighters Association

BENNY BOSCIO, JR.
Correction Officers Benevolent Association

BARBARA BOWEN
Professional Staff Congress
City University of New York

JOSPEH COLANGELO
S.E.I.U. New York City Local 246

ROBERT CROGHAN
Organization of Staff Analysts

JUDITH A. CUTCHIN
New York State Nurses Association

PAUL DIGIACOMO
Detectives' Endowment Association

JAMES LEMONDA
Local 854, Uniformed Fire Officers
Association, AFL-CIO

MARTIN A. LYDON
District Council of Carpenters, AFL-CIO

WILLIAM M. LYNN
International Union of Operating Engineers
Local 30, AFL-CIO

JOSEPH MANNION
Sanitation Officers Association

GLORIA MIDDLETON
Local 1180, NYC Administrative
Employees, CWA, AFL-CIO

FRANK PROSCIA, M.D.
Doctors Council

PETER STEIN
Local 508, NYC Lifeguard Supervisors,
AFSCME, AFL-CIO

LOUIS TURCO
Lieutenants Benevolent Association

MAF MISBAH UDDIN
Local 1407, NYC Accountants, Statisticians
& Actuaries, AFSCME, AFL-CIO

ANTHONY WELLS
Local 371, Social Service Employees,
AFSCME, AFL-CIO

**Executive Secretary**
ELLEN MEDWID

August 12, 2021

Hon. Dean Fuleihan
First Deputy Mayor
City of New York
City Hall
New York, New York 10007

Hon. Emma Wolfe
Chief of Staff and
  Deputy Mayor for Administration
City of New York
City Hall
New York, New York 10007

Hon. Renee Campion
Commissioner
New York City Office of Labor Relations
22 Cortlandt St.
New York, NY 10007

Dear All:

I write to express the severe concern—and great disappointment—of the MLC Union leaders on the lack of progress in arriving at a negotiated program to implement the City's vaccine/testing policy.

Several weeks ago, the City announced, without prior consultation or bargaining with the Unions, a policy that would require public employees either to be vaccinated or be tested weekly to avoid suspension without pay. Despite this unilateral action, with an eye towards the unfortunate advance of the Delta variant, the MLC's officers agreed to meet and discuss the proposed policy with you and numerous other key City officials on July 28th. The tenor of the discussion, we thought, was the City's desire to work collaboratively with the Unions to navigate a path towards achieving the objectives of the policy.

City leadership collectively asked the Union leaders to provide proposals and raise concerns, which we did. Primary among those concerns was the major logistical hurdle of providing timely and accessible testing to the likely 100,000 City workers who, despite the encouragement of many (including Union leaders), would opt out of vaccination for medical, religious and other reasons. This major dilemma, the Unions warned, would exist even if the policy was successful in encouraging a significant portion of the currently unvaccinated employees to vaccinate.

Page 2…Vaccine/Testing Policy

The MLC officers cautioned that logistics take time to work out, would necessarily be agency specific in places and that, without proper planning, the City would be in a position of having to order so many employees home without pay that there would be insufficient staffing to carry out the duties required to appropriately provide services to the residents of the City. We also raised fundamental questions, including, with regard to testing, whether it would be performed at the work site and on work time, and if not, where testing would be available and how workers would be compensated for complying with the mandated policy.

The discussion concluded on a hopeful note with the City agreeing to take back many of the comments, concerns and suggestions for consideration and to continue the discussions with the Unions. *That was two weeks ago.* While there have been sporadic discussions with some, MLC inquiries regarding these essential matters have essentially gone unanswered. This is unacceptable.

The MLC and its leaders have been firm and consistent that while the Unions support encouraging vaccination (and have made considerable efforts on their own to encourage their members to vaccinate), they will not abdicate their legal right and responsibility to protect the rights of workers to opt for either vaccination or testing, to be held harmless for both the time and cost of testing and vaccination, and to have a fair process for any form of discipline. Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under collective bargaining agreements and law.

Accordingly, we seek a prompt meeting to continue this vital discussion. In the meantime, no policy should be implemented before it is negotiated.

Sincerely,

*Harry Nespoli*

Harry Nespoli
Chair

cc:   Henry Garrido
      Co-Chair
      District Council 37

      Michael Mulgrew
      Executive Vice Chair
      United Federation of Teachers

      Gregory Floyd
      Secretary
      Local 237, City Employees Union

      Mark Cannizzaro
      Treasurer
      Council of School Supervisors & Administrators

# Exhibit D

```
-------------------------------- X
In the Matter of the Arbitration
                                  X
          between
                                  X
BOARD OF EDUCATION OF THE CITY                Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF    X
NEW YORK
                                  X
          "Department"
                                  X
          -and-
                                  X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO             X

            "Union"               X

-------------------------------- X
```

**APPEARANCES**

    **For the Department**
     Renee Campion, Commissioner of Labor Relations
     Steven H. Banks, Esq., First Deputy Commissioner
     and General Counsel of Labor Relations

    **For the Union**
    STROOCK & STROOCK & LAVAN, L.L.P.
      Alan M. Klinger, Esq.

    Beth Norton, Esq., UFT General Counsel
    Michael Mulgrew, UFT President

**BEFORE**: Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021.  The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic.  During that time, we have seen substantial illness and loss of life.  There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant.  Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible.  Yet, municipal employees have often borne great risk.  The Department and the UFT are no exception.  The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year.  Educators at all levels strove to deliver the best experience possible under strained circumstances.  For this

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

5

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

## Opinion

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

## I.    Exemption and Accommodation Requests & Appeal Process

As an alternative to any statutory reasonable accommodation

6

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

   A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)— with contraindications delineated in CDC clinical

7

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

10

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. **Leave**

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

    i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

    ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

    iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

vii.    All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. **Separation**

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE.  Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK        )
                         )    ss.:
COUNTY OF NASSAU         )


   I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18

# Exhibit E

Notice of Leave Without Pay - PLEASE READ

NYCDOE <noreply@schools.nyc.gov>

Sat 10/2/2021 3:10 PM

To:                    @schools.nyc.gov>



Dear                   ,

You are receiving this message because **you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's <u>COVID-19 Vaccine Mandate</u>**. If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. **This means you must <u>not</u> report to your work or school site beginning Monday, October 4th.**

While you are on Leave Without Pay (LWOP), you:

- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the **<u>DOE Vaccination Portal</u>**

1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the **<u>DOE Vaccination Portal</u>**, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door.  You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately.  Failure to return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time.

Employees represented by UFT or CSA who have been placed on LWOP due to vaccination status may select (in SOLAS) special separation or leave options per the arbitration award:

- **Separation with benefits** (available in SOLAS as of Monday, October 4): Employees choosing to separate under this option:
  - **Must share their intention to separate via SOLAS by October 29, 2021.**
  - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
  - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
  - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
  - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
  - They will remain eligible for health insurance through September 5, 2022
  - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,

NYCDOE Division of Human Capital

# Exhibit F

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Wednesday, August 12, 2020 9:54 PM
**To:** Parrino Elizabeth <EParrino@schools.nyc.gov>
**Subject:** Your Application for Reasonable Accommodation is Approved

08/12/2020

Case#: A10279
File#: 0877373
Emp ID: 1341179

Dear ELIZABETH PARRINO,

The HR Connect Office of Medical, Leaves and Records Administration has approved the following application:

**Type of Accommodation:** Reasonable Accommodation to work remotely due to increased risk for severe illness from COVID-19

At this time, this accommodation is provided from the start of the school year until December 31, 2020. Please note that this accommodation, including the effective dates, is subject to further DOE review and change in accord with applicable federal, state, and city policy. Any information about your COVID-19 accommodation will go to your DOE e-mail account.

As a reminder, if there are any changes to your medical condition(s) and you no longer require an accommodation and/or you require a leave of absence, you should notify your principal/supervisor and submit the appropriate application if applicable.

If you need a change to your Reasonable Accommodation, please contact the Office of Disability Accommodatin at RARequest@schools.nyc.gov.

**Questions**

For more information, you may also visit the HR Connect Employee Portal by logging in with your DOE/Outlook User ID and password at https://doehrconnect.custhelp.com.

Sincerely,

*HR Connect*

Medical, Leaves, and Records Administration

Please do not reply to this message via email. This email address is automated.

Elizabeth Parrino
292 Shelter Road
Ronkonkoma, N& 11779

NYC Dept. Of Education

September 20, 2021

To Whom It May Concern:

I am writing this letter to formally apply for a religious exemption for the COVID-19 vaccination mandate. The law allows for personal religious beliefs. I base my request on religious grounds and the word of my God. Some background information on the legalities: Requiring a person to submit a letter by a religious leader in support of their religious beliefs is a violation of the First Amendment's Establishment Clause which prohibits preferential treatment of one set of religious beliefs over another, Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against individuals because of their religious beliefs and as well as NYS Executive Las, Article 15, Human Rights Law, Section 209-291.

I am requesting that this application be confidential as my thoughts and sentiments are private. The contents of my letter are of enormously intimate nature therefore they shall not be shared with others unless I choose to share it. I am formally requesting my private letter to be shared with those who are in charge of reviewing the application. If there is a team of reviewers, they all shall keep my thoughts confidential. The only reason that I am divulging my religious beliefs with you is because the law states I have to.

Growing up, I was not raised with much religious exposure. My parents, one being Episcopal and the other Catholic, both brought up with great importance on religion and formalized education, yet their branches of the Christianity had a bit of unaligned interpretations of the Bible and with word of God. Both my parents had a strong faith, but during their lives had experienced times where they questioned their formal religious teachings therefore, the family they created in God did not need to be formalized by a rigorous structure of religious schooling, Bible study, and attendance of church as they were raised. My parents loved God, God's Will, and the Word of God. They chose to raise their children in the image of God: nurturing the soul, cultivating higher-order reasoning, framing self-consciousness, awareness of God and fostering the ability to have a relationship with Him spiritually. Although I was not brought up to follow scripture or to study the Bible, my family raised me to be all of what God intended for his children. I was raised to embrace others' ideas of God and accept them. Our family's God was loving, healing, accepting, and forgiving. I was nurtured in this environment that encouraged love for all. I am proud to be living in the image of God.

As an adult, I experienced a strong pull to expand my knowledge on my creator and all He intended for me. I began my study of the Bible and continue to as the lessons learned are endless. I was awakened to a higher level and deepest knowing of my God. To me, my faith is not only a religion, it is how I live my life. My young children have been baptized and I will

provide them with the opportunity to learn about and have a relationship with their creator, receive all sacraments, and determine their faith and spirituality.

Christianity is based on our moral conscience in which God gave all of us. At the creation of all mankind, we were created with a conscience to follow and lead us. The Divine Law is the supreme rule of actions; our thoughts, desires, acts, all that man is, is subject to the domain of the law of God; and this law is the rule of our conduct by means of our conscience. Therefore, it is never lawful to go against our own conscience. "Whatever is done in opposition to conscience is conducive to damnation." I have a responsibly inscribed by God to follow my conscience. "Man has a right to act in conscience and in freedom so as to personally make moral decisions. He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters. (Catechism of the Catholic Church attested by Papal Authority 1776)." Disobeying my conscience is a sin. I cannot willingly sin against God. The commitment to follow the word of God is stronger than a vaccine mandate. I am obligated to follow the word of God and my conscience. The NYC DOE is preventing me from acting according to my conscience and trying to force a vaccine against my beliefs, in turn trying to force me to sin. "A human being must always obey the certain judgement of his conscience. If he were deliberately to act against it, he would condemn himself (CCC 1790)."

I have been a Christian my entire life. As a believer in Jesus Christ, the Holy Spirit lives within me. Jesus had said that the Holy Spirit will guide each person who repents their sin and believes upon Him into all truth. I seek God's will for my life through studying of the Bible, prayer, and relying on the Holy Spirit to assist me with God's will. I have prayed for the people forcing this vaccine mandate upon God's children and I have forgiven them. As I have prayed, the Holy Spirit has powerfully conveyed to my conscience that I shall not accept the COVID-19 vaccine. If I were to go against the Holy Spirit, I would be sinning and endangering my relationship with God and violating my conscience. I hope that you are guided by your moral conscience and agree that forcing man to act against their conscience is shameful and sinful. I pray that you respect my right to follow my moral conscience to deny this Covid 19 vaccination mandate.

Sincerely in Christ,
Elizabeth Parrino

**From:** Parrino Elizabeth
**Sent:** Friday, November 19, 2021 2:21 PM
**To:** Division of Human Capital
<DHC@schools.nyc.gov>; bdeblasio@cityhall.nyc.gov <bdeblasio@cityhall.nyc.gov>; **Chancellor Meisha
Porter** <NYCChancellor@schools.nyc.gov>; **Pestana, Georgia (Law)**
<gpestana@law.nyc.gov>; dave.chokshi@nychhc.org <dave.chokshi@nychhc.org>; **Ask Legal**
<AskLegal@schools.nyc.gov>; **Nathan Judy** <JNathan@schools.nyc.gov>
**Subject:** Renewed Application for Religious Exemption

Dear Sir or Madam,

My name is Elizabeth Parrino. I have been a New York City Department of Education
employee since September 2012. On September 22, 2021 my religious exemption
application to the DOE's Vaccine Mandate was denied, and my appeal of that denial
was denied on September 30, 2021. I struggle every day with the impending November
30 deadline by which I will need to choose between my faith and my job.

In the *Kane v. DeBlasio* and *Keil v. City of New York*, cases now pending before the
United States Court of Appeals for the Second Circuit, the Defendants have conceded
that the process and standards they had used to consider religious exemption
applications and appeals were "constitutionally suspect" and proposed an alternative
process with purportedly constitutional standards. Accordingly, the Court ordered the
Plaintiffs to be reassessed under this alternative process.

Since my application and appeal were also considered under the same admittedly
unconstitutional process, I hereby demand an immediate reexamination of my
application under a fair, constitutionally sound process. I trust this renewed assessment
will result in an exemption, since I know my religious beliefs to be demonstrably, wholly,
and unequivocally sincere.

Kindly respond to this email as soon as possible. I have already been significantly
damaged and your expedient attention to this matter will avoid further injury. Any delay
will continue to compromise my faith in a manner that is unfair, unbearable, and entirely
unconstitutional.

I thank you kindly in advance for your prompt attention to this request and look forward
to receiving my religious exemption.

Most sincerely,

Elizabeth Parrino

F(2)

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Friday, January 7, 2022 7:06 PM
**Subject:** Your Appeal to the Citywide Panel - Additional Information

Colleague,

Your appeal of your religious exemption to the COVID-19 vaccine mandate has been submitted to the Citywide Appeal Panel. To assist the Citywide Appeal Panel in reviewing your religious exemption request, please provide the following additional information by Friday, January 14, 2022 at 8:00 pm:

1. Whether you have previously taken any vaccinations.
2. If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief.
3. If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.
4. Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

To submit this information, please follow the steps below:
- Written responses should be sent in as an attached document to PanelAppealUpdate@schools.nyc.gov (*Do **not** send, copy, or reply to this email.*)
- Written responses must be received by email by Friday, January 14, 2022 at 8:00 pm
- Only attach new information/document - do not resend documentation that was already provided.
- Include your Name and Employee ID number in the subject line of your email.

If additional information is not provided, the Panel will consider your appeal based on the materials/information you already submitted through SOLAS.

Thank you,

NYCDOE Division of Human Resources

As I stated in my previous submission, God has given me a conscience to follow. Every day, He confirms my path to me!

Answers to the questions posed to me:

1) As an adult, my conscience has guided me on vaccinations as well as every path in my life. Since adulthood, I have received only a Tdap (Diphtheria, Tetanus, and Pertussis/whooping cough) immunization and a flu shot many years ago, both of which were highly advised by my obstetrician while I had a high-risk pregnancy. Before deciding on receiving the immunizations, I spent countless hours researching each and discovered decades of research with full transparency on data supplied. Four years later, with another pregnancy that was not high risk, my conscience guided me to decline both shots. So, to finalize my response, when comparing the decades of my adulthood to the two shots I had received many years ago, it is evident that overall, I have NOT received vaccinations. Also, my past vaccination status does not indicate that I MUST receive future vaccinations, nor does it have any bearing on my conscience God has provided me to follow.

2) Not applicable as I did not cite this belief.

3) Not applicable as I did not cite this belief.

4) I have acted in accordance with following my conscience in all aspects of my life. One instance, related to vaccination, is when I was offered the Human Papillomavirus vaccine (HPV) when it was first approved. My conscience led me to decline it and has continued to.

It is disheartening that I continually need to explain in depth my sincerely held religious beliefs. It is invasive. I believe my sincerity is evident with all my previous submissions for an exemption and with the fact that it has been almost four months that I have followed my conscience on this matter, even with financial hardships affecting my family, housing, and food subsistence, daily coercion, and multitudes of stress, yet I stay calm and at peace to be following the voice of God.

The very few employees who were granted their religious exemptions through the _original application_ process were not required to answer these questions. Later, the US Court of Appeals for the Second Circuit in the Kane vs DOE case rendered the _original application_ process suspect and ordered for a citywide panel to have fresh consideration of the Plaintiffs which then transitioned to all employees (grateful for that) whose appeal was denied because it was unlawful. And here I am currently in the new process supplying more personal and sacred information. This misalignment of the application/approval difference creates double standards.

In my appeal meeting, the DOE lawyer stated that the Pope is in favor of the covid 19 vaccine, therefore I should be. I continued to state that the Pope is not my religious leader and does not control my conscience, as only God does and the only leader I obey. The UFT representative also restated what I clarified.

Hebrews 9:14 states the blood of Christ not only saves us but cleanses our conscience so we understand what honors God. We call that our Christian conscience. To fail to obey our Christian conscience is sin (James 4:17) as our conscience is the voice of God.


Thank you for your time,
Elizabeth Parrino

From: NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Date: 2/15/22 2:55 PM (GMT-05:00)
To: Parrino Elizabeth <EParrino@schools.nyc.gov>
Subject: Reasonable Accommodation Appeal Determination

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning. Appellant failed to establish sincerely held religious belief that precludes vaccination.

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

# Exhibit G

**APPENDIX**

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:     Pierre N. Leval,
            José A. Cabranes,
            Denny Chin,
                *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

                        *Plaintiffs-Appellants,*                    **ORDER**

            v.                                                      21-2678-cv

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

                        *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

                        *Plaintiffs-Appellants,*

            v.                                                      21-2711-cv

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity of Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

---

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

# Exhibit H



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

EMERGENCY EXECUTIVE ORDER NO. 62
March 24, 2022

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments; and

WHEREAS, the state of emergency to address the threat and impacts of COVID-19 in the City of New York first declared in Emergency Executive Order No. 98, issued on March 12, 2020, and extended most recently by Emergency Executive Order No. 46, issued on February 28, 2022, remains in effect; and

WHEREAS, this Order is given because of the propensity of the virus to spread person-to-person, and also because the actions taken to prevent such spread have led to property loss and damage; and

WHEREAS, athletes and performing artists frequently conduct their work at venues both inside and outside of the City, without regard to their residence in the City, and their work benefits the City's economic recovery from the pandemic, often attracting large numbers of visitors to the City; and

WHEREAS, New York City athletic teams have been, and continue to be, at a competitive disadvantage because visiting teams can field unvaccinated players, and this competitive disadvantage has negatively impacted, and continues to negatively impact, New York City teams' success, which is important to the City's economic recovery and the morale of City residents and visitors; and

WHEREAS, additional reasons for requiring the measures continued in this Order are set forth in my prior Emergency Executive Order No. 50, issued on March 4, 2022;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1. I hereby direct that section 1 of Emergency Executive Order No. 59, dated March 19, 2022, is extended for five (5) days.

§ 2. I hereby order that section 3 of Emergency Executive Order No. 50, dated March 4, 2022, is amended to read as follows.

§ 3. I hereby direct that:

a. Covered entities that had been covered by the Key to NYC program shall continue to require that a covered worker provide proof of vaccination, unless such worker has received a reasonable accommodation. Covered entities shall continue to keep a written record of their protocol for checking covered workers' proof of vaccination and to maintain records of such workers' proof of vaccination, as described in subdivisions d and e of section 2 of Emergency Executive Order No. 317, dated December 15, 2021.

b. Records created or maintained pursuant to subdivision a of this section shall be treated as confidential.

c. A covered entity shall, upon request by a City agency, make available for inspection the records required to be maintained by this section, consistent with applicable law.

d. For the purposes of this Section:

(1) "Covered entity" means any entity that operates one or more "covered premises," except that "covered entity" does not include pre-kindergarten through grade twelve (12) public and non-public schools and programs, houses of worship, childcare programs, senior centers, community centers.

(2) "Covered premises" means any of the following locations, except as provided in subparagraph (iv) of this paragraph:

> **(i) Indoor Entertainment and Recreational Settings, and Certain Event and Meeting Spaces**, including indoor portions of the following locations, regardless of the activity at such locations: movie theaters, music or concert venues, adult entertainment, casinos, botanical gardens, commercial event and party venues, museums, aquariums, zoos, professional sports arenas and indoor stadiums, convention centers and exhibition halls, hotel meeting and event spaces, performing arts theaters, bowling alleys, arcades, indoor play areas, pool and billiard halls, and other recreational game centers;
>
> **(ii) Indoor Food Services**, including indoor portions of food service establishments offering food and drink, including all indoor dining areas of food service establishments that receive letter grades as described in section 81.51 of the Health Code; businesses operating indoor seating areas of food courts; catering food service establishments that provide food indoors on its premises; and any indoor portions of an establishment that is regulated by the New York State Department of Agriculture and Markets offering food for on-premises indoor consumption; and

2

**(iii) Indoor Gyms and Fitness Settings**, including indoor portions of standalone and hotel gyms and fitness centers, gyms and fitness centers in higher education institutions, yoga/Pilates/barre/dance studios, boxing/kickboxing gyms, fitness boot camps, indoor pools, CrossFit or other plyometric boxes, and other facilities used for conducting group fitness classes.

(iv) "Covered premises" does not include houses of worship or locations in a residential or office building the use of which is limited to residents, owners, or tenants of that building.

(3) "Covered worker" means an individual who works in-person in the presence of another worker or a member of the public at a workplace in New York City. "Covered worker" includes a full- or part-time staff member, employer, employee, intern, volunteer, or contractor of a covered entity, as well as a self-employed individual or a sole practitioner.

"Covered worker" does not include:

(i)  an individual who works from their own home and whose employment does not involve interacting in-person with co-workers or members of the public;

(ii)  an individual who enters the workplace for a quick and limited purpose;

(iii) a performing artist, or an individual accompanying such performing artist, while the performing artist is in a covered premises for the purpose of such artist's performance; or

(iv) a professional athlete, or an individual accompanying such professional athlete or such athlete's sports team, who enters a covered premises as part of their regular employment.

(4) "Proof of vaccination" means proof of receipt of a full regimen of a COVID-19 vaccine authorized for emergency use or licensed for use by the U.S. Food and Drug Administration or authorized for emergency use by the World Health Organization, not including any additional recommended booster doses. Such proof may be established by:

(i)  A CDC COVID-19 Vaccination Record Card or an official immunization record from the jurisdiction, state, or country where the vaccine was administered, or a digital or physical photo of such a card or record, reflecting the person's name, vaccine brand, and date administered; or

(ii) A New York City COVID Safe App (available to download on Apple and Android smartphone devices); or

(iii) A New York State Excelsior Pass; or

(iv) CLEAR's digital vaccine card; or

3

(v) Any other method specified by the Commissioner of Health and Mental Hygiene as sufficient to demonstrate proof of vaccination.

(5) I hereby order that section 20-1271 of the Administrative Code of the City of New York is modified by adding the following provision to the definition of "just cause:" Notwithstanding any provision of this chapter, a fast food employer shall be deemed to have just cause when a fast food employee has failed to provide proof of vaccination required by an emergency executive order issued in response to the COVID-19 pandemic and shall not be required to follow progressive discipline procedures prior to terminating the employee, provided that the employee shall have 30 days from the date when the employer notified the employee of the requirement to submit such proof and the employee shall be placed on leave following such notification until such proof is provided.  This provision shall not excuse the employer from the responsibility to provide a reasonable accommodation where required by law.

e. An individual who meets the requirements of subparagraph (iii) or (iv) of section 3(d)(3) of this Order shall be exempt from the Order of the Commissioner of Health dated December 13, 2021, relating to requiring COVID-19 vaccination in the workplace.

§ 3. I hereby direct the Fire and Police Departments, the Department of Buildings, the Sheriff, and other agencies as needed, to enforce the directives set forth in this Order in accordance with their lawful authorities, including Administrative Code sections 15-227(a), 28-105.10.1, and 28-201.1, and section 107.6 of the Fire Code. Violations of the directives set forth in this Order may be issued as if they were violations under Health Code sections 3.07 and 3.11, and enforced by the Department of Health and Mental Hygiene or any other agency.

§ 4. This Emergency Executive Order shall take effect immediately and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Eric Adams
Mayor

4





**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

June 27, 2022

<u>**Via E-Mail Only**</u>
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

**Re:**    **Board of Education of the City School District of the City of New York and**
           **United Federation of Teachers, Local 2, AFT, AFL-CIO**
           **(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

Case 1:24-cv-08892-AMD-JRC    Document 1    Filed 12/30/24    Page 76 of 106 PageID #:
76

```
----------------------------------- X
In the Matter of the Arbitration
                                     X
            between
                                     X      Re: Proof of
BOARD OF EDUCATION OF THE CITY                  Vaccination
SCHOOL DISTRICT OF THE CITY OF       X
NEW YORK
                                     X
            "Department"
                                     X
            -and-
                                     X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                 X

            "Union"                   X

----------------------------------- X
```

**APPEARANCES**


    **For the Department**
      Liz Vladeck, General Counsel


    **For the Union**
    STROOCK & STROOCK & LAVAN, L.L.P.
     Alan M. Klinger, Esq.

     Beth Norton, Esq., UFT General Counsel
     Michael Mulgrew, UFT President


**BEFORE:**  Martin F. Scheinman, Esq., Arbitrator

Case 1:24-cv-08892-AMD-JRC    Document 1    Filed 12/30/24

**BACKGROUND**

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.  That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation.  Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate.  The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters.  The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters.  Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions.  Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved.  By agreement of the parties, the process moved to arbitration.  They asked I serve as arbitrator.

Arbitration sessions were then held.  On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation.  An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision.  Approximately five hundred (500) appeals were determined by the arbitration process.  Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent.  The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong.  On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

## DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award. It insists this matter is subject to my continued jurisdiction. The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced. According to the Union, approval of certification is issued by the State. In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined. The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated. The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

8

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated. The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

## Opinion

Certain preliminary comments are appropriate. As an arbitrator my role is a limited one. In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

10

Based upon the above, I find the Department failed to properly implement the due process protections of my Award. The Union has the right to assert the Department's process "is not implemented in good faith." To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing. Those court decisions confronted an entirely different factual scenario. Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination. Here, of course, the employees assert they are in fact vaccinated. This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

employee's claim they have submitted proof of vaccination.  If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

## AWARD

1. Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK      )
                       ) ss.: .
COUNTY OF NASSAU       )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.KARASHIAN.AWD

13

# Exhibit J

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD  SUITE 385
### CARLE PLACE, NY 11514

MARTIN H  SCHER*

JONATHAN L  SCHER**

AUSTIN R  GRAFF*

\* Also Admitted in District of Columbia
\* Also Admitted in New Jersey

TEL  516-746-5040

FAX  516-746-5043

W  SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P  BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S  NAYBERG
(1959-2021)

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    Broecker, *et al.* v. New York City Department of Education, *et al.*
> Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action.  The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards.  *See,* **Exhibit A,** a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

## THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

     In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B, at page 10.**

     This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

     First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

     Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B,**

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*********************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\Teacher Litigation\Motions\Motion # 002 – Motions to Dismiss\Opposition to the Motion\July 2022 Supplemental Letter 7-7-2022 letter to Court re Scheinman award.doc

# Exhibit K

.

**Karen King** (KKing@uft.org)
To: you    Details

Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

# Exhibit L

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X :
                                   :

MICHAEL KANE, et al.,                 :
                                   :

                 Plaintiffs,     :

                                   :     Case No.  21-cv-7863 (VEC) (Lead)

      - against -             :

DE BLASIO et al.,               :
                                   :

                Defendants.     :
------------------------------------------------------------X :
                                   :

MATTHEW KEIL, et al.            :
                                   :

                 Plaintiffs,     :

                                   :     Case No.  21-cv-8773 (VEC)
      - against -             :

THE CITY OF NEW YORK et al.,      :
                                   :

                Defendants.     :
------------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.      My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.      I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.  When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.  I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.  I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.  I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13.  Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14.  I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15.  The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16.  Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17.  At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18.  Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.  I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.  In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      June 3, 2022

                                    By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine
mandate leave. It was placed there the day you went on the leave. Our central offices placed this code
on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

# Exhibit M



📧 Salary History

## Salary History

**Equate Date** 12 31 9999
**Prior Equate Date** 10 10 2007
**Certified** YES
**Rating** S – SATISFACTORY FOR FISCAL YEAR 2022 FOR (S) CYCLE
**Problem** PR

| Title | Pay C. | Pay Rate | Sal Cd | Effective Date | Expire Date | Salary T. | Date Changed |
|-------|--------|----------|--------|----------------|-------------|-----------|--------------|
| TRTSQ | S | 97,469.00 | UA8W | 10-15-2021 | 12-31-9999 | BASE | 10-15-21 |
| TRTSQ | S | 97,469.00 | UA8W | 05-14-2021 | 10-14-2021 | BASE | 10-15-21 |
| TRTSQ | S | 94,630.00 | UA8W | 06-26-2020 | 05-13-2021 | BASE | 05-13-21 |
| TRTSQ | S | 94,630.00 | UA8W | 05-18-2020 | 06-25-2020 | BASE | 06-26-20 |
| TRTSQ | S | 94,630.00 | UA8W | 05-14-2020 | 05-17-2020 | BASE | 05-18-20 |
| TRTSQ | S | 92,322.00 | UA8W | 02-14-2019 | 05-13-2020 | BASE | 05-01-20 |
| TRTSQ | S | 90,511.00 | UA8W | 06-16-2018 | 02-13-2019 | BASE | 02-06-19 |
| TRTSQ | S | 87,875.00 | UA8W | 05-01-2018 | 06-15-2018 | BASE | 05-16-18 |
| TRTSQ | S | 86,185.00 | UA8W | 09-26-2017 | 04-30-2018 | BASE | 05-01-18 |

# Exhibit N

From: **elizabeth smith** <esmith1217@gmail.com>
Date: Thu, Feb 16, 2023, 9:25 PM
Subject: Reinstatement
To: <krodi@schools.nyc.gov>

Dear Ms. Rodi,

My name is Elizabeth Parrino. I was a tenured teacher with an impeccable record working for the NYC DOE for 10 years until I was unlawfully disciplined in October 2021 and terminated in September 2022 due to my sincerely held religious values.

I was not given a 3020a hearing for due process before I was disciplined with the removal from salary in October 2021 and did not have a 3020a before termination almost a year later. By law and contract, it is required that I receive my due process and determination before removing me from salary.

I am requesting to be placed back on salary immediately. NYC DOE broke the law. I am also requesting retro pay from the date of my payroll removal on October 4, 2021 to present.

Please respond by March 1, 2023.

Thank you for your time,
Elizabeth Parrino
1341179