UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
**ELIZABETH PARRINO**,                                             :
                                                                   :
                                  Plaintiff, : **MEMORANDUM DECISION AND ORDER**
                                                                   :
             – against –                              : 24-CV-8892 (AMD) (JRC)
                                                                   :
**THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, MELISSA AVILES-RAMOS,** Chancellor and **KATHERINE RODI,** Director of Employee Relations, :
                                                                   :
                                 Defendants. :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* plaintiff brings this case against the New York City Department of Education ("DOE"), the DOE Chancellor, and the DOE Director of Employee Relations for violations of the United States Constitution, New York State Education Law §§ 3020, 3020-a, New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Administrative Code § 8-107, *et seq.* ("NYCHRL") in connection with DOE's vaccine mandate requiring DOE employees to be vaccinated against COVID-19.[1] Before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion to dismiss the plaintiff's federal claims and declines to exercise jurisdiction over her state claims.

---

[1] The Court treats the plaintiff's lawsuit against the DOE as one against the City of New York. *See Broecker v. New York City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *1 n.1 (2d Cir. Dec. 26, 2023).

## BACKGROUND[2]

In 2012, DOE hired the plaintiff as a teacher, and she subsequently earned tenure. (ECF No. 1 ¶ 16.)  On March 12, 2020, then-Mayor Bill de Blasio issued Emergency Executive Order No. 98, declaring a state of emergency in New York City because of the COVID-19 pandemic. (*Id.* ¶ 17.)  In August 2020, the plaintiff requested and was approved for a medical accommodation to work remotely from September 2020 to June 2021 because of her increased risk for severe illness from COVID-19.  (*Id.* ¶ 19.)

In July 2021, Mayor de Blasio announced a "Vaccine-or-Test" mandate, which required city workers, including United Federation of Teachers ("UFT") educators, to be vaccinated against COVID-19 or test weekly.  (*Id.* at 39.)  On August 23, 2021, Mayor de Blasio and NYC Commissioner of Health and Mental Hygiene David Chokshi announced a new "Vaccine Only" mandate for people who worked in NYC DOE buildings.  (*Id.* at 39.)  Under the new mandate, employees had to show that they had started the vaccination protocol by September 27, 2021, or they would not be allowed in DOE buildings, would not be paid for work, and would risk losing their jobs and benefits.  (*Id.* at 39.)  The vaccine mandate did not expressly provide for medical or religious exceptions or accommodations, and did not address "matters of due process with regard to job and benefits protection."  (*Id.* at 39.)

---

[2] The facts are drawn from the complaint, the plaintiff's opposition, and documents and exhibits that the plaintiff includes with the complaint or incorporates into the complaint by reference.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("[A] district court . . . is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated into the complaint by reference." (citation omitted)).  "[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true."  *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (quoting *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002)).

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact and implementation of the vaccine mandate. (*Id.* at 40.) Martin Scheinman, the arbitrator, presided over a mediation, and issued an arbitration award. (*Id.* at 40–41.) The arbitration award established, among other things, (1) a process for exemptions, accommodation requests, and appeals; (2) a leave without pay ("LWOP") system for employees who did not request an exemption or were denied an exemption, but would continue to receive health insurance; (3) options for employees on LWOP to extend or separate from DOE and receive benefits; and (4) a "unilateral separation" process for employees who did not comply with the mandate and had no approved exemption or accommodation, or did not separate or extend their LWOP. (*Id.* at 42–54; *see also* ECF 11 at 11.) According to the plaintiff, DOE sent her a copy of the arbitration award, which she calls an "Impact Bargaining Agreement," on September 10, 2021 — the same day it was issued. (ECF No. 1 ¶ 20.) She says it "created a lawless Leave Without Pay . . . that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the [DOE] by October 4, 2021." (*Id.*)

On September 15, 2021, the Department of Health amended the vaccine mandate. (*Id.* ¶ 19; *see also* ECF No. 11 at 10.) The plaintiff did not get the COVID-19 vaccine "because she holds sincere religious beliefs that prohibit her from getting vaccinated." (*Id.* ¶ 22.) In September 2021 she applied for a "religious accommodation" exempting her from the vaccine requirement. (*Id.* ¶¶ 22, 32.) In her letter in support of her request, she said that the "Holy Spirit [] powerfully conveyed to [her] conscience that [she] shall not accept the COVID-19 vaccine . . . [and] [i]f she were to go against the Holy Spirit, [she] would be sinning and endangering [her] relationship with God and violating [her] conscience." (*Id.* at 61.) She also said that

3

"[d]isobeying [her] conscience is a sin [and she] cannot willingly sin against God." (*Id*. at 61.) The DOE denied her request on September 22, 2021. (*Id.* ¶¶ 22, 32; *id.* at 62.) The plaintiff appealed to the "Scheinman Appeal Panel," which denied her appeal on September 30, 2021. (*Id.* ¶¶ 22, 32; *id.* at 62.) On October 4, 2021, the plaintiff was suspended without pay. (*Id.* ¶ 21.) She was never informed that she also lost her UFT membership and insurance, "leaving her in dire straits." (*Id.* ¶ 21.) The plaintiff wrote to DOE on November 19, 2021, noting that *Kane v. De Blasio* and *Keil of New York* were pending before the Second Circuit. (*Id.* at 62.) She demanded "an immediate reexamination of [her] application under a fair, constitutionally sound process," because her prior application and appeal had been "considered under the same admittedly unconstitutional process" at issue in *Kane* and *Keil*. (*Id.* at 62.)

On November 28, 2021, the Second Circuit issued its opinion in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021), which, according to the plaintiff, resulted in "Martin Scheinman's Appeal Process [being] thrown out as unconstitutional" and "the LWOP" being held "invalid as a matter of Law." (*Id.* ¶ 23.) On January 7, 2022, DOE notified the plaintiff by email that the Citywide Appeal Panel would consider her appeal. (*Id.* at 63.)[3] The panel denied the plaintiff's appeal on February 15, 2022, finding that "DOE has demonstrated that it would be an undue hardship to grant this accommodation . . . given the need for a safe environment for in-person learning" and that the plaintiff "failed to establish sincerely held religious belief that precludes vaccination." (*Id.* at 65.)

On March 24, 2022, the City issued Emergency Executive Order 62, which permitted athletes, performing artists, and others to remain unvaccinated while continuing to work. (*Id.* ¶ 24; *id.* at 70–73.) The plaintiff says that this "infuriated municipal workers and DOE employees

---

[3] The panel also asked for information, which the plaintiff provided. (*Id.* at 63–64.)

who were terminated for not getting vaccinated," and showed that the vaccine mandate "was not neutral, and did not have general applicability, but targeted DOE educators and municipal workers." (*Id.* ¶ 24.) According to the plaintiff "everyone was fired" except for "delivery people, volunteers to schools, cafeteria workers and school bus drives," none of whom were told that they had to get the vaccine in order to work. (*Id.*)

On April 28, 2022, the plaintiff was informed that the DOE Office of Personal Investigations had tagged her personnel file and fingerprints with a "Problem Code" in October 2021, which she says "blocked [her] from getting paid by the NYC DOE or any vendor." (*Id.* ¶¶ 27–28.) According to the plaintiff, she "was found guilty of misconduct, then terminated for her religious beliefs." (*Id.* ¶ 28.)[4] The plaintiff claims that she did not learn about this until after April 2022, when other teachers made their denials of unemployment benefits public; she says their denials were based on "misconduct," because, like the plaintiff, they held sincere religious beliefs that prohibited them from getting vaccinated. (*Id.*) Although the vaccine mandate ended on February 10, 2023, the plaintiff says that "no one at the DOE told [her] she could re-apply for her job." (*Id.* ¶ 29.) Nevertheless, she asked to be reinstated to her former position, but she did not receive a reply, which she says is "evidence that the [mandate] was a cover up of the targeted mass terminations and layoffs at the DOE, not due to any alleged 'student safety' issues." (*Id.*)

On March 27, 2023, the plaintiff filed a Notice of Claim against the City of New York and its Department of Education. (*Id.* ¶ 30.) On December 30, 2024, the plaintiff brought this

---

[4] The defendants maintain that plaintiff was not terminated, but voluntarily resigned. (ECF No. 11 at 24 n.5.) They cite a waiver the plaintiff signed in February 2022 when she extended her LWOP through September 6, 2022, which says, "I understand that if I have not returned by September 6, 2022, I shall be deemed to have voluntarily resigned." (ECF No. 12-2.) The plaintiff responds that she signed the waiver under duress, not voluntarily. (ECF No. 14 at 7.) The Court does not need to decide whether the plaintiff was terminated or voluntarily resigned. Most of the plaintiff's allegations are about being placed on LWOP, which occurred before she stopped working for the defendants. Regardless, the Court's analysis is the same whether she was terminated or voluntarily resigned.

5

action against DOE, DOE Chancellor Melissa Aviles-Ramos, and DOE Director of Employee Relations Katherine Rodi. She brings claims pursuant to 18 U.S.C § 1983 for religious discrimination, failure to accommodate, violations of the First Amendment, and violations of the due process and equal protection clauses of the Fourteenth Amendment. She also alleges fraud in the inducement and violations of New York state law.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). While "detailed factual allegations" are not required, a complaint must plead "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). When ruling on a motion to dismiss, "the court must accept as true all factual allegations in the complaint" and "[a]ll reasonable inferences must be drawn in favor of the non-moving party." *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 147 (E.D.N.Y. 2001), *aff'd sub nom. Watral v. Silvernails Farms LLC.*, 51 F. App'x 62 (2d Cir. 2002) (citation omitted).

The Court construes *pro se* complaints liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist;"

6

accordingly, "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (citation omitted).

## DISCUSSION

### I. Federal Claims

#### a. Religious Discrimination

The plaintiff brings two claims for religious discrimination under 42 U.S.C. § 1983: a claim for disparate treatment, and a claim based on failure to accommodate. Claims brought under Section 1983 are analyzed using the same basic elements as those used for claims brought under Title VII. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019).

##### i. Disparate Treatment

To state a claim for employment discrimination based on disparate treatment under Section 1983 or Title VII, a plaintiff must plead that she (1) "is a member of a protected class," (2) "was qualified" for the position, (3) "suffered an adverse employment action," and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Hurley v. Dep't of Educ. of City of New York*, No. 24-CV-1664, 2025 WL 2711471, at *4 (E.D.N.Y. Sept. 23, 2025) (quoting *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023)). The defendants argue that the plaintiff has not met the second and fourth elements. They say that she was "no longer qualified to serve as a public employee," because she failed "to satisfy a condition of her employment"— receiving the COVID-19 vaccine. (ECF No. 11 at 22.) They also say that she does not plausibly allege facts to suggest that her "purported religion was a motivating factor in DOE's decision to deny her reasonable accommodation request or allegedly terminate her employment." (*Id.*) The plaintiff does not meaningfully address either argument, but she says that she "was terminated because of her sincere religious beliefs that God could not

7

allow her to be injected with the COVID Vaccine," and that DOE's claim of "undue burden" was a "lie." (ECF No. 14 at 11, 15.)

The COVID-19 vaccine mandate was "a lawful condition of employment." *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 316 (E.D.N.Y. 2022), *aff'd,* No. 23-655, 2023 WL 7485465 (2d Cir. Nov. 13, 2023), and *aff'd,* No. 23-655, 2023 WL 8888588 (2d Cir. Dec. 26, 2023). Thus, once the mandate went into effect and the plaintiff refused to get the vaccine, she was no longer qualified for her position. *See Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) ("District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim."); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023) ("[T]o be qualified for her position as a Teaching and Research Center Nurse 2, Plaintiff must have been vaccinated against COVID-19 or received a medical exemption; it is undisputed that she did neither.").

"In cases alleging religious discrimination based on disparate treatment, a plaintiff may plausibly plead facts that give rise to an inference of unlawful discrimination where the plaintiff alleges that they 'actually require[ ] an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in [its] decision.'" *Hurley*, 2025 WL 2711471, at *4 (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773–74 (2015). The plaintiff has not alleged any facts that show "her discharge was motivated by discriminatory intent" or that the defendants' "desire to avoid providing an accommodation was a motivating factor in its decision to terminate her." *Id.* Although the plaintiff makes the conclusory allegation that she was "terminated for her religious

8

beliefs," (ECF No. 1 ¶ 27), her complaint makes clear that she was terminated, and her personnel file was tagged with a problem code, because she refused to get the COVID-19 vaccine (*see e.g. id.* ¶¶ 27–28). She also acknowledges that other employees were given "religious-based accommodations," (*id.* ¶ 2), which "cuts against any reasonable inference that [the defendants] terminated [her] or others out of a reluctance to provide a religious accommodation." *Hurley*, 2025 WL 2711471, at *5. For these reasons, the plaintiff does not state a claim for religious discrimination under a theory of disparate treatment.

> ii. *Failure to Accommodate*

"'To survive a motion to dismiss, a plaintiff asserting a Title VII religious-discrimination claim' based on a failure to accommodate 'must plausibly allege that (1) [he or she] held a bona fide religious belief conflicting with an employment requirement; (2) [he or she] informed [his or her] employers of this belief; and (3) [he or she] [was] disciplined for failure to comply with the conflicting employment requirement.'" *Hurley*, 2025 WL 2711471, at *5 (quoting *D'Cunha v. Northwell Health Sys.*, No. 23-CV-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023)). However, the plaintiff's claim fails if the defendant shows "that the prospective accommodation would cause the employer to suffer an undue hardship." *Id.* (citation modified).

The defendants do not address the first two elements. Rather, they argue that the plaintiff was not disciplined, and that DOE would have suffered an undue hardship if it had granted the plaintiff's accommodation request. (ECF No. 11 at 25–27.) The plaintiff says that she was "disciplined for her alleged 'insubordination' in not getting vaccinated with the COVID vaccine," and that Scheinman "made up the LWOP by changing the commonly known AWOP ('Absence Without Pay') which is a disciplinary to a forced leave without pay in order to throw out senior, tenured teachers" like herself. (ECF No. 1 ¶¶ 60, 67.) The plaintiff's "placement on

9

leave without pay and her ultimate termination from her position qualify as 'discipline.'" *Hurley*, 2025 WL 2711471, at \*6; *see also id.* (collecting cases).[5]

There is no dispute that the Citywide Panel rejected the plaintiff's appeal and cited "undue hardship." The plaintiff claims, however, that the defendants did not sufficiently explain why permitting her to remain unvaccinated was an undue hardship, and that their "invocation of 'undue hardship' defenses are plainly false pretexts attempting to cover for [the defendants'] explicit religious discrimination." (ECF No. 1 ¶ 33–34.) In fact, the Citywide panel explained the reason for its decision in the email it sent the plaintiff: "DOE has demonstrated that it would be an undue hardship to grant this accommodation . . . given the need for a safe environment for in-person learning." (ECF No. 1 at 65.)

Moreover, the plaintiff was not seeking an accommodation. Rather, she was seeking a blanket exemption from the vaccination requirement.[6] "[C]ourts have routinely found that a full exemption from the COVID-19 vaccine would constitute an undue hardship for Title VII religious accommodation claims." *Hurley*, 2025 WL 2711471, at \*7; *see also Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265, 2023 WL 6214236, at \*5 (E.D.N.Y. Sept. 25, 2023) ("[E]ven if [the plaintiff] took precautions such as wearing gloves, masks, and a face shield, her

---

[5] The cases the defendants cite to support their contrary argument are different. *See Kane v. De Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (evaluating process due in an as-applied challenge to the vaccine mandate), *aff'd in part, vacated in part, remanded sub nom. New Yorkers for Religious Liberty, Inc. v. City of New York*, 121 F.4th 448 (2d Cir. 2024), *and aff'd in part, vacated in part, remanded sub nom. New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319 (2d Cir. 2024); *Broecker v. New York City Dep't of Educ.*, 585 F. Supp. 3d 299, 314–15 & n.9 (E.D.N.Y. 2022) (evaluating process due under New York Education Law); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) (evaluating the applicability of disciplinary procedures in the New York Administrative Code and New York Police Department Patrol Guide).

[6] The plaintiff argues that "[e]very other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing," (ECF No. 1 ¶ 56), but does not allege that she asked for these accommodations.

10

presence as an unvaccinated individual would have presented a risk to the vulnerable and still primarily unvaccinated student population and other employees." (citation and internal quotation marks omitted)); *Fugelsang v. Dep't of Educ. of New York City*, No. 23-CV-8332, 2025 WL 974276, at *3 (E.D.N.Y. Mar. 31, 2025) ("[T]he hardship that the presence of unvaccinated employees would pose for the DOE has been well-documented by courts in this circuit.")

Accordingly, the plaintiff's failure to accommodate claim is dismissed.

### b. First Amendment

#### i. *Retaliation*

The plaintiff alleges that the defendants placed her on "suspension without pay, then secretly charged[her] with misconduct/insubordination, falsely informed her that they had changed the terms of her employment when no change took place, flagged her files with a 'Problem Code' without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination;" she claims that this conduct constituted "retaliatory discrimination." (ECF No. 1 ¶ 39.)  In her opposition to the defendants' motion to dismiss, she characterizes this as a First Amendment retaliation claim. (*See* ECF No. 14 at 20–21.)

"[I]n order to survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal citation omitted).  The defendants address only the last element, and say that the plaintiff cannot demonstrate a causal connection between her exemption request and the alleged adverse actions.  (ECF No. 11 at 28.)

11

Even assuming that the plaintiff's conduct was protected and that the defendants took adverse action against her by placing her on LWOP and tagging her file with a problem code, the plaintiff has not alleged "a causal connection between the protected speech and the adverse action." *Goord*, 320 F.3d at 352. The plaintiff alleges that DOE sent her the arbitration agreement on September 10, 2021, before she sought a religious accommodation on September 20, 2021. (ECF No. 1 ¶ 20; *id.* at 60.) When the plaintiff did not comply with the vaccine policy, the defendants enforced the policy. "[I]t is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 446 (W.D.N.Y. 2021) (citation omitted); *see also Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739, 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) ("Adams's termination followed ineluctably from the policy that Defendants announced *before* Adams applied for an exemption; it was neither personal to her nor based on any protected activity. In other words, it was set in motion *before* she requested a religious accommodation." (emphasis in original)). Thus, the plaintiff's retaliation claim is dismissed.

   ii. *Free Exercise and Establishment Clauses*

The plaintiff alleges that "[a]ll such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment." (ECF No. 1 ¶ 36.) According to the defendants, the vaccine mandate applied equally to all DOE employees and was a reasonable response to a public health emergency. (ECF No. 11 at 30.)

"The Free Exercise Clause . . . protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 330 (2d

12

Cir. 2025), *cert. denied sub nom. Kane v. New York, NY*, No. 25-126, 2025 WL 3620461 (U.S. Dec. 15, 2025) (quoting *Kane v. De Blasio*, 19 F.4th 152, 163–64 (2d Cir. 2021)). "This protection, however, does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id*. "For purposes of a facial claim, a 'law that is facially neutral [may] still run afoul of the neutrality principle if it 'targets religious conduct for distinctive treatment.'" *Id.* To the extent the plaintiff means to make a facial challenge the vaccine mandate under the Free Exercise Clause, the Second Circuit has "previously determined that the City's 'Vaccine Mandate, in all its iterations, [wa]s neutral[,] generally applicable,' and facially constitutional under the Free Exercise Clause." *Id.* (quoting Kane v. De Blasio, 19 F.4th 152, 164 (2d Cir. 2021)). Nor would an as-applied challenge survive, because the plaintiff has not alleged "more-than-conclusory allegation[s] that the finding of undue hardship was erroneous or pretextual." *Id.* at 333; *see also Hurley*, 2025 WL 2711471, at *12 (E.D.N.Y. Sept. 23, 2025) (where the plaintiff "on numerous occasions refers to 'undue hardship' as the reason for the Citywide Panel's denial of her appeal," "her pleading suggests that Defendant denied her exemption request 'on the independent ground of undue hardship.'" (quoting *New Yorkers for Religious Liberty*, 125 F.4th at 335)).

"The Establishment Clause prevents the enactment of laws that have the 'purpose' or 'effect' of 'advancing or inhibiting religion.'" *New Yorkers for Religious Liberty*, 125 F.4th at 330 (quoting *Agostini v. Felton*, 521 U.S. 203, 222–23 (1997)). "Laws that 'grant[ ] a denominational preference' by preferring one religion over another violate the Establishment Clause, too." *Id.* (quoting *Larson v. Valente*, 456 U.S. 228, 244–46 (1982)). The plaintiff makes the conclusory allegation that the defendants "adopt[ed] a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion,"

13

(ECF No. 1 ¶ 3), but does not allege any facts to support this.  Thus, the plaintiff fails to state an Establishment Clause claim.  *See Lynch v. Dep't of Educ. of City of New York*, No. 24-CV-7795, 2025 WL 3731018, at *10 (E.D.N.Y. Dec. 26, 2025) ("[T]o the extent the Complaint raises a facial Establishment Clause challenge, binding authority warrants its dismissal.").

Accordingly, the plaintiff's First Amendment claims are dismissed.

### c. Fourteenth Amendment

#### i. Due Process

The plaintiff alleges that she was "removed" from her job "unfairly and without due process," and that the defendants "started with suspension without pay, then secretly charged [her] with misconduct/insubordination" and "flagged her files with a 'Problem Code' without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination." (ECF No. 1 ¶¶ 38–39.)  She says that the defendants deliberately targeted employees, like her, who "had high salaries and . . . tenure," and that tenure gives "[c]onstitutionally protected property and liberty rights to continued employment."  (*Id.* ¶ 41.)  She says that the defendants did not like tenure, so they "fraudulently harass[ed] and discriminat[ed] against [her] to ger her out of her position quickly without due process."  (*Id.*)  The defendants assert that the plaintiff received all the process that she was due. (ECF No. 11 at 32–33.)

The Court construes these allegations as a procedural due process claim.  "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, [a court] must first identify the property interest involved.  Next, [it] must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation."  *Hurley*, 2025 WL 2711471, at *10 (quoting *O'Connor v. Pierson*, 426 F.3d

14

187, 196 (2d Cir. 2005)).[7] "Procedures provide constitutional due process where there is 'a pre[-]termination opportunity to respond, coupled with post-termination administrative procedures as provided by [state] statute.'" *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985)). "When . . . a [tenured] public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001)).

The plaintiff's tenured position constitutes a protected liberty or property interest. *See id.* ("Plaintiff states a protected liberty or property interest: her tenured employment at DOE."); *Locurto*, 264 F.3d at 171 (plaintiffs "possessed a constitutionally protected property interest in their tenure as public employees, terminable only for cause") (citing *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997)). However, the plaintiff received sufficient process. The plaintiff alleges that DOE sent her a copy of the arbitration award on September 10, 2021, the same day it was issued, so she knew about the vaccine mandate and the processes described in the award before she was required to submit proof of vaccination by October 4, 2021. (*Id.* ¶ 20.) The plaintiff applied for a religious accommodation in September 2021. (*Id.* ¶¶ 22, 32.) After DOE denied her request, she appealed to the "Scheinman Appeal Panel." (*Id.* ¶¶ 22, 32; *id.* at 62.) After the Second Circuit decided *Kane*, DOE notified the plaintiff that it submitted her appeal of the denial of her religious exemption request to the Citywide Appeal Panel. (*Id.* at 63.) The panel gave the

---

[7] The plaintiff says that she is also bringing Fifth Amendment claims, but the Fifth Amendment applies only to the federal government's conduct. *See Becker v. Nassau Boces Sch. Dist.*, No. 21-CV-2855, 2022 WL 4586244, at *7 (E.D.N.Y. Sept. 29, 2022) ("To the extent that Plaintiff asserts that Defendants deprived her of due process rights in violation of the Fifth Amendment, such a claim must be dismissed because 'the Fifth Amendment only applies to actions by the Federal Government.'" (quoting *Castanza v. Town of Brookhaven*, 700 F.Supp.2d 277, 288 (E.D.N.Y. 2010))).

15

plaintiff the opportunity to submit additional information to assist the panel in reviewing her request. (*Id.*) The plaintiff's "ability to request the exemption and appeal constituted an adequate pre-termination opportunity to respond, and her ability to pursue Article 78 remedies satisfied the post-termination administrative procedures as provided by state statute for her to have received due process." *Hurley*, 2025 WL 2711471, at *10 (citation modified); *see also Broecker*, 585 F. Supp. 3d at 314 ("Plaintiffs, having received multiple notices regarding the Vaccination Mandate and after being notified of the applicable dates, procedures, and consequences regarding continued noncompliance with the Vaccination Mandate, could still have sought relief through an Article 78 proceeding in New York state court.")

The Court construes the plaintiff's claim about the "problem code" as a "stigma plus claim." *See Hurley*, 2025 WL 2711471, at *13 (in a "'stigma plus claim,' . . . a plaintiff can argue that she suffered 'injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'" (quoting *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006)). "A stigma plus claim has three elements: (1) injury to reputation; (2) the deprivation of a tangible interest or property right; and (3) a lack of adequate process." *Id.* "A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false." *Id.* (quoting *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004)). "The Second Circuit has also stated that '[t]o prevail on a stigma plus claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).

16

The plaintiff cannot succeed on this claim because she does not dispute the reasons for the issuance of the problem code: that she did not get the vaccination when it was mandated, and then refused to get vaccinated. (*See, e.g.,* ECF No. 1 ¶¶ 4, 22, 39.) Thus, the "problem code" designation was not false, which "is fatal to [the plaintiff's] stigma plus claim." *Hurley*, 2025 WL 2711471, at *14; *see also Lynch*, 2025 WL 3731018, at *16 ("Courts in this circuit have consistently held that allegations regarding placement on DOE's problem code database, even without a 'name-clearing hearing,' are insufficient to state a stigma plus claim where no statement about the plaintiff was published outside of the agency.'" (quoting *Fugelsang*, 2025 WL 974276, at *7)). Accordingly, the plaintiff's due process claims are dismissed.

    d. *Equal Protection*

Claiming an equal protection violation, the plaintiff asserts that "New York City was the only location in New York State which mandated the vaccine or termination for public employees," and "where tenured educators were suspended without pay and terminated without a 3020-a hearing." (ECF No. 1 ¶ 56.) She cites a New York state court decision, *Garvey v. City of New York*, 180 N.Y.S.3d 476, 480 (N.Y. Sup. Ct., Oct. 24, 2022), in which the court observed that New York City's Executive Order 62 "gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work." (*Id.* ¶¶ 24, 55.) The defendants assert that the plaintiff's equal protection claim fails because she does not claim that DOE treated her differently than similarly situated individuals, and does not identify a comparator. (ECF No. 11 at 30–31.)

The Court construes the plaintiff's claim as a selective enforcement claim. *See Hurley*, 2025 WL 2711471, at *8. To state a selective enforcement claim, the plaintiff must allege a comparator. *See id.* (describing two forms of selective enforcement claims, both of which

17

require a "degree of similarity between a plaintiff and a comparator"). The plaintiff does not allege any comparators. Her references to employees covered by Executive Order 62, and to "other tenured employees similarly situated," (ECF No. 1 ¶¶ 2, 24), are insufficient.

## II.     State and City Claims

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). The Court dismisses all the federal claims over which it has original jurisdiction, and declines to exercise supplemental jurisdiction over the plaintiff's remaining state and city law claims: fraud in the inducement and violations of New York State Education Law, the NYSHRL, and the NYCHRL. *See Kolari*, 455 F.3d at 123 ("Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and we can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a surer-footed reading of applicable law." (citation omitted)).

## CONCLUSION

For these reasons, the defendants' motion to dismiss the plaintiff's federal claims is granted, and the Court declines to exercise jurisdiction over the plaintiff's remaining state and city law claims. Accordingly, the complaint is dismissed with prejudice.

**SO ORDERED.**

 s/Ann M. Donnelly 
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      February 13, 2026