*** Filed ***
10:26 PM, 12 Mar, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————————————————x

**ELIZABETH PARRINO,**

Plaintiff

DOCKET No. 24-cv-8892 (AMD)(JRC)

-against-

**F.R.C.P. RULE 60(b)(1)(2)(3)**
**NOTICE OF MOTION TO ALTER THE**
**FEBRUARY 13, 2026 JUDGMENT AND**
**OBTAIN TIME TO SUBMIT**
**AN AMENDED COMPLAINT**

**THE DEPARTMENT OF EDUCATION OF**
**THE CITY OF NEW YORK,**

Defendants

—————————————————————————————x

PLEASE TAKE NOTICE that Plaintiff pro se Elizabeth Parrino will move this Court

before the Honorable Judge Ann Donnelly, United States District Judge, Eastern District of New

York, at the United States Courthouse located at 225 Cadman Plaza East, Brooklyn, New York,

11201, on a date and time to be designated by the Court, for an order giving Plaintiff the

opportunity to submit an Amended Complaint.

Dated: March 12, 2026

/s/Elizabeth Parrino

TO: (Via Email)
      NYC Law Department

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————x

ELIZABETH PARRINO,

                         Plaintiff      DOCKET NO. 24-cv-8892(AMD)(JRC)

        -against-

                              F.R.C.P. RULE 60(b)(1)(2)(3)  MOTION TO ALTER THE FEBRUARY 13, 2026 JUDGMENT AND OBTAIN TIME TO SUBMIT AN AMENDED COMPLAINT

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK,

                      Defendants

——————————————————————x

Pro Se PLAINTIFF ELIZABETH PARRINO, ("Plaintiff") files this Motion to ask for

reconsideration of Judge Ann Donnelly's Memorandum and Order ("Order")  dated February 13,

2026 based upon multiple errors of law, and request the right to file an Amended Complaint

pursuant to FRCP Rule 15(a). Plaintiff uses F.C.R.P. Rule 60(b)(1)(2)(3) to make this argument:

The Order showed bias against the Plaintiff and was clearly improper when Judge Donnelly

wrote on p. 10: "Moreover, the plaintiff was not seeking an accommodation. Rather, she was

seeking a blanket exemption from the vaccination requirement." This is not true. In Plaintiff's

Complaint, ¶3, p. 2 Plaintiff wrote:

" Defendants engaged in widespread religious discrimination in implementing its vaccine mandates by discarding due process rights outright, and adopting a facially discriminatory religious accommodation policy that conditioned an exemption on membership in a favored religion."

In  ¶23,  is the following:

"On 11/28/21, United States Court of Appeals for the Second Circuit merit panel

1

concluded :

"It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." **It also reaffirmed that a fresh consideration of people's request for religious accommodation**. In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law." [emphasis added]

Plaintiff's Appeal was sent to the Citywide Panel, where her claims to a religious

accommodation was never heard either, but was seen, nonetheless, as a **religious**

**accommodation** appeal, not as a **religious exception** appeal.

Plaintiff added, "Martin Scheinman's Appeal Process was thrown out as unconstitutional, also

making the LWOP invalid as a matter of Law. Complaint, **EXHIBIT G** Court of Appeals Order.

This Court recognized the lawless tactics used by Defendants to terminate Plaintiff, but the Order

shows that Judge Donnelly refused to recognize this fraud on Federal rights and public

employment law in New York City.

The Citywide Panel did not respect Constitutional Law, either. See:

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/

Recently released information proves the unconstitutional processes used by the Defendants to

deny all Department of Education employees who appealed their religious

exemptions/accommodations denials: in the Deposition of Katherine G. Rodi by Attorney Austin

Graff, posted on the docket in the case of Lorraine Masciarelli in this Court

(24-CV-7553-CBA-VMS, Docket #76, filed 5/14/25) p. 22 Graff asked Ms. Rodi:

2

"Q. So regardless of what religious belief the person had, it was going to be denied no matter what?
MS. LINNANE: Objection. You can answer.
    A. Yes."

This same disregard for any of the appeals submitted to Defendants can be seen on pp. 25-27, 29, 40, 43, 53.

The Citywide Panel was an appeal panel that used the word "undue burden" (sometimes they used "did not meet the criteria") but nonetheless had the intent to deny almost everyone who submitted their exemption/accommodation.

The word "undue burden" was used as a pretext to cover up the Defendants' religious discrimination and retaliation that powered all the actions of Defendants cited by the Plaintiff in her Complaint. Judge Donnelly used the pretext of a fair analysis without details to dismiss Plaintiff's case because she is biased against Plaintiff, who is pro se. Respectfully, it seems to Plaintiff that Judge Donnelly favors the City Law Department representing the Defendants.

Methods of proving that an employer's reason for taking an adverse employment action is false include:

- A significant contradiction between yearly performance evaluations, and the proffered non-discriminatory reasons. *Perfetti v. First Nat. Bank of **Chicago**,* 950 F.2d 449, 456 (7th Cir.1991), cert. denied, 505 U.S. 1205, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification.")

- An absence of contemporaneous evidence of the alleged basis for the adverse action.  For example, the Seventh Circuit noted  in *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634-35 (7th Cir. 1996): "The jury apparently concluded from the total absence earlier of the

3

justification Coca-Cola would later offer at trial that the justification had been concocted in preparation for trial to fit the available facts.  In other words that it was pretextual."

- Inconsistent or changing explanations for the adverse action.  For example, in Jolly v. Northern Telecom Inc., 766 F. Supp. 480, 493-94 (E.D.Va. 1991) , the court held: "Although the defendant then offered a multiplicity of reasons to justify its action, the plaintiff had little trouble proving that none of these explanations was worthy of any credence. To be sure, Jolly did not have too onerous a task, as the defendant's various personnel told so many stories, so totally inconsistent with each other, that they had lost all credibility by the conclusion of the proceedings. Put simply, NTI took more positions than a gymnast on a trampoline."  Additional case authorities about shifting explanations include:

o *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001)("A factfinder could infer from the late appearance of Sears's current justification that it is a post-hoc rationale, not a legitimate explanation of Sears's decision not to hire" plaintiff.)

o Domiguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) (A company may have several legitimate reasons to dismiss an employee. But when a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual.")

o *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.")

o *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991), cert. denied, 505 U.S. 1205 (1992) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification.")

4

- The falsity of the explanation can give rise to an inference that the employer is dissembling to cover up an ulterior purpose. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may … suffice to show intentional discrimination."); *Stratton v. Dep't for the Aging for New York*, 132 F.3d 869, 880-81 (2d Cir. 1997) (holding that evidence of an employer's false explanation for employment action supported the jury's finding of unlawful pretext). In the criminal context, courts frequently refer to false exculpatory statements as evidence of consciousness of guilt. *See, e.g., United States v. Reyes*, 302 F.3d 48, 56 (2d Cir.2002) ("[I]t is reasonable to infer guilty knowledge from [the defendant's] false exculpatory statement."). These inferences are "consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *Reeves*, 530 U.S. at 147 (internal quotation marks omitted).

Thus Plaintiff, the Court of Appeals, Katherine Rodi's testimony, and **EXHIBIT G** all support Plaintiff's argument here that she was applying for a religious accommodation not just an exemption, that the terms were used interchangeably, and no one was hearing her. In the Order, Judge Donnelly went along with the unconstitutional Scheinman Award so that she could justify the suspension without pay and termination without basis in law or rule. Plaintiff requests an opportunity to address this in an Amended Complaint.

Shockingly, Footnote 6 on p. 10 of the Order states "The plaintiff argues that "[e]very other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing," (ECF No. 1  56), but does not allege that she asked for these accommodations.". First, Plaintiff was highlighting the fact that all public education employees *outside of New York City* were never subjected to a COVID VACCINE MANDATE (CVM)

5

similar to the NYC CVM.  Also, Judge Donnelly made a rush to judgment and never inquired about whether or not Plaintiff made any attempt to mask and test. Judge Donnelley's conclusion is baseless, yet she held Plaintiff accountable for her never made any inquiries about this, despite no knowledge whether this was true.

Second, in the Transcript of Katherine G. Rodi cited above p. 2, Ms. Rodi testified that no masking or testing was allowed if the employee was unvaccinated. It was a well-known fact that the NYC DOE refused the masking and testing route. If you were not vaccinated, you could not be in a school building. Period. However, NYC DOE employees who were granted exemptions/accommodations, and given a place to sit *on salary* while the CVM was in place. See Complaint, p. 15:

**New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions**
**https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**

In her Complaint, Plaintiff made clear that her request for a religious **exemption** to Scheinman's arbitration panel was not what she was asking for here. She wrote that she wanted a religious **accommodation** or "RA". See Complaint, **EXHIBIT F(1).**

The Order made a reversible error in agreeing with the Defendant in denying Plaintiff's request for a religious exemption/accommodation on the basis of "undue hardship" without any particulars required by a recent decision in Groff v DeJoy, No. 22-174 (Jan. 13, 2023). If a plaintiff satisfies her burden to allege a prima facie case of religious discrimination, as Plaintiff did in this case, the burden shifts to the employer "to show that it cannot reasonably accommodate the plaintiff without undue hardship on the conduct of the employer's business." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd and remanded*, 479 U.S. 60 (1986). An accommodation is an undue burden when it is "substantial in the overall

context of an employer's business." *Groff v. DeJoy,* 600 U.S. 447, 468 (2023). This, too, is a "fact-specific inquiry," which requires the Court to analyze "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id.* at 468, 470-71.

The Order made a reversible error in not giving the Defendant the burden of proof for declaring "more than a minimal hardship" as the final decision of the Citywide Panel in support of denying Plaintiff her religious exemption/accommodation request. The Defendant did not prove what an "undue burden" in dollars, was. This was an intentional denial of due process under Title VII and Groff v DeJoy that Judge Donnelly did not correctly rule on.

The Order dismisses the religious discrimination claim made by Plaintiff, and thus Judge Donnelly validated the Scheinman Arbitration Award, the most discriminatory, anti-religious rights arbitration decision ever seen in the history of labor and employment law in New York City and State. See Complaint, pp. 2, 11, 12. The Award (Complaint, **EXHIBIT D**) required all those people who wanted to refrain from getting vaccinated to hand in "religious exemptions" to the NYC Department of Education. In her Appeal for a religious accommodation ("RA") , Plaintiff, a Catholic, defined her RA in **EXHIBIT F**:

"the Holy Spirit has powerfully conveyed to my conscience that I shall not accept the COVID-19 vaccine. If I were to go against the Holy Spirit, I would be sinning and endangering my relationship with God and violating my conscience. I hope that you are guided by your moral conscience and agree that forcing man to act against their conscience is shameful and sinful. I pray that you respect my right to follow my moral conscience to deny this Covid 19 vaccination mandate.

Sincerely in Christ,
Elizabeth Parrino"

Plaintiff does not belong to the Christian Scientist faith, and her religious beliefs are personal. She did not fit into the Scheinman criteria for getting a religious exemption (she was misled by the semantics used by Scheinman, and thought religious exemption was the same as religious

7

accommodation). Clearly the criteria prescribed by the Award is discriminatory, and Scheinman and Defendant showed intent in creating this Award and the Appeals procedure. It was all subterfuge.

Indeed, Judge Donnelly's Order did not comment on the fact that Defendants fraudulently mislead excellent tenured public employees such as Plaintiff to their employment doom by creating Rodi's General Committee and the Citywide Panel. New York courts have consistently found that when public employers have any discretion to terminate or change a public worker's employment, the employee is entitled to procedural due process. Plaintiff, a tenured employee of the NYC Department of Education (NYC DOE), has a constitutionally protected property and liberty interest in her continued employment. See Cleveland Bd. of Educ. v Loudermill, 470 U.S. 532, 538 (1985). This interest is created and defined by independent sources such as state law and contract. See Bd.of Regents v. Roth, 408 U.S. 564, 577 (1972); Catterson v. Caso, 472 F. Supp. 833, 838 (E.D.N.Y. 1979) and Federal Laws such as the First, Fourth, Fifth, and 14th Amendments to the Constitution.

Plaintiff relied on the Scheinman Award and was punished for doing that.

An arbitrator cannot issue an award where the "award itself violates a well-defined constitutional, statutory or common law of this State". (Matter of New York City Tr. Auth. v. Transport Workers Union of Am. Local 100, AFL-CIO, 99 N.Y.2d 1). Education Law 3020 and 3020-a are public policy in New York State, and are considered Constitutional due process when discipline is charged. In fact, Education Law 3020-a clearly defines exactly the hearing procedure needed to honor the due process for a tenured teacher such as Plaintiff (see Sections 1 and 2). The *Broecker* Plaintiffs were blocked by the judge from arguing the "sham" of the Scheinman Award. But Mr. Scheinman himself apologized for creating out of thin air the LWOP, and he strenuously argued in his June 27, 2022 Award (Complaint, **Exhibit I**) that all tenured

8

teachers should have been given a 3020-adue process hearing. See also the Scher letter **Exhibit J** on that issue. The Defendant's false argument is that anything to do with vaccinations, even alleged misconduct, is somehow excluded from all existing procedures. This is simply absurd. The Order improperly cites COVID-19 Vaccination as a condition of employment. No change to Plaintiff's conditions and terms of employment were changed in Plaintiff's Collective Bargaining Agreement, and no change occurred to the Constitutional laws governing her employment. See Garvey v City of New York, Appellate Division Case No. 2022-08715, Dina Kolker, Order to Show Cause pp. 4-7. The district court in *Kane* also erred dismissing the as-applied challenges on the theory that vaccination is a condition of employment. DOE policy, and the Mandate itself, permit exemption from vaccination on medical and religious grounds. Thus COVID-19 is *not* a condition of employment for exemption-eligible employees.

In *Broecker v. N.Y.C. Dep't of Education*, the Court affirmed that vaccination was not required as a "condition of employment" for persons who received exemptions because "the City amended the Vaccination Mandate to allow for reasonable medical and religious accommodation" after "City unions[ ] brought a challenge to the Vaccination Mandate, including the omission of religious and medical exemptions on constitutional and other grounds." *No. 21-CV-6387(KAM)* (*LRM*), 2022 U.S. Dist. LEXIS 25104, at *44 n.13 (E.D.N.Y. Feb. 11, 2022) (emphasis supplied). Similarly, in *O'Reilly v. Bd. of Educ*., 2022 NY Slip Op 30173(U),   4 (Sup. Ct., N.Y. Cnty. Jan. 20, 2022), which the district court also cites, the court dismissed the case because, unlike here, the petitioner "[did] not allege that respondents improperly denied her requested exemption or accommodation." *Id*. Not so here.

The  Order ignores the fact that Education Law §3020, §3020-a(2)(a) and the procedures stated in Sections 1 and 2 are Constitutional, public policy in New York State, and, as Plaintiff was charged with misconduct and placed on the Problem Code, she was required to have a 3020-a to

9

prove the charge (that she wanted a religious accommodation in conflict with the CVM). Tenure Law is a federal right to due process that is protected by the Due Process Clause of the U.S. Constitution, gives a property and liberty right to continued employment, and guarantees no reduction in salary or termination without a due process pre-and post hearing. Plaintiff in this case never received a fair pre-termination hearing. This is what she wants to prove in an Amended Complaint. The Tenure Law, enacted in 1897, was trashed by the City of New York in order to fire municipal workers without due process during the pandemic. But this violation of law did not make the law disappear. The New York State Legislature codified these laws and this particular procedure in the 1800's, and held on to these due process rights as law for many years, despite countless challenges for change. A Plaintiff can seek redress through Section 1983 if "the Plaintiff asserts the violation of a federal right, not merely a violation of Federal Law." Blessing v. Freestone, 520 U.S. 329, 340(1997.)

In the case of Sara Coombs-Moreno et al., v the City of New York et al., (Coombs-Moreno v. City of New York, 22-CV-02234(EK)(LB) (E.D.N.Y. Sep. 25, 2024)) Judge Edward Komitee ordered the case dismissed except for a single Plaintiff, Amoura Bryan, who argued against being terminated after she submitted a sincere religious exemption request to the Arbitrators and was denied:

Judge Komitee wrote,

"Additionally, Ms. Bryan pleads that "for exercising her religious practice" — that is, for declining to be vaccinated — she was placed on leave without pay. Id.   142.
These allegations, while highly general, are sufficient at this stage. And the assessment of whether the City could have reasonably accommodated Ms. Bryan without undue hardship is a fact-intensive assessment that cannot be determined from within the four corners of the complaint. See Groff, 600 U.S. at 468.
Therefore, Ms. Bryan's Title VII claim may proceed, but only against certain municipal defendants: the City and the Department of Education (because, as noted above, individuals may not be liable under Title VII).

Plaintiff Bryan Has Alleged a Prima Facie Case of Religious Discrimination Under the NYCHRL.

10

Like Title VII, the City's Human Rights Law requires a plaintiff to allege a bona fide religious belief to make out a prima facie case of discrimination. Specifically, under the NYCHRL, a plaintiff must demonstrate that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the  conflicting employment requirement." Weber v. City of New York, 973 F.Supp.2d 227, 263 (E.D.N.Y. 2013) (collecting cases).

Ms. Bryan is the only plaintiff who articulates a prima facie NYCHRL religious-discrimination claim. She (a) articulates a bona fide belief in the "biblical practice" of plant-based medicine; (b) pleads that she told her employers about this belief; and (c) alleges retaliation for refusal to receive vaccination. FAC ¶¶ 138-142. These claims meet the threshold for Ms. Bryan to proceed under the NYCHRL at this stage. No other plaintiffs, however, approach even this low pleading bar. See Lugo v. City of New York, 518 Fed.Appx. 28, 30 (2d Cir. 2013) ("While the NYCHRL is indeed reviewed independently from and more liberally than federal or state discrimination claims, it still requires a showing of some evidence from which discrimination can be inferred."); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

At the next step of NYCHRL analysis, the burden shifts to the employer "to rebut the presumption of discrimination by clearly setting forth, through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision." Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (N.Y. 2004). Here, defendants cannot carry that burden. **At the motion to dismiss stage, the Court may only consider the facts in the FAC, which pleads that  plaintiff's religion was not accommodated**. See FAC ¶¶ 138-42; Davis v. Boeheim, 24 N.Y.3d 262, 268 (N.Y. 2014). Thus, Ms. Bryan's NYCHRL claim may proceed.

Bryan's NYCHRL Claim May Proceed Against Certain Municipal Defendants

Under the NYCHRL, an employer like New York City is liable for the conduct of its employee or agent "only where": (1) "the employee or agent exercised managerial or supervisory responsibility;" (2) "the employer knew of [an] employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action . . ."; or (3) the employer "should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent [it]." N.Y.C. Admin. Code § 8-107(13)(b). Here, the third factor is easily satisfied at this stage: the City cannot (and does not) contend that it lacked knowledge of the vaccine mandate, the absence of a religious exemption therefrom, or the consequences of non-compliance. Thus, Ms. Bryan's NYCHRL claim is proper against the City of New York and the Department of Education."

Plaintiff makes a claim that she has the same facts and evidence to prove she was never accommodated by Defendants, and respectfully requests that she be given the right to submit an Amended Complaint on the failure to accommodate. This Court's Order is an outlier in this dismissal. Many cases submitted to this Court have been able to proceed to discovery and/or settlement, and Plaintiff asks for the same consideration. See: Hernandez v. The Richmond County District Attorney, et al. , 24-CV-05790 (BMC); Trabacchi v The Department of

11

Education of the City of New York, 24-CV-6123 (RPK) (TAM); Lynch v 24-cv-7795 (DG) (JAM); Vasquez v City of New York 22-cv-05068-HG; Hill v The Department of Education of the City of New York 24-cv-03506, to name a few of the many recent cases.

Plaintiff requests the opportunity to Amend her Complaint in order to enlarge the Constitutional due process argument and her denial of that due process as a matter of justice and equity ("the usual practice is to grant leave to amend the complaint" when a motion to dismiss is granted, Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999))

Dated: March 12, 2026


/s/Elizabeth Parrino

12