**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

*** Filed ***
04:37 PM, 11 May, 2026
U.S.D.C., Eastern District of New York

———————————————————————————x

**ELIZABETH PARRINO,**

Plaintiff       DOCKET NO. 24-CV-08892 (AMD)(JRC)

-against-

**AMENDED COMPLAINT**
*Jury Trial Demanded*

**THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, MELISSA AVILES-RAMOS, Chancellor and KATHERINE RODI, Director of Employee Relations,**

Defendants

———————————————————————————
x

**PLAINTIFF ELIZABETH PARRINO,** ("Plaintiff") proceeding Pro Se, as and for her Summons and Complaint filed to protect her Constitutional rights against the above-captioned Defendants the **DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, MELISSA AVILES-RAMOS,** Chancellor**, and KATHERINE RODI,** Director of Employee Relations (henceforth "Defendants"), alleges upon knowledge as to her own facts and upon information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not

1

change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020).

2. ELIZABETH PARRINO ("Plaintiff") challenges the implementation of the COVID Vaccine Mandate ("CVM") in New York City *as applied* to her, and seeks monetary damages and injunctive relief, including past and on- going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected rights pursuant to 42 U.S.C. Section 1983, 1st and 14th Amendments to the United States Constitution, Free Exercise Clause and Establishment Clause challenges under the First Amendment, Failure to Accommodate, New York State and New York City Human Rights Law (NYSHRL and NYCHRL) and Monell Liability.

3. Plaintiff is entitled to relief under the Second Circuit's holding in Kane v. de Blasio, 19 F.4th 152 (2d Cir. 2021), in which the Court held that the criteria in the implementation of the COVID Vaccine Mandate ("CVM") were not neutral or generally applicable and the City failed to offer any defense that could justify them under strict scrutiny.

4. Detailed below is a process wherein Defendants proposed, adopted, enforced and encouraged certain religious beliefs to be accommodated while other religions were categorically excluded from the possibility of accommodation. No facts were given as to the criteria for determining who received the accommodation and who did not. Plaintiff did not, but does not know the reason(s) why she was denied except that any approval would cause Defendants an alleged "undue burden" . This alleged undue

burden was never supported by any facts or evidence.

5. The actions of Defendants are now known to have been a hoax on the City's public employees. At no time did Defendants adhere to the Constitutional right of religious freedom and at all times they undermined any requests for accommodation if that request included remaining unvaccinated at work.

6. A municipality – the City of New York - is liable when the facts of a matter show a constitutional violation resulting from an official policy, custom, or practice where Defendants (1) discriminated against Plaintiff based on her religious beliefs; (2) wrongfully forced Plaintiff into a suspension without pay and then terminated her, a tenured teacher, by circumventing public policy and placing unconstitutional conditions on employment, due process laws, and the property and liberty rights of the Tenure statute. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). This Court treats the claim against the Department of Education of the City of New York ("DOE") as one against the City of New York.

7. Despite giving religious-based accommodations to other public employees similarly situated, and placing hundreds of unvaccinated employees on reassignment ("rubber rooms") and/or in remote locations on full salary, Defendants, acting at all times under color of law, did not grant Plaintiff's religious exemption/accommodation request ("RA") or offer any accommodation whatsoever, before terminating her.

8. Plaintiff was placed on leave without pay, "LWOP", considered retaliatory discrimination by the U.S. Supreme Court (Burlington Northern and Santa Fe Railway Company v White, 548 US 53 (2006)) the same day that her fingerprints and file number was placed on a "Problem Code". These actions by Defendants successfully blocked her from getting paid for any job within the DOE or any vendor connected with the DOE.

9. Defendants' policies on religious accommodations were then and remain today fundamentally biased, displaying religious animus against Christians, Jews, and other religions except Christian Scientists and Jehovah Witnesses and rejecting individual religious beliefs. These policies showed a troubling bias by prioritizing the views of religious leaders over the sincere beliefs of individual adherents. The Defendants have effectively disregarded the personal and deeply held convictions of individuals like Plaintiff Parrino and discriminated against those whose personal religious beliefs diverged from the public statements of their religious authorities, thereby undermining the principle of individual religious freedom.

10. This implementation process established a preferential treatment of certain religious views over others, contrary to the Establishment Clause.

## **PARTIES**

11. Plaintiff was a tenured employee of the Department of Education of the City of New York in good standing as a tenured teacher since 2012. She had an impeccable reputation and record. Plaintiff was a public employee of Defendants within the meaning of an "employee" as defined in New York State Civil Service Law § 75-b(1)(b).

12. Defendant the Department of Education of the City of New York ("DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, acts under color of law with its' principal place of business located in 65 Court Street in Brooklyn, New York 11201.

13. Defendant Melissa Aviles-Ramos is the Chancellor of the Department of Education of the City of New York ("DOE") and has a responsibility to oversee the NYC system of public schools located throughout all five (5) boroughs of the City of New York.

14. Defendant Katherine Rodi is employed by the Department of Education of the City of New York ("DOE") and started work as the Director of Employee Relations in 2012. At all times relevant to the claims made herein, Defendant Rodi was the Director of a secret "General Committee" and her duty was to deny without review all religious accommodation requests submitted to the DOE in 2021. She also has the responsibility of overseeing the DOE's Office of Safety and Health and the Office of Personnel Investigations, where she decides who among the DOE's employees are placed on a "Problem Code". She monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, Equal Protection Clause, First, Fifth, and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Education Law §§3020 and 3020-a (the "tenure law"). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4)  for claims arising federal questions under 42 U.S.C. 1983.

16. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related

to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

17. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

18. This action seeks recovery of monetary damages for the violation of constitutional rights of property, liberty and due process enshrined in Federal Statute and state law protecting the rights of tenured DOE employees in public service in New York State.

19. Plaintiff was hired as a teacher by the New York City Department of Education ("DOE") in 2012. Plaintiff has earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law Sections §§3020 and 3020-a of the New York State Education Law.

20. On March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents.

21. In August 2020 Plaintiff requested and was approved for a medical accommodation work remotely due to increased risk for severe illness from COVID-19. Thus, from September 2020 to June 2021 Plaintiff had the approved medical accommodation. **EXHIBIT A.**

22. On August 12, 2021 Harry Nespoli, Chairperson of the Municipal Labor Committee, wrote a letter to Renee Campion, Commissioner of the New York City Office of Labor

Relations ("OLR") wherein Nespoli wrote about MLC's officers meeting with the City to negotiate working conditions for municipal employees who could not get the vaccine due to religious, medical, or other reasons. He also mentioned:

"Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under the collective bargaining agreements and law….no policy should be implemented before it is negotiated." **EXHIBIT B.**

23. On September 10, 2021 the DOE sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that removed all Department employees from their jobs involuntarily if they did not submit a COVID vaccination card to the Department by October 4, 2021.This alleged "alternative to any statutory reasonable accommodation process…shall be subject to the following Expedited Review Process to be implemented immediately…" (Scheinman Award, pp. 6-7) was unconstitutional, discriminatory, and violative of any and all due process Plaintiff and all other DOE employees had relied on since starting work in New York City. No one asked for or wanted an "alternative process". **EXHIBIT C**

24. This new, lawless Award never changed the terms of Plaintiff's tenured employment status, although claiming to do so. Indeed, although Scheinman insisted the terms of employment for DOE employees had been changed and the Award was NOT disciplinary, both of these statements were false and part of the conspiracy of harm brought by the City and the DOE against teachers such as Plaintiff. No citation to Education Law §3020 or 3020-a was included in the LWOP, in violation of her constitutional rights. **EXHIBIT D** LWOP.

25. In fact, LWOP will be held by the general public as the model of unconstitutional, extreme police power gone awry, for years to come. In 2020 the scientific community began writing about the inefficiency and dangerous side effects of the COVID Vaccine. But New York

City shut down entirely, and any restaurants or public places that stayed open were punished. Teachers remained at home, teaching remotely from March 2020 to September 2021. On June 23, 2021, a year and a half in to the pandemic, Governor Cuomo announced that the pandemic emergency was officially over in New York State. The virus had mutated by that time to become more mild, there were far fewer deaths and hospitalizations, and the crisis had stabilized dramatically. By the end of July 2021, the scientific consensus among world public health leaders coalesced around three facts: vaccinated people could still catch and spread Covid-19; herd immunity could not be achieved through vaccination for this disease; and any vaccine protection waned significantly in a few weeks. All this information was ignored by Defendants, who proceeded with their pandemic panic plan.

26. On August 5, 2021 CDC Director Rochelle Walensky said on national TV that the vaccines could not stop transmission of Covid-19.( Blitzer, W. (2021, August 5) Transcript: Interview with CDC Director Dr. Walensky. The Situation Room, CNN. http://www.cnn.com/TRANSCRIPTS/2108/05/sitroom.02.html .

27. In 2021 national media and TV news reported that scientists and doctors did not believe that COVID vaccines stopped transmission of the COVID virus, and that natural immunity was more powerful than any vaccine. They spoke out against any mandate to vaccinate. See **Declaration of Jayanta Bhattacharya** https://www.documentcloud.org/documents/22125801-bhattacharya-declaration/; **The Man Who Talked Back: Jay Bhattacharya On The Fight Against COVID Lockdowns** at https://www.hoover.org/research/man-who-talked-back-jay-bhattacharya-fight-against-covid-lockdowns.

28. While this case challenges Defendant's deprivation of Plaintiffs' due process in the

manner in which the COVID Mandate was implemented, not the Mandate itself, it is worth noting the decision of Judge Gerard J. Neri in the case Medical Professionals For Informed Consent et al., v Mary T. Bassett, Index. No. 008575/2022:

> "Arbitrary action is without sound basis in reason and is generally taken without regard to the Respondents acknowledge then-current COVID-19 shots do not prevent transmission (see Summary of Assessment of Public Comment, NYSCEF Doc. No.7, p. 25). The Mandate defines, in the loosest meaning of the word, "fully vaccinated" as determined by the Department in accordance with applicable federal guidelines and recommendations" (ibid). "[I]t is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning" (Gawron v. Town of Cheektowaga, 117 A.D.3d 1410, 1412 [Fourth Dept. 2014], citing Majewski v.
> Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577,583 [1998]). A term which is defined at the whim of an entity, subject to change without a moment's notice contains all the hallmarks of "absurdity" and is no definition at all. In the alternative, the Court finds the Mandate is arbitrary and capricious."

29. This widespread anti-CVM media message was not convenient for New York City and the Defendants, so they doubled down on trashing all who dared challenge their removal from employment because they would not, could not, or did not get the vaccine.

30. In this case, Plaintiff lost her career, health insurance, union membership and salary based upon nothing other than Defendants' animus toward her for standing firm on her religious beliefs that forbid her from being vaccinated against COVID.

31. Defendants have not presented a single fact or any proof of the criteria needed to get an exemption/accommodation, or what their "undue burden" really is.

32. However, a series of police power rulings followed, culminating in a Department of Health Mandate issued on September 15, 2021 which ordered all employees of the NYC Department of Education ("DOE") to get vaccinated or stay away from their school buildings. Of note is ¶6, where it is written: "Nothing in the Order shall be construed to prohibit any reasonable accommodations otherwise required by law." Defendants ignored ¶6 and proceeded to deny religious accommodation appeals for no valid or lawful reason.

**EXHIBIT E**

33. Unknown until about March 19, 2026 when the documentation was made public, the City and people at various agencies under City control, were working on a secret policy statement that would sway the arbitrators who heard the religious accommodation appeals and make them willing to deny any and all who were opposed to abortion or the use of fetal cells in the vaccine…or even appeal to get a religious accommodation at all. Scheinman's Company, Scheinman Arbitration and Mediation Services ("SAMS"), had the monopoly over those hearings. All who appeared before this panel were denied. In fact, General Counsel for the Officeof Labor Relations, the office that provides a linkfromthe DOE to the Mayor, said ina series of secret emails that religious accommodations were "BS".See MEMO-UFT Accommodation Process, **EXHIBIT F**.

34. Plaintiff was suspended without pay suddenly on October 4, 2021. Inexpicably, she was never informed that she also lost her UFT membership and her insurances – Life, Car, etc., leaving her in dire straits.

35. Plaintiff has not become vaccinated with a COVID-19 vaccine because she holds sincere religious beliefs that prohibit her from getting vaccinated. She was denied by the DOE, she appealed to Scheinman's Appeal Panel and was denied; she wrote her plea to the Citywide Panel and was denied because of "undue hardship" – unexplained. See **EXHIBITS  G(1), G(2), G(3), G(4), .**

36. On 11/28/21, United States Court of Appeals for the Second Circuit merit panel concluded :

"It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation. In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State

Human Rights Law, and the New York City Human Rights Law."

Martin Scheinman's Appeal Process was thrown out as unconstitutional, also making the LWOP invalid as a matter of Law.

**EXHIBIT H** Court of Appeals Order

37. On March 24, 2022, the City of New York issued EMERGENCY EXECUTIVE ORDER 62, which gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work. This infuriated  municipal workers and DOE employees who were terminated for not getting vaccinated, because the City and the DOE showed their cards – the COVID Vaccine Mandate ("CVM") was an Order that was not neutral, and did not have general applicability, but targeted DOE educators and municipal workers. The CVM was forever afterwards seen as a discriminatory weapon used to punish employees at any and all levels of seniority, tenured or not. Everyone was fired. Except delivery people, volunteers to schools, cafeteria workers and school bus drivers. None of these groups of people were ever told they had to get the vaccine to work. See **EO 62:**

https://www.nyc.gov/mayors-office/news/2022/03/emergency-executive-order-62

38. In June, 2022, Arbitrator Martin Scheinman issued a second Citywide Award where he apologized for setting up the LWOP. In Scheinman's June 27 Award Scheinman wrote:

"Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio."

See **EXHIBIT I**

39. On July 7, 2022 Attorney Austin Graff cited this fraud in a letter to this Court:

"Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay…..the NYCDOE did not have any

authority to place the Plaintiffs on leave without pay without due process, thereby violating Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. §1883 meaning the NYCDOE's Motion To Dismiss should be denied……his actions caused Plaintiffs to suffer a denial of [their] federal statutory rights, or [their] constitutional rights or privileges……..but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing….. admitting that his actions caused the Plaintiff to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

**EXHIBIT J** Scher Letter.

40. On or about April 28, 2022 Plaintiff was informed that the DOE's Office of Personnel Investigations ("OPI") had placed her personnel file and fingerprints on the "Problem Code" database in October, meaning that she would not be able to work in any position for the NYC DOE or any vendor because she was deemed guilty of misconduct/insubordination. Defendant Katherine Rodi has been Director of OPI and in charge of placing problem codes on personnel files since 2012. Plaintiff was, by Rodi's action, blocked from getting paid by the NYC DOE or any vendor. **EXHIBIT K**, Barry Black Affidavit; EXHIBIT K(1) Declaration of Betsy Combier+ Amato email; **EXHIBIT K(2)** Rodi testimony, Problem code .

41. Plaintiff was found guilty of misconduct, then terminated for her religious beliefs. The misconduct charge was placed on Plaintiff's personnel file on October 4, 2021. Secretly. Plaintiff did not know anything about this until after April, 2022. Plaintiff saw proof of this fraudulent charging process when other teachers were denied unemployment benefits and made their denial of benefits public. The denial was based upon termination due to "misconduct", solely due to the fact that they, like Plaintiff, held sincere religious beliefs prohibiting getting vaccinated.

42. On February 10, 2023 Mayor Adams ended the COVID-19 vaccine mandate and made it voluntary. Yet no one at the DOE told Plaintiff she could re-apply for her job. Nonetheless, Plaintiff requested reinstatement now that the CVM could not be used against her. She received no reply, **EXHIBIT L.** This is evidence that the CVM was a cover up of the targeted mass terminations and layoffs at the DOE, not due to any alleged " student safety" issues.

43. On March 27, 2023, Plaintiff filed a Notice of Claim against the City of New York and the NYC Department of Education. **EXHIBIT M**

<u>**CAUSES OF ACTION**</u>
<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
<u>**FOR RELIGIOUS DISCRIMINATION**</u>

44. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 43 as if the same were fully set forth at length herein.

45. Plaintiff submitted to Defendants in September 2021 a statement on her sincere religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine. See Religious statement granted for RF, Assistant Principal at the DOE. **EXHIBIT N**

46. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

47. In an AFFIRMATION dated February 8, 2022, UFT General Counsel Beth Norton wrote,

"Approximately 240 UFT-represented DOE employees continue to work for the DOE remotely without being vaccinated for COVID-19, having received a medical exemption or a religious accommodation. The DOE has advised that some of these employees will be directed to work in-person at non-school facilities later this month, which is

permissible under the Mandate.

From August 23, 2021 through at least November 22, 2021, the DOE sent numerous emails to staff regarding the vaccine mandate and consequences of an employee's failure to comply with the DOE Mandate. None of the email communications indicate, or even mention, that unvaccinated UFT members will be subject to summary termination without regard to due process rights.

 Since the order in <u>Kane</u> was issued, many UFT members have advised the UFT that they were deterred from filing an application for accommodation under the original narrow parameters because they knew they would be denied. Others applied and were deterred from appealing on the same basis. Indeed, by communicating the narrow parameters the DOE hoped to cut down on applications that it did not intend to grant.

While the DOE has begun denying these post-<u>Kane</u> applications at the agency level, they are not permitting those employees to appeal, as others were able. Now, some of these employees – who are subject to the same unconstitutional procedures rejected by the Second Circuit – are among those who received notices earlier this week that they will be summarily terminated effective February 11, 2022. By placing these individuals on the termination list before some of their initial applications have been determined, the DOE demonstrates that they will be summarily denied, just as the DOE is seeking to summarily terminate them……

Before the most drastic action of termination, UFT members are entitled to access to the due process protections embodied in statutes and agreements the DOE is compelled to follow. To hold otherwise would dismantle the statutory and contractual due process procedures afforded to UFT members as public employees…….Tenured pedagogues such as classroom teachers, guidance counselors, school secretaries, school social workers, and school psychologists, can only be disciplined after an Education Law § 3020-a due process hearing before a neutral hearing officer. <u>See</u> Education Law 3020-a; Article 21 of the Classroom Teacher CBA….. Therefore, the DOE's attempt to summarily terminate unvaccinated employees denies UFT-represented DOE employees the rights they are *guaranteed* by statute and contract prior to adverse employment action."

The New York City Municipal Labor Committee et al., v The City of New York et al., Index. No. 151169/2022, Doc. No. 30.

48. Defendants ignored this due process claim and Plaintiff received no hearing or accommodation. Defendants forced illegal summary termination of Plaintiff by employer fiat, a shocking event in the history of labor relations in New York City and State. The chaos caused by the discrimination of the DOE in the implementation of the COVID mandate is profound, and burdened both the Free Exercise Clause and the Establishment Clause of the Constitution, probably for years to come.

49. In the case of Matthew T. Murphy v New York Police Department and City of New York, (23-cv-11235), the Court found that Murphy sufficiently pled a disparate treatment claim

on a theory of his employer's failure to accommodate his religious beliefs which conflicted with an employment requirement. The Court found that he had told his employer about his beliefs, and he was disciplined with termination for his failure to comply with the conflicting employment requirement. Here, Defendants added a problem code that was undeserved to Plaintiff's file and fingerprints as further punishment.

50. See Maita v City of New York, 24-cv-06559 (DG)(VMS) where Plaintiff Maita cites some numbers within the Fire Department. He wrote that the FDNY granted 30 reasonable medical accommodations for firefighters in December 2022. (Dkt. #25, p. 4) and, at the FDNY, 105 reasonable accommodations were given in January 2022. Also, Maita alleged, "Medical accommodations were granted on more favorable terms than religious accommodations . . . [,] without considering any undue hardship." In Kane v De Blasio, the City told the Court of Appeals that 165 employees of the DOE received accommodations. This is a matter for discovery.

51. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. …..
>
> Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

52. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to

an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

53. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones. All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

54. Plaintiff's unemployment and her unvaccinated status led directly to her being harassed and belittled by employees and her workplace peer and supervisors who were vaccinated. See: **NYC teachers with vaccine exemptions are being treated like pariahs,** https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

55. In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and humiliated by her peers both inside and outside of the workplace. She was discriminated against because of her religious beliefs.

56. Defendants started with suspension without pay, then secretly charged Plaintiff with misconduct/insubordination, falsely informed her that they had changed the terms of her employment when no change took place, flagged her files with a "Problem Code" without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination. The U.S. Supreme Court has ruled that this is retaliatory discrimination: Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006) ("that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay for 37 days").

57. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed into leaving her job and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List. At all relevant times, the City had full discretion to repeal, amend, carve-out or pause any aspect of the Mandates and appeal procedures, or repeal them altogether. Yet despite mounting evidence that the Mandates were unnecessary, and knowledge that Plaintiff and thousands of others needed religious accommodation, the City did not amend any of the temporary "emergency" policies to provide relief. And when they did announce possible reinstatement in 2023 and again in 2025, no one was reinstated who had been wrongfully terminated.

58. Defendants' deliberate targets were employees similarly situated as the Plaintiff here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, Constitutionally protected property and liberty rights to continued employment. Defendants never liked this policy. Defendants wanted – and succeeded – in fraudulently harassing and discriminating against Plaintiff to get them out of their positions quickly without due process. Their procedure, namely allowing Martin Scheinman to hold hearings where everyone would be denied their appeal, worked. Until

November 28, 2021. (Ex. H).

59. On October 4, 2021 Plaintiff's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB). Anyone with the flag or Code on their fingerprints cannot get paid by the Defendants or any of the thousands of vendors working in the City of New York. This scarlet letter is extremely damaging to Plaintiff's career and character. See the following post on Parentadvocates.org:

> "The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints"
> https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

60. The Code is accessible by government agencies and principals, and UFT Representatives, among others. The label means that the individual has committed misconduct, and that Scheinman gave false information in his September 10 Award when he wrote that LWOP was not disciplinary. It was, and he knew it. He wrote and negotiated the CBA for the UFT.

61. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of her Constitutional rights to property, liberty and a due process hearing, 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FOR FAILURE TO REASONABLY ACCOMMODATE**
**THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS**

62. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 61 as if the same were fully set forth at length herein.

63. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated

with the COVID-19 vaccine.

64. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

65. No reasonable accommodation was offered to Plaintiff yet other employees of the Defendants received accommodations for their religious and/or medical accommodations.

66. At all relevant times Defendants knew that they had "rubber rooms" and reassignments to home as the new workplace for employees similarly removed from their positions in the Department:

> **New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions**
> **https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**
>
> and "rubber homes"
>
> **Idled NYC educators do nothing but sign in remotely, even from Europe**
> https://nypost.com/2023/01/14/idled-nyc-educators-do-nothing-but-sign-in-remotely-even-from-europe/ By Susan Edelman, NY POST, Published Jan. 14, 2023
>
> See also **EXHIBIT O.** Remote teaching available.

67. Defendants never engaged in a dialogue about Plaintiff's accommodation or reassignment. This deprivation of a lawful procedure was intentional, acted on under color or law, and pursued in bad faith.

**68.** Defendants claimed "undue burden" while simultaneously omitting information of their long-term policy re-assigning employees to "rubber rooms", some of which held about 1-2000+ employees from 2002 until 2010. After 2010 Defendants scattered the re-assigned employees who could not be near children to rooms throughout New York

City. The re-assigned employees not only were not told what they were guilty of, but were awaiting charges of incompetency or misconduct for some act that may never have happened. A problem code was put on these re-assigned employees when they were removed from their classrooms and school. Some remained reassigned to the rubber room for more than 7-15 years. All reassigned personnel received their full salary and benefits while they waited for a hearing unless they were removed from salary at a probable cause hearing. During the pandemic, these re-assigned employees awaited their §3020-a hearings at home.

**69.** Defendants could have given all the so-called "miscreants" similarly unvaccinated as Plaintiff, a reassignment to home or a rubber room. Defendants chose to claim that no accommodation was available and any accommodation was an "undue burden". This lack of consideration directly contradicts the ruling in Groff. RF received a religious accommodation. He was made Principal of St,Brigid's, a school building set aside for DOE employees who were granted accommodations and remained unvaccinated and on salary. Why RF received his religious accommodation and Plaintiff did not, is a mystery.

70. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A THIRD CAUSE OF ACTION:
### VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

71. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 70 as if the same were fully set forth at length herein.

72. Defendants while acting under the color of law, unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

73. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

74. New York City was the only location in New York State which mandated the vaccine or termination for public employees. New York City was also the only place where tenured educators were suspended without pay and terminated without a 3020-a hearing. Every other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing. Anyone designated for charged misconduct received a 3020-a hearing. As a direct result of Defendants' violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

75. Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover

compensatory and nominal damages including backpay.

76. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her religious beliefs, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her disabling condition, in violation of 42 U.S.C. § 1983; 14th Amendments due process clauses; Tenure rights and Law; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR RETALIATION

77. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs through 76 as if the same were fully set forth at length herein.

78. In October 2021 Defendants changed the course of Plaintiff's life and career by placing her on an involuntary forced leave without pay (LWOP) because she requested a religious exemption/accommodation request to remain working while unvaccinated.

79. Plaintiff at that time had been masking and testing, while working in the school performing her excellent and professional service to the children. There is no reason other than religious discrimination for Plaintiff to have been terminated. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

80. Plaintiff presented a sincere religious belief to SOLAS, the DOE database, and was denied, then appealed to the Citywide Panel and was denied due to the fact alleged by Defendants that she would cause an undue burden. The undue burden in substance remained a mystery.

*81.* It is well-known that tenured teachers have a contract. The CBA for teachers such as

Plaintiff details the process for a Leave. See *Laura Campbell-Lui v. New York City*

*Department of Education et al, Index No.* 153518/19*, doc. 14, p.125:*

> "Teachers may be granted a leave of absence without pay of up to two years to adjust personal affairs (such as the winding up of a family business on the death or incapacitation of the family member in charge) in accordance with existing rules and regulations. The teacher may consult with the Union with respect to the matter. Teachers who are denied such a leave may refer the matter to the Chief Executive of the Division of Human Resources for review and final determination."

82. In other words, the leave without pay is requested by the employee, it is not forced on the

employee. There is actually no forced leave without pay unless you look at "suspension

without pay", which is a disciplinary punishment after a misconduct charge is served on a

teacher in preparation for a hearing:

> "5. **Serious Misconduct**
> The parties agree that certain types of alleged misconduct are so serious that the employee should be suspended without pay pending the outcome of the disciplinary process. Serious misconduct shall be defined as actions that would constitute: the felony sale, possession, or use of marijuana, a controlled substance, or a precursor of a controlled substance or drug paraphernalia as defined in Article 220 or 221 of the Penal Law; or any crime involving physical abuse of a minor or student (crimes involving sexual abuse of a minor or student are addressed in paragraph 6 below); or any felony committed either on school property or while in the performance of teaching duties; or any felony involving firearms as defined in Article 265 of the Penal Law; or actions that would constitute a class A-I or A-II felony or any felony defined as a violent felony offense in NY Penal Law § 70.02. If an employee is accused of committing serious misconduct, the employee shall be removed from payroll for a term not to exceed two (2) months after a finding by the "probable cause arbitrator" that there is probable cause to believe that the actions alleged were committed by the employee and that they constitute "serious misconduct" as defined above. Probable cause exists when evidence or information which appears reliable discloses facts or circumstances making it likely that such conduct occurred and that such person committed the conduct. To establish probable cause, the investigator assigned to the matter must be present and testify under oath before the arbitrator. The Board may also be required to produce signed statements from the victim or witnesses, if any…."
> CBA, p. 156, **ARTICLE TWENTY-ONE DUE PROCESS AND REVIEW PROCEDURES**

83. Martin Scheinman's LWOP, supported by Defendants to the present day, was made up out

of whole cloth and is not in any Union contract in its' alleged form in 2021 (EX. D)

connected to the COVID vaccine.

84. The U.S. Supreme Court has ruled that the actions of Defendants in forcing employees into leave without pay, is retaliatory discrimination in *Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006)* ("that **White suffered retaliatory discrimination** when she was reassigned to less desirable duties and suspended without pay"). Justice Breyer delivered the opinion of the Court:

> " Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88–352, §704, 78 Stat. 257, as amended, 42 U. S. C. §2000e–2(a). A separate section of the Act—its anti-retaliation provision—forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e–3(a).
> The Courts of Appeals have come to different conclusions about the scope of the Act's anti-retaliation provision, particularly the reach of its phrase "discriminate against." Does that provision confine actionable retaliation to activity that affects the terms and conditions of employment? And how harmful must the adverse actions be to fall within its scope?
> We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."

85. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed into involuntarily leaving her job. The punishment was severe, due to the sudden loss of not only her salary, but health insurance at the exact moment she needed it most, and Union membership so she could not grieve the violation of the bargained for rights in her contract, without any hearing on the grounds for the misconduct charge. Plaintiff was also permanently placed on a Problem Code.

86. After Plaintiff was removed from salary she was warned that if she did not give up her right to sue the DOE, she could not be returned to work nor keep her health benefits.

87. All these actions are retaliatory discrimination, part of a "punish without proof" procedure

and "you better do what we say you must do, get vaccinated, or you will be sorry".

88. Defendants' deliberate targets were employees similarly situated as the Plaintiff here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, protected property and liberty rights to those employees who earn this status. Defendants never liked this policy. Defendants wanted – and succeeded – in fraudulently harassing and discriminating against Plaintiff to get them out of their positions quickly without due process. Their procedure, namely allowing Martin Scheinman to hold hearings where everyone would be denied their appeal, worked. Until November 28, 2021, when his procedure was declared unconstitutional.

89. The MEMO-UFT Accommodation Procedure (EXHIBIT F) shows the animus and retaliatory discrimination that the process detailed in this case shows at every step. From the start, the City, DOE and Steven Banks all wanted any employee who submitted a religious accommodation request to be denied, terminated, removed from salary. Banks called religious beliefs against getting the COVID vaccine "BS". From this statement, Banks seemed to believe that all teachers who claimed a sincere religious belief in order to remain unvaccinated were basically lying.

90. The denial of any hearing is also in this mix of voices which created the retaliatory discrimination. Defendants insist that the implementation of the CVM was never disciplinary, because Martin Scheinman said so in his September 10, 2021 Award. The laws of New York City and State refute this. In addition to the case cited above, *Burlington v White,* there is the decision of the Third Appellate Division and the Court of Appeals in the matter of *Kilduff v. Rochester City School District,* 107 A.D.3d 1536, 966 N.Y.S.2d 708 (N.Y. Ct. App. 2013):

> "We agree with petitioner that respondents failed to comply with the requirements of Education Law § 3020 (1) when they disciplined petitioner without affording her a hearing pursuant to Education Law § 3020-a….. (see generally Matter of Winter v Board

of Educ. for Rhinebeck Cent. School Dist., 79 NY2d 1, 9 [1992], rearg denied 79 NY2d 978 [1992]; Matter of Diggins v Honeoye Falls-Lima Cent. School Dist., 50 AD3d 1473, 1474 [2008]). Present — Smith, J.P., Fahey, Carni, Sconiers and Whalen, JJ."

91. This decision was affirmed by the Court of Appeals in Matter of Kilduff v Rochester City Sch. Dist., 2014 NY Slip Op 08056 [24 NY3d 505], November 20, 2014.

92. Plaintiff was never given any due process. This is part of the retaliation and discrimination. Martin Scheinman's panel denied everyone. So did Katherine Rodi's General Committee. This is retaliation and discrimination.

93. Defendants placed Plaintiff on the problem code as part of their discrimination and retaliation. On October 4, 2021 Plaintiff's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB). Anyone with the flag or Code on their fingerprints cannot get paid by the Defendants or any of the thousands of vendors working in the City of New York. This scarlet letter is extremely damaging to Plaintiff's career and character. See the following post on Parentadvocates.org:

> "**The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints**"
> https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

94. The story given by the DOE that the Problem Code is not available to anyone except DOE employees, this is totally false. The Declaration of Betsy Combier shows that, as Ms. Combier never worked for the DOE and was able to tell employees whether or not they were on the Code, when asked.(EX. K(1)) The Code is accessible by government agencies and principals, and UFT Representatives, among others. The label means that the individual has committed misconduct and was found guilty.

95. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of her Constitutional

rights to property, liberty and a due process hearing, 42 U.S.C. § 1983; N.Y. Executive

Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**PLAINTIFF WAS DENIED HER PROPERTY AND LIBERTY RIGHTS TO A**
**CONSTITUTIONALLY PROTECTED DUE PROCESS HEARING**

96. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs

1 through 95 as if the same were fully set forth at length herein.

97. Plaintiff was punished with wrongfully being disciplined for her alleged

"insubordination" in not getting vaccinated with the COVID vaccine  without any

§3020-a hearing and no accommodation offers or review by the Defendants. Education

Law Section §3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during
a term of employment except for just cause and in accordance with the
procedures specified in section three thousand twenty-a of this article;
2. No person enjoying the benefits of tenure shall be suspended for a fixed time
without pay or dismissed due to a violation of article thirteen-E of the public
health law….. (iii) the provisions of subdivisions one and two of this section
shall not apply to agreements negotiated pursuant to this subdivision…"

98. Plaintiff did not, at any time, waive her rights to a §3020-a hearing on her religious

exemption/accommodation. She wanted her due process rights to be honored. Instead, she

was declared insubordinate by the Department, her personnel file was flagged and her

fingerprints tagged with a "Problem Code" designating misconduct and put into the same

database used by the FBI.

99. The United States Supreme Court has defined waiver as "an intentional relinquishment

or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464

(1938). Courts should "indulge every reasonable presumption against waiver, Aetna

Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

100.  In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

> "Presuming waiver from a silent record is impermissible. The record must show, or thise must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

101.  Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

102.  Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause. Judge Desmond Green in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that:

> "New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a, 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985].
> New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " Education Law § 3020."

103.  Plaintiff did not have standing to protest the Scheinman Award issued to all teachers in September 2021, so she was forced to submit to the procedure that subsequently led to her

wrongful termination without due process. Clearly, Scheinman made up the LWOP by changing the commonly known AWOP ("Absence Without Pay") which is disciplinary to a forced leave without pay in order to throw out senior, tenured teachers such as Plaintiff without a due process hearing. Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021.(EX D: LWOP). This alleged "policy" never changed the terms of Plaintiff's tenured employment status, although claiming to do so. The Award did not provide for any policy related to termination, because those procedures remain *unchanged.* (emphasis added). Moreover, the Award does not determine that the DOE has a right to summarily terminate unvaccinated employees who have not selected from the personnel policies available to them by November 30, 2021. Rather, the Award states that City employers can *"seek to"* terminate those employees, which they have now done in an impermissible manner, given the Awards' explicit reservation of rights.

104. Scheinman committed a fraud against Plaintiff and breached an implied covenant of good faith and fair dealing by issuing lawless requirements of procedure that Plaintiff could not comply with yet relied on to her detriment. Scheinman's actions were intentional and deliberate.

105. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religious beliefs, and unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religious beliefs, in violation of Education Law §3020, §3020-a (Tenure Law); 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR MUNICIPAL LIABILITY UNDER SECTION 1983

106. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 105 as if the same were fully set forth at length herein.

107. Under § 1983, the CITY and DOE may be liable for unconstitutional actions taken by its employees where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City]'s officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

108. To establish a municipal liability (or Monell) claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007); Agosto, 982 F.3d at 97.

109. Governments can only be held responsible for the actions of their employees when "their official policies cause their employees to violate another person's constitutional rights." City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988). Therefore, a plaintiff must "demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" Agosto, 982F.3d at 98 (quoting Bd. of City Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137L. Ed. 2d 626 (1997)).

110. Here, Plaintiff has stated sufficient facts to plead a Monell claim, as her complaint challenges an official DOE policy. Wray, 490 F.3d at 195.

111. Plaintiff includes numerous allegations as to Defendants' actions regarding her termination process, and has sufficiently alleged that the City and DOE and its employees are responsible for the Mandate itself, its' enforcement, and implementation. See

Praprotnik, 485 U.S. at 122; Agosto, 982F.3d at 98-99.

112.    Plaintiff has enough facts to establish a constitutional violation in the implementation of the CVM as-applied to her and to all DOE employees similarly situated.

113.    Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of the First Amendment, Free Exercise Clause, and Establishment Clause, contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.    Permanently removing the Problem Code from Plaintiff's files;

2.    Awarding Plaintiff all the back pay, car days and any other time owed since she was removed from her salary in October 2021;

3.    Granting such other and further relief that the Court deems just and proper.

Dated: May 11, 2026

Ronkonkoma, NY                    /s/Elizabeth Parrino

# EXHIBIT A

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Wednesday, August 12, 2020 9:54 PM
**To:** Parrino Elizabeth <EParrino@schools.nyc.gov>
**Subject:** Your Application for Reasonable Accommodation is Approved

08/12/2020

Case#: A10279
File#: 0877373
Emp ID: 1341179

Dear ELIZABETH PARRINO,

The HR Connect Office of Medical, Leaves and Records Administration has approved the following application:

**Type of Accommodation:** Reasonable Accommodation to work remotely due to increased risk for severe illness from COVID-19

At this time, this accommodation is provided from the start of the school year until December 31, 2020. Please note that this accommodation, including the effective dates, is subject to further DOE review and change in accord with applicable federal, state, and city policy. Any information about your COVID-19 accommodation will go to your DOE e-mail account.

As a reminder, if there are any changes to your medical condition(s) and you no longer require an accommodation and/or you require a leave of absence, you should notify your principal/supervisor and submit the appropriate application if applicable.

If you need a change to your Reasonable Accommodation, please contact the Office of Disability Accommodatin atRARequest@schools.nyc.gov.

**Questions**

For more information, you may also visit the HR Connect Employee Portal by logging in with your DOE/Outlook User ID and password at https://doehrconnect.custhelp.com.

Sincerely,

*HR Connect*

Medical, Leaves, and Records Administration

Please do not reply to this message via email. This email address is automated.

# EXHIBIT B

# Municipal Labor Committee

55 Water Street, 23rd Floor / New York, NY 10041 / (212) 815-1474

**CHAIRPERSON**
HARRY NESPOLI
Local 831, I.B.T. Uniformed
Sanitationmen's Association, AFL-CIO

**CO-CHAIRPERSON**
HENRY A. GARRIDO
District Council 37, AFSCME, AFL-CIO

**EXECUTIVE VICE-CHAIR**
MICHAEL MULGREW
United Federation of Teachers, AFL-CIO

**SECRETARY**
GREGORY FLOYD
Local 237
City Employees Union, I.B.T., AFL-CIO

**TREASURER**
MARK CANNIZZARO
Council of School Supervisors &
Administrators

**VICE CHAIRPERSONS**

ANDREW ANSBRO
Uniformed Firefighters Association

BENNY BOSCIO, JR.
Correction Officers' Benevolent Association

BARBARA BOWEN
Professional Staff Congress
City University of New York

JOSPEH COLANGELO
S.E.I.U. New York City Local 246

ROBERT CROGHAN
Organization of Staff Analysts

JUDITH A. CUTCHIN
New York State Nurses Association

PAUL DIGIACOMO
Detectives' Endowment Association

JAMES LEMONDA
Local 854, Uniformed Fire Officers
Association, AFL-CIO

MARTIN A. LYDON
District Council of Carpenters, AFL-CIO

WILLIAM M. LYNN
International Union of Operating Engineers
Local 30, AFL-CIO

JOSEPH MANNION
Sanitation Officers Association

GLORIA MIDDLETON
Local 1180, NYC Administrative
Employees, CWA, AFL-CIO

FRANK PROSCIA, M.D.
Doctors Council

PETER STEIN
Local 508, NYC Lifeguard Supervisors,
AFSCME, AFL-CIO

LOUIS TURCO
Lieutenants Benevolent Association

MAF MISBAH UDDIN
Local 1407, NYC Accountants, Statisticians
& Actuaries, AFSCME, AFL-CIO

ANTHONY WELLS
Local 371, Social Service Employees,
AFSCME, AFL-CIO

*Executive Secretary*
ELLEN MEDWID

August 12, 2021

Hon. Dean Fuleihan
First Deputy Mayor
City of New York
City Hall
New York, New York 10007

Hon. Emma Wolfe
Chief of Staff and
 Deputy Mayor for Administration
City of New York
City Hall
New York, New York 10007

Hon. Renee Campion
Commissioner
New York City Office of Labor Relations
22 Cortlandt St.
New York, NY 10007

Dear All:

 I write to express the severe concern—and great disappointment—of the MLC Union leaders on the lack of progress in arriving at a negotiated program to implement the City's vaccine/testing policy.

 Several weeks ago, the City announced, without prior consultation or bargaining with the Unions, a policy that would require public employees either to be vaccinated or be tested weekly to avoid suspension without pay. Despite this unilateral action, with an eye towards the unfortunate advance of the Delta variant, the MLC's officers agreed to meet and discuss the proposed policy with you and numerous other key City officials on July 28th. The tenor of the discussion, we thought, was the City's desire to work collaboratively with the Unions to navigate a path towards achieving the objectives of the policy.

 City leadership collectively asked the Union leaders to provide proposals and raise concerns, which we did. Primary among those concerns was the major logistical hurdle of providing timely and accessible testing to the likely 100,000 City workers who, despite the encouragement of many (including Union leaders), would opt out of vaccination for medical, religious and other reasons. This major dilemma, the Unions warned, would exist even if the policy was successful in encouraging a significant portion of the currently unvaccinated employees to vaccinate.

The MLC officers cautioned that logistics take time to work out, would necessarily be agency specific in places and that, without proper planning, the City would be in a position of having to order so many employees home without pay that there would be insufficient staffing to carry out the duties required to appropriately provide services to the residents of the City. We also raised fundamental questions, including, with regard to testing, whether it would be performed at the work site and on work time, and if not, where testing would be available and how workers would be compensated for complying with the mandated policy.

The discussion concluded on a hopeful note with the City agreeing to take back many of the comments, concerns and suggestions for consideration and to continue the discussions with the Unions. *That was two weeks ago.* While there have been sporadic discussions with some, MLC inquiries regarding these essential matters have essentially gone unanswered. This is unacceptable.

The MLC and its leaders have been firm and consistent that while the Unions support encouraging vaccination (and have made considerable efforts on their own to encourage their members to vaccinate), they will not abdicate their legal right and responsibility to protect the rights of workers to opt for either vaccination or testing, to be held harmless for both the time and cost of testing and vaccination, and to have a fair process for any form of discipline. Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under collective bargaining agreements and law.

Accordingly, we seek a prompt meeting to continue this vital discussion. In the meantime, no policy should be implemented before it is negotiated.

Sincerely,

*Harry Nespoli*

Harry Nespoli
Chair

cc:     Henry Garrido
        Co-Chair
        District Council 37

        Michael Mulgrew
        Executive Vice Chair
        United Federation of Teachers

        Gregory Floyd
        Secretary
        Local 237, City Employees Union

        Mark Cannizzaro
        Treasurer
        Council of School Supervisors & Administrators

# EXHIBIT C



**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

September 10, 2021

<u>**Via E-Mail Only**</u>
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:   **Board of Education of the City School District of the City of New York**
      **and**
      **United Federation of Teachers, Local 2, AFT, AFL-CIO**
      **(Impact Bargaining)**

Dear Counsel:

    Enclosed please find my Award in the above referenced matter.

    Thank you.

                                    Sincerely,

                                    Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

Ex 1

```
--------------------------------------- X
In the Matter of the Arbitration
                                        X
          between
                                        X
BOARD OF EDUCATION OF THE CITY                    Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF          X
NEW YORK
                                        X
          "Department"
                                        X
        -and-
                                        X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                    X

          "Union"                       X

--------------------------------------- X
```

**APPEARANCES**


**For the Department**
   Renee Campion, Commissioner of Labor Relations
   Steven H. Banks, Esq., First Deputy Commissioner
   and General Counsel of Labor Relations




**For the Union**
STROOCK & STROOCK & LAVAN, L.L.P.
     Alan M. Klinger, Esq.


   Beth Norton, Esq., UFT General Counsel
   Michael Mulgrew, UFT President




**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

2

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

5

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I.   Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)— with contraindications delineated in CDC clinical

7

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

9

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

10

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

11

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

12

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. Leave

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

13

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

   i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

   ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

   iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv. Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v. In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi. If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

15

vii.  All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

III. **Separation**

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons.  An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

16

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK          )
                           )    ss.:
COUNTY OF NASSAU           )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 11 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18

# EXHIBIT D

# Notice of Leave Without Pay - PLEASE READ

NYCDOE <noreply@schools.nyc.gov>
Sat 10/2/2021 3:10 PM
To: ██████████@schools.nyc.gov>



Dear ██████,

You are receiving this message because **you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's COVID-19 Vaccine Mandate**. If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. **This means you must <u>not</u> report to your work or school site beginning Monday, October 4th.**

While you are on Leave Without Pay (LWOP), you:

- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the **DOE Vaccination Portal**

1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the **DOE Vaccination Portal**, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door. You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately. Failure to return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time.

Employees represented by UFT or CSA who have been placed on LWOP due to vaccination status may select (in SOLAS) special separation or leave options per the arbitration award:

- **Separation with benefits** (available in SOLAS as of Monday, October 4): Employees choosing to separate under this option:
  - **Must share their intention to separate via SOLAS by October 29, 2021.**
  - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
  - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
  - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
  - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
  - They will remain eligible for health insurance through September 5, 2022
  - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,

NYCDOE Division of Human Capital

# EXHIBIT E

**ORDER OF THE COMMISSIONER
OF HEALTH AND MENTAL HYGIENE
TO REQUIRE COVID-19 VACCINATION FOR
DEPARTMENT OF EDUCATION
EMPLOYEES, CONTRACTORS, VISITORS, AND OTHERS**

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic;" and

**WHEREAS,** on September 9, 2021, President Joseph Biden announced that staff who work in Head Start programs and in schools run by the Bureau of Indian Affairs and Department of Defense will be required to be vaccinated in order to implement the CDC's recommendations; and

**WHEREAS**, on August 26, 2021, New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a vaccine by October 7, 2021; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt

vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science; and

**WHEREAS** the New York City Department of Education ("DOE") serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated; and

**WHEREAS**, a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**WHEREAS,** on August 24, 2021, I issued an order requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building, which was amended on September 12, 2021; and

**WHEREAS**, unvaccinated visitors to public school settings could spread COVID-19 to students and such individuals are often present in public school settings and DOE buildings;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, to

**RESCIND and RESTATE** my September 12, 2021 Order relating to COVID-19 vaccination for DOE employees, contractors, visitors, and others; and

I hereby order that:

1. No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:
   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

2.  An employer to whom staff must submit proof of vaccination status, must securely maintain a record of such submission, either electronically or on paper, and must demonstrate proof of compliance with this Order, including making such records immediately available to the Department upon request.

3.  Beginning September 13, 2021, all visitors to a DOE school building must show prior to entering the building that they have:
    a.  Been fully vaccinated; or
    b.  Received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
    c.  Received the first dose of a two-dose vaccine.

4.  Public meetings and hearings held in a DOE school building must offer individuals the opportunity to participate remotely in accordance with Part E of Chapter 417 of the Laws of 2021.

5.  For the purposes of this Order:

    "Charter school setting" means a building or portion of building where a charter school provides instruction to students in pre-kindergarten through grade 12 that is not collocated in a DOE building.

    "DOE school setting" includes any indoor location where instruction is provided to DOE students in public school pre-kindergarten through grade 12, including but not limited to locations in DOE buildings, and including residences of students receiving home instruction and places where care for children is provided through DOE's LYFE program. DOE school settings include buildings where DOE and charter schools are co-located.

    "DOE staff" means (i) full or part-time employees of the DOE, and (ii) DOE interns (including student teachers) and volunteers.

    "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization.

    "Proof of vaccination" means proof that an individual:
    a.  Has been fully vaccinated;
    b.  Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
    c.  Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

    "Staff of contractors of DOE or the City" means a full or part-time employee, intern or volunteer of a contractor of DOE or another City agency who works in-person in a DOE school

setting, a DOE building, or a charter school, and includes individuals working as independent contractors.

"Visitor" means an individual, not otherwise covered by Paragraph 1 of this Order, who will be present in a DOE school building, except that "visitor" does not include:

    a.  Students attending school or school-related activities in a DOE school setting;
    b.  Parents or guardians of students who are conducting student registration or for other purposes identified by DOE as essential to student education and unable to be completed remotely;
    c.  Individuals entering a DOE school building for the limited purpose to deliver or pick up items;
    d.  Individuals present in a DOE school building to make repairs at times when students are not present in the building;
    e.  Individuals responding to an emergency, including police, fire, emergency medical services personnel, and others who need to enter the building to respond to or pick up a student experiencing an emergency;
    f.  Individuals entering for the purpose of COVID-19 vaccination;
    g.  Individuals who are not eligible to receive a COVID-19 vaccine because of their age; or
    h.  Individuals entering for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election.

"Works in-person" means an individual spends any portion of their work time physically present in a DOE school setting, DOE building, or charter school setting. It does not include individuals who enter such locations for the limited purpose to deliver or pick up items unless the individual is otherwise subject to this Order. It also does not include individuals present such locations to make repairs at times when students are not present in the building unless the individual is otherwise subject to this Order.

6.  Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law.

7.  This Order shall be effective immediately and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: September 15, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

Page 4 of 4

# EXHIBIT F

| | |
|---|---|
| **From:** | Nellie Afshar |
| **To:** | Dave Chokshi |
| **Subject:** | RE: Urgent Need for Help--UFT Accommodation Process |
| **Date:** | Wednesday, September 22, 2021 10:25:11 AM |
| **Attachments:** | Memo_09 21 21 Final.pdf |

Final version for your awareness. No changes from what you saw last.

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Wednesday, September 22, 2021 8:13 AM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Thanks—looks good

On Sep 21, 2021, at 10:19 PM, Nellie Afshar <nafshar@health.nyc.gov> wrote:

Here is latest version of the memo – includes addition of the list of meds and animal products.

For awareness, we have not been able to verify the list of meds, I asked Jackie if she can track it down w Jay.

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:04 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Thank you!!

Dave A. Chokshi, MD MSc

Commissioner

NYC Department of Health and Mental Hygiene

347-396-4133

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:03 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Yes I'm making those revisions now, and also adding line about Tylenol, advil, etc

Thank you!

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:02 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Nellie, this looks fine to me and no issues with it coming from me. We had to remove the section about pork and animal products? Seemed they wanted it specifically.

Also happened to notice that 'fetal' is misspelled as 'feral' in one place.

Dave A. Chokshi, MD MSc

Commissioner

NYC Department of Health and Mental Hygiene

347-396-4133

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 7:18 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Commissioner – we're still refining this but here is the current version in case you can review in parallel. On our side – Jane, Celia, Jen Rosen, and PIO reviewed.  Let me know if any issues w this coming from you.

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 5:15 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>; Dave Chokshi <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Here is the latest draft from OLR who reformatted some.

Happy to merge the edits if useful once I have yours.

*Jackie Bray*
*Pronouns: she/her/hers*

*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 4:49 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

We have edits and I will send your way Jackie

---

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 4:46 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Nellie Afshar <nafshar@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** FW: Urgent Need for Help--UFT Accommodation Process

Thoughts? Can we close this out?

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Bray, Jackie
**Sent:** Tuesday, September 21, 2021 4:46 PM
**To:** Varma, Jay <JVarma@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; 'Anne Mabus' <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; 'Jane Zucker' <jzucker@health.nyc.gov>; 'Celia Quinn Md' <cquinnmd@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

OK I've added a line about pork, beef, and animal products. DOHMH needs to confirm if the line is accurate.

COH and team – we need your approval on this memo and then we need guidance from you on who at the DOHMH would sign it. I think it should go from dOHMH to OLR officiallu once you are comfortable with it. We are moving fast here on negotiations and hearings on exemptions so wanting to wrap this up today.

Thank you!

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Bray, Jackie
**Sent:** Tuesday, September 21, 2021 2:00 PM
**To:** Varma, Jay <JVarma@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; 'Celia Quinn Md' <cquinnmd@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

+Celia too.

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Varma, Jay <JVarma@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 1:58 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Memo ok with me.

Get Outlook for iOS

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 1:56:53 PM
**To:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Varma, Jay <JVarma@cityhall.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

++adding MDs.

Attached is a memo Annie drafted. Obviously need Dave, Jane, and Jay to review and then need to know from OLR whether this works.

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Sent:** Monday, September 20, 2021 10:08 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

+Lauren for awareness and to see if an example or 2 can be provided by the DOE

The first page of the North Dakota document is a little bit more neutral than I was thinking. But the second and third page get to the point. We can go further and make an argument about how even if someone is concerned about fetal cells it should not prevent them from being vaccinated.

Yes the list is good. Because to the extent there are hearings in these cases, the employees can be asked about whether they use or have used those medications.

And yes to a little more time, there is no definitive time limit but I said I'd get the UFT something tomorrow and the idea is that hearings are going to start on Wednesday. If it's later in the afternoon I'm sure that's ok.

On Sep 20, 2021, at 9:56 PM, Bray, Jackie <JBray@cityhall.nyc.gov> wrote:

OK. Need you to weigh in on three things:

1. Here's a memo from the North Dakota Department of Health. If we created something similar is that what you need? COVID-19_Vaccine_Fetal_Cell_Handout.pdf

2. The MDs were also batting around the idea of making someone attest to rejecting all the medications on this list and look for proof that they have rejected all of these "sincerely" for some time: https://www.patheos.com/blogs/throughcatholiclen-tested-on-hek-293-is-immoral-goodbye-modern-medicine/

3. Can you send me some of the letters? Are there phrases that appear in many of them?

And finally, we clearly have very good material here and we also want to give you the best product we can because this will absolutely be subject to litigation and will go far. Is there a way to buy us more than 12 hours overnight?

Thanks,
Jackie

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Sent:** Monday, September 20, 2021 9:50 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Yep. Thanks much

> On Sep 20, 2021, at 9:07 PM, Bray, Jackie <JBray@cityhall.nyc.gov> wrote:

OK. Yes. We can get you something and have a shell of something to use from LA County.

Might take till noon or 1pm. that OK?

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Bray, Jackie
**Sent:** Monday, September 20, 2021 8:27 PM
**To:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

I have no clue if we can pull this together because this is a "new one" but I will absolutely try. Will circle back later tonight with an update.

Sent from my iPhone

> On Sep 20, 2021, at 8:22 PM, Steve Banks (OLR) <sbanks@olr.nyc.gov> wrote:
>
> Now that the UFT exemption requests have been coming in for several days and the cases have been reviewed at the DOE, it turns out that upwards of 2/3 of the exemption requests are religious not medical. But there is a medical aspect to the religious requests that I could use some help on. Many of the religious claims cite that fetal tissue and/or certain animal products were used in the research, development, and/or actual formula for the COVID vaccines.
>
> Since many of these cases are going to labor arbitrators, there is a need for factual

information for the arbitrators to reference. It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why this is BS. The purpose of the document would be for the arbitrators to reference, and I would vet it with the UFT first. So I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion and/or consumption of certain animals is not consistent with the science of the virus. In some areas, there may be a distinction between the 3 brands of vaccine and I think as long as one is available the claim should also be denied.

Is this something you guys could pull together by late morning tomorrow?

Thanks,

Steven Banks
First Deputy Commissioner & General Counsel
NYC Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007
(212) 306-7238

Sent from the New York City Department of Health & Mental Hygiene. This email and any files transmitted with it may contain confidential information and are intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.
<Draft Memo - Religious Exemption DOE_DOHMH v2_JZ v3.docx>

# EXHIBIT G

**From:** Parrino Elizabeth
**Sent:** Friday, November 19, 2021 2:21 PM
**To:** Division of Human Capital
<DHC@schools.nyc.gov>; bdeblasio@cityhall.nyc.gov <bdeblasio@cityhall.nyc.gov>; Chancellor Meisha
Porter <NYCChancellor@schools.nyc.gov>; Pestana, Georgia (Law)
<gpestana@law.nyc.gov>; dave.chokshi@nychhc.org <dave.chokshi@nychhc.org>; Ask Legal
<AskLegal@schools.nyc.gov>; Nathan Judy <JNathan@schools.nyc.gov>
**Subject:** Renewed Application for Religious Exemption

Dear Sir or Madam,

My name is Elizabeth Parrino.  I have been a New York City Department of Education
employee since September 2012.  On September 22, 2021 my religious exemption
application to the DOE's Vaccine Mandate was denied, and my appeal of that denial
was denied on September 30, 2021.  I struggle every day with the impending November
30 deadline by which I will need to choose between my faith and my job.

In the *Kane v. DeBlasio* and *Keil v. City of New York*, cases now pending before the
United States Court of Appeals for the Second Circuit, the Defendants have conceded
that the process and standards they had used to consider religious exemption
applications and appeals were "constitutionally suspect" and proposed an alternative
process with purportedly constitutional standards.  Accordingly, the Court ordered the
Plaintiffs to be reassessed under this alternative process.

Since my application and appeal were also considered under the same admittedly
unconstitutional process, I hereby demand an immediate reexamination of my
application under a fair, constitutionally sound process. I trust this renewed assessment
will result in an exemption, since I know my religious beliefs to be demonstrably, wholly,
and unequivocally sincere.

Kindly respond to this email as soon as possible.  I have already been significantly
damaged and your expedient attention to this matter will avoid further injury.  Any delay
will continue to compromise my faith in a manner that is unfair, unbearable, and entirely
unconstitutional.

I thank you kindly in advance for your prompt attention to this request and look forward
to receiving my religious exemption.

Most sincerely,

Elizabeth Parrino

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Friday, January 7, 2022 7:06 PM
**Subject:** Your Appeal to the Citywide Panel - Additional Information

Colleague,

Your appeal of your religious exemption to the COVID-19 vaccine mandate has been submitted to the Citywide Appeal Panel. To assist the Citywide Appeal Panel in reviewing your religious exemption request, please provide the following additional information by Friday, January 14, 2022 at 8:00 pm:

1. Whether you have previously taken any vaccinations.
2. If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief.
3. If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.
4. Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

To submit this information, please follow the steps below:
- Written responses should be sent in as an attached document to PanelAppealUpdate@schools.nyc.gov (*Do not send, copy, or reply to this email.*)
- Written responses must be received by email by Friday, January 14, 2022 at 8:00 pm
- Only attach new information/document - do not resend documentation that was already provided.
- Include your Name and Employee ID number in the subject line of your email.

If additional information is not provided, the Panel will consider your appeal based on the materials/information you already submitted through SOLAS.

Thank you,

NYCDOE Division of Human Resources

From: NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Date: 2/15/22 2:55 PM (GMT-05:00)
To: Parrino Elizabeth <EParrino@schools.nyc.gov>
Subject: Reasonable Accommodation Appeal Determination

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.

The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning. Appellant failed to establish sincerely held religious belief that precludes vaccination.

**For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).

**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

From: NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
Date: 2/15/22 2:55 PM (GMT-05:00)
To: Parrino Elizabeth EParrino@schools.nyc.gov
Subject: Reasonable Accommodation Appeal Determination

The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request. The decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning. Appellant failed to establish sincerely held religious belief that precludes vaccination. **For all employees other than DOE employees:** Pursuant to the City of New York's policy concerning the vaccine mandate, you now have **three business days** from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).**For Department of Education (DOE) employees:** Pursuant to New York City Department of Education policy, you have seven calendar days to extend your Leave Without Pay or return to work. If you do neither, you will be subject to termination. For further information and instructions, please see DOE Denial of Appeal Information.

# EXHIBIT H

**APPENDIX**

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:      Pierre N. Leval,
                  José A. Cabranes,
                  Denny Chin,
                      *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu, Heather Clark, Stephanie Di Capua, Robert Gladding, Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad Smith, Amaryllis Ruiz-Toro,

               *Plaintiffs-Appellants,*

        v.

Bill de Blasio, in his official capacity as Mayor of the City of New York, David Chokshi, in his official capacity of Health Commissioner of the City of New York, New York City Department of Education,

               *Defendants-Appellees.*

**ORDER**

21-2678-cv

---

Matthew Keil, John De Luca, Sasha Delgado, Dennis Strk, Sarah Buzaglo,

               *Plaintiffs-Appellants,*

        v.

The City of New York, Board of Education of the City School District of New York, David Chokshi, in his Official Capacity of Health Commissioner of the City of New York, Meisha Porter, in her Official

21-2711-cv

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

---

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

# EXHIBIT I



**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

June 27, 2022

<u>**Via E-Mail Only**</u>
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

**Re:     Board of Education of the City School District of the City of New York
and
United Federation of Teachers, Local 2, AFT, AFL-CIO
(Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

```
----------------------------------- X
In the Matter of the Arbitration
                                    X
          between
                                    X      Re: Proof of
BOARD OF EDUCATION OF THE CITY                  Vaccination
SCHOOL DISTRICT OF THE CITY OF      X
NEW YORK
                                    X
          "Department"
                                    X
      -and-
                                    X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO               X

          "Union"                   X

----------------------------------- X
```

**APPEARANCES**


**For the Department**
  Liz Vladeck, General Counsel


**For the Union**
STROOCK & STROOCK & LAVAN, L.L.P.
  Alan M. Klinger, Esq.

  Beth Norton, Esq., UFT General Counsel
  Michael Mulgrew, UFT President


**BEFORE:**  Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate. The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters. Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.

Arbitration sessions were then held. On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation. An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision. Approximately five hundred (500) appeals were determined by the arbitration process. Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent. The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong. On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

## DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

## Position of the Parties

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

7

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award. It insists this matter is subject to my continued jurisdiction. The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced. According to the Union, approval of certification is issued by the State. In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined. The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated. The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

8

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated. The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

## Opinion

Certain preliminary comments are appropriate. As an arbitrator my role is a limited one. In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

10

Based upon the above, I find the Department failed to properly implement the due process protections of my Award. The Union has the right to assert the Department's process "is not implemented in good faith." To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing. Those court decisions confronted an entirely different factual scenario. Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination. Here, of course, the employees assert they are in fact vaccinated. This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

**AWARD**

1. Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.NAKASHIAN.AWD

13

# EXHIBIT J

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*

JONATHAN L. SCHER**

AUSTIN R. GRAFF*

TEL: 516-746-5040

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1958-2012)

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    Broecker, *et al.* v. New York City Department of Education, *et al.*
       Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See,* **Exhibit A,** a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> … While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

# The Scher Law Firm, LLP

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*******************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

# EXHIBIT K

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                                                                  :
MICHAEL KANE, et al.,                                             :
                                                                  :
                                        Plaintiffs,               :
                                                                  :
            - against -                                           :   Case No.  21-cv-7863 (VEC) (Lead)
                                                                  :
BILL DE BLASIO, et al.,                                           :
                                                                  :
                                        Defendants.               :
-----------------------------------------------------------------X
                                                                  :
MATTHEW KEIL, et al.                                              :
                                                                  :
                                        Plaintiffs,               :
                                                                  :
            - against -                                           :   Case No.  21-cv-8773 (VEC)
                                                                  :
THE CITY OF NEW YORK, et al.,                                     :
                                                                  :
                                        Defendants.               :
-----------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

<u>**First False Assertion in Sullivan Declaration**</u>

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem** PR" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**Second False Assertion in Sullivan Declaration**

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

2

**Further Evidence of Irreparable Harm**

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

June 3, 2022                                   Respectfully submitted,


_____
Barry Black
Nelson Madden Black LLP
*Attorney for Plaintiffs*
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4303

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X :

MICHAEL KANE, et al.,

                                Plaintiffs,

                                         Case No. 21-cv-7863 (VEC) (Lead)

      - against -

DE BLASIO et al.,

                                Defendants.
-------------------------------------------------------------------X :

MATTHEW KEIL, et al.

                                Plaintiffs,

                                         Case No. 21-cv-8773 (VEC)

      - against -

THE CITY OF NEW YORK et al.,

                                Defendants.
-------------------------------------------------------------------X

### DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1. My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2. I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3. I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

for statements which are made on information and belief and, as to those, I verily believe them.

4. I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5. I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6. From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7. I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8. I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9. When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10. I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11. I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12. I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19. I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20. In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
    June 3, 2022

_By: Betsy Combier_

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████████████   Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

DIRECT/RODI

Your next witness, please.

MS. BILLER: I would like to call Ms. Rodi, please.

JUDGE BLASSMAN: Please approach and I will swear you in.

Do you swear or affirm to tell the truth and nothing but the truth in this proceeding?

THE WITNESS: I do.

JUDGE BLASSMAN: Thank you.

Can you please state your full name for the record.

THE WITNESS: My full name is Katherine Rodi, R-O-D-I.

DIRECT EXAMINATION

BY MS. BILLER:

Q. By whom are you employed by?

A. I'm employed by the New York City Department of Education.

Q. What capacity?

A. I'm the director of the office of Employee Relations.

Q. How long have you held that position?

DIRECT/RODI

A.    I held that position for two and a half years.

Q.    And prior to being the director of Employee Relations, what other job titles have you held within the Department of Education?

A.    I was an agency attorney, I was a senior counsel and I was the director of the Disciplinary Support Unit.

Q.    As director of Employee Relations, what are some of your job duties and responsibilities?

A.    I oversee several units.  I oversee the Office of Personnel Investigation, I oversee the Office of Employee Relations, I oversee the Office of Safety and Health, I oversee it, it is not really an office, but the Disciplinary Support Unit work.

Q.    Can you explain to us what the Disciplinary Support Unit is?

A.    It is a unit within my office that manages the on-line system that is the Disciplinary Support System.

DIRECT/RODI

And what we do, we check and track and eventually flag folks. We check older discipline, older substantiated reports, we review them, we track them and then if all the qualifications that we build together are met, then we may flag a person.

Q. Can you give us the years that you were responsible for overseeing the disciplinary support unit?

A. I was hired in June of 2012. I started in July, early July of 2012. Then I was promoted to the director of Employee Relations in January of 2013 and then I subsumed DSU into my current work.

JUDGE BLASSMAN: DSU?

THE WITNESS: The disciplinary support unit.

JUDGE BLASSMAN: So, since when have you been overseeing disciplinary support.

A. It has basically been under my portfolio since July of 2012.

Q. Are you aware when the flagging was implemented, began to be implemented?

DIRECT/RODI

A.    I was invited to a meeting about disciplinary support projects, I want to say it was like April of 2012 at that meeting there were all the senior counsel, I was in the role of senior counsel at the time.  So, all the senior counsel, there where I think there were superintendents, other random DOE staff and we got a presentation about the DSU.

By the time I started in July at least a couple of hundred people had been flagged.  So, I think it started in May or June of 2012.

Q.    Are you familiar with the Galaxy system?

A.    Yes.

Q.    What is the Galaxy system?

A.    The Galaxy system is actually a budgetary system that provides table of organization for all DOE offices and schools.

So, it is a budget driven system that basically tracks all current employees by the order by where they work.

DIRECT/RODI

Q.    What, if any, involvement do you have with the Galaxy system?

A.    As being part of Human Resources, I use the Galaxy system a lot.  To check people's status and then the DSU, the Disciplinary Support project, it linked to Galaxy, but it is not like a part of Galaxy.

JUDGE BLASSMAN:  It is linked to Galaxy?

THE WITNESS:  It is linked to Galaxy.

Q.    Are you familiar with the Disciplinary Support Unit flag?

A.    Yes, I am.

Q.    I know we heard much talk about it.

Can you briefly define for us what the disciplinary support unit flag is?

A.    Sure.  The flag is a reflection of what we pulled into the DSU system.  The system is a web based system.

It is set up so that no one can be accidentally or easily flagged.  It is set up so that if I want to kind of open a folder

DIRECT/RODI

for a person, I have to put in their name or an identifier such as a Social Security number, an employee I.D. and then that person's name would be automatically populated from the Galaxy data.

Once I have the person's information up I can then attach documents to the person's name.

Just attaching a document to a person's name doesn't flag them. What it has to do it has to meet two qualifications.

Number one, there has to be a substantiated report of discipline issued from an investigatory body.

Then second there has to be a letter of discipline that has been -- that has evidenced that the person received the discipline.

Once both those two factors are met a person is then manually flagged.

So, even if the two documents were both there, unless someone went in there and looked at it, a person couldn't be flagged. It is not, the system doesn't read

# EXHIBIT L

Dear Ms. Rodi,

My name is Elizabeth Parrino. I was a tenured teacher with an impeccable record working for the NYC DOE for 10 years until I was unlawfully disciplined in October 2021 and terminated in September 2022 due to my sincerely held religious values.

I was not given a 3020a hearing for due process before I was disciplined with the removal from salary in October 2021 and did not have a 3020a before termination almost a year later. By law and contract, it is required that I receive my due process and determination before removing me from salary.

I am requesting to be placed back on salary immediately. NYC DOE broke the law. I am also requesting retro pay from the date of my payroll removal on October 4, 2021 to present.

Please respond by March 1, 2023.

Thank you for your time,
Elizabeth Parrino
1341179

# EXHIBIT M

NOTICE OF CLAIM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ELIZABETH PARRINO
Claimant,

- against -

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT
OF EDUCATION,
Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To: Office of the City Comptroller
Bureau of Law and Adjustment
1 Centre Street, Room 1225
New York, New York 10007

Hon. Sylvia O. Hinds-Radix
Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

New York City Department of Education
52 Chambers Street
New York, N.Y. 10007

**PLEASE TAKE NOTICE** that the Claimant hereby makes claim and demand against the individuals and groups named in the caption above:

**1) The name, post office address, and phone number of Claimant:**

Elizabeth Parrino
292 Shelter Road
Ronkonkoma, NY 11779
631-559-5547

**2) The nature of the claim:**

This claim seeks recovery for monetary damages for the harm caused to Claimant's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish and impairment of Claimant's ability to secure future employment, and impairment of earning power inflicted upon the Claimant due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts

practices, and/or omissions of the Defendants. Claimant's rights under the Constitution, both Federal and State, city and State Human Rights Laws, NYS Administrative Code, as well as employment rights under the Collective Bargaining Agreements between the UFT and the DOE. Claimant now seeks to be made whole.

### 3) The time when, the place where, and the manner in which the claim arose

On 7/26/21, a notice of a Vaccine Mandate was sent out by New York City Department of Education (NYC DOE) Chancellor Meisha Porter.

On 9/10/21, an arbitration agreement was signed which provided rules that would be applied to anyone seeking a religious accommodation for the vaccine mandate. In the arbitration agreement between the NYC DOE and the United Federation of Teachers (UFT), there is a clause pertaining to religious exemption that is indirect opposition to the laws of our nation. The clause reads: "Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists)"

On 9/19/21 Claimant applied for a religious exemption accommodation. On 9/22/21 Claimant's religious exemption application to the DOE Vaccine Mandate was denied for not meeting the criteria (no clergy letter), appealed the denial on 9/23/21, 9/28/21 notified of hearing date for 9/29/21, and on 10/1/21 via email Claimant was denied her exemption without reason specified. Claimant was placed on Leave Without Pay on 10/4/21.

On 11/15/21, the United States Court of Appeal for the Second Circuit ordered fresh consideration of people's request for religious accommodation. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.

On 11/19/21 Claimant was notified by the DOE that I could reapply to the City Wide Panel.

On 11/28/21, United States Court of Appeal for the Second Circuit merit panel concluded "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation. In addition to the First Amendment, such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law.

On 12/3/21 Claimant reapplied for a religious exemption to the City Wide Panel.

On 1/7/22 the Department of Human Resources requested additional information in consideration of Claimant's religious exemption.

On 1/14/22 Claimant submitted the additional information.

On 2/15/22 Claimant's "final decision" for exemption was denied via email stating "DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning. Appellant failed to establish sincerely held religious belief that precludes vaccination."

On or about April 28, 2022 Claimant became aware of an email sent 2/9/22 by the New York City Department of Education to Beth Norton at the UFT saying that any request for an exemption from taking the vaccination immediately placed the member's fingerprints into the 'Problem Code' at the Human Resources' Office of Personnel Investigations. This means that Defendants placed my fingerprints in a database at the Office of Personnel Investigations. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct. Therefore the New York City Department of Education has considered Claimant's not getting vaccinated as 'misconduct' which means Claimant can't get a job in New York City.

On February 10, 2023, the NYC Department of Education's COVID Mandate was ended by Mayor Eric Adams.

4) **The items of damage or injuries claimed are**:

damages to reputation; emotional distress; impairment of Claimant's ability to secure future employment; impairment of earning power; tortious interference with business relations; malicious prosecution; abuse of process; fraud; and retaliation, defamation, libel and slander.

The items of damage or injuries claimed amount to $21.7 million dollars

The claim and demand is hereby presented for adjustment and payment.

PLEASE TAKE FURTHER NOTICE that by reason of the foregoing, in default of the City of New York and the listed Defendants to pay the Claimant within the time limited for compliance with this demand by the applicable statutes, Claimant intends to commence an action against the City of New York and the listed Defendants to recover damages with interest and costs.

Dated: _____
Elizabeth Parrino

Sworn or Affirmed before me on
The 27 day of March 2023

Notary Public

NINA JOSHI
Notary Public, State of New York
No. 01JO5028173
Qualified in Suffolk County
Commission Expires 05/23/2026

# EXHIBIT N

September 13th, 2021

**To whom it may concern,**

**My name is R        F,         , my employee ID is #....... I have been employed with the NYCDOE for 20 years now. I am extremely proud of all the work I've done with the communities of the Bronx that I've had the privilege of working with. I am currently an Assistant Principal with Frederick Douglas Academy V in the Bronx.**

**"Religious liberty is a foundational principle of enduring importance in America enshrined in our Constitution and other sources of Federal law."** I know that the law in this Country allows for personal religious beliefs and that's what makes me so proud to be an American, where my beliefs and freedoms are protected. I get to work in a city that is literally called the Melting Pot of the Country. It is filled with all different cultures and religions and we can live together respecting and encouraging one another's differences.

My faith, and religious journey is the most important thing in my life. I am a devout Christian; my life is led by the Holy Spirit that lives inside of me. It is my religious belief that my God is my healer and I put all my faith and hope in Him. It is my religious belief that it is a complete betrayal of faith to put my hope and faith in any vaccine to keep my body healthy. My God will heal me and my family. We have all contracted covid and He kept us all, safe and whole.

Any blood that may be in any vaccines is sacrilegious and I cannot allow my body to be corrupted or made unclean. 1 Corinthians 3:17 "If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple". Exodus 15:26 "I am the Lord that heals you." Fetal cells that may be used in creating this vaccine, goes against my stance on abortion. As a Christian I am against murder. Exodus 20:13 "You shall not murder." Therefore, taking this vaccine will desecrate my body. Even though I have been fully vaccinated in my childhood, that choice was performed by the choices of my non-religious parents, whom I loved dearly. As an adult, husband and father, I choose to live out my life through God's command from His Holy word, the Bible.

My faith and relationship in God are what helps guide my life and helps me discern what is needed to keep my body in line with the Word of God. I am created in the image of God. My body/blood is a sacred being and must remain pure in the sight of God. Taking this vaccine or any other vaccine for that matter would go against everything I believe and base my life upon.

I ask that you please keep this confidential, I am only sharing these personal things so you could have a better understanding of my declination of this vaccine due to my religious beliefs. Please understand my convictions. Thank you for your time and consideration.

Sincerely,

R.        F

# EXHIBIT O

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

NYC Department of Education
3.93.9 out of 5 stars
Remote
Full-time

## Location

Remote

## Full job description

# TEACHER VACANCY CIRCULAR NO 4 CENTRAL REMOTE TEACHERS iZONE 2022 2023

Posted Date: May 6, 2022 Deadline: Jun 3, 2022
New York United States
VIRTUAL

## Job Details

**(SUBJECT TO BUDGET AVAILABILITY)**

**POSITION:**

## Teacher - Central

Remote Instruction Teachers

**License/Eligibility Requirements:**

New York City licensed Social Studies, Science, English, Foreign Language, Math and Health tenured teachers in High School Grade Levels.

**Office:**

iZone

**Location:**

82-01 Rockaway Blvd, Ozone Park, NY 11416

Or other DOE offices

**Remote Teachers**

**Position Summary:**

Virtual Learning Classrooms aim to partner teachers from around the city with students to provide them with increased access to courses not available in their home schools, including, but not limited to Electives, AP Courses, and Foreign Language courses. This posting is for teachers interested in teaching in this full time program from September 2022 - June 2023. Remote instruction teachers will deliver instruction to and communicate with high school students in other locations using internet and required technological platforms. Please note that while students will not be in the same location as the teacher, this is an in person teaching position.

Remote Teachers are licensed teachers of high school grade levels who teach students virtually. Remote teachers will teach students in the following subject areas: Advanced Placement Subjects (Including but not limited to, AP Psychology, AP Spanish, AP US History, AP World History, AP Government, AP Calculus AB/BC, AP Macroeconomics, AP Statistics, AP Computer Science Principles and A, AP Environmental Science, AP English Language and Literature, and AP Seminar), electives (Including but not limited to, Forensics, Health, Media Literacy, Financial Literacy, science electives, Computer Science and Business) and Foreign Languages (Including but not limited to, Spanish, Chinese and French). Other subjects may be added. Students may be enrolled from multiple schools simultaneously, but total class size will not exceed contractual limits. Remote Teachers will be expected to participate in 10 sessions of professional learning workshops including an online course leading to a Learning Management System certification to occur during July and/or August prior to commencement of position with remaining

on-going professional learning during the year and will be paid at the per session rate for work beyond the contractual workday/work year. Remote teachers will perform required duties (including corresponding with home school staff, planning for remote instruction and assessment, communication and conferencing with students and/or parents). Duties and responsibilities are intended to emulate traditional teaching paradigms and create an equitable learning experience.

**Reports to:**

DIIT iZone Supervisor

**QUALIFICATIONS:**

- Minimum of four (4) years of teaching experience as a regularly appointed teacher. Knowledge of the common core standards as it relates to course.

- Extensive knowledge of the New York State and City Standards, meets Advanced Placement requirements (as appropriate) and is licensed in subject matter.

- Demonstrated expertise in an online learning environment designing and implementing standards-based instruction that specifies clear learning objectives, includes engaging activities and authentic assessments to measure mastery.

- Willingness to promote online dialogue to deepen the learning experience.

- Demonstrated ability with written and oral communications emphasis placed on the delivery of digital presentations.

- Demonstrated ability to use online learning, communication and other edtech tools as appropriate.

- Can differentiate instruction for individuals or groups of students based on instructional data and analysis as well as student characteristics.

- Can sustain and document flexible teaching schedules, which account for asynchronous and synchronous activities that are student-centered and maintain high standards for student engagement and success.

- Selected candidates will be asked to facilitate a demonstration lesson or planning activity to demonstrate aforementioned qualifications.

**PREFERRED SKILLS:**

- o Demonstrated skill in team building, group dynamics, and facilitating collaborative learning.
- o Proven history of being a self-starter who works well without constant supervision.

**DUTIES AND RESPONSIBILITIES:**

- Demonstrate competency in using data from assessments and other data sources to modify content and guide student learning.

- Modify engaging content and appropriate assessments in an online environment.

- Provide quality instruction to students using asynchronous and synchronous teaching methods (I.e. asynchronous = discussion forums, group work, written and digital assignments, posted content. Synchronous = online classrooms, webinars, chat rooms).

- Employ student-centered instructional strategies that are connected to real-world applications to engage students in learning.

- Facilitate and monitor online instruction groups/discussions to promote learning through higher-order thinking and group interaction.

- Provide a variety of ongoing and frequent teacher-student, teacher-teacher, and teacher-administrator interaction with participating schools.

- Provide prompt feedback, communicate high expectations, and teach to diverse talents and learning styles.

- Online communication between students and teachers is a significant component of this program to mimic in person communication. Therefore, teachers are expected to respond to student emails and grade assignments within 2 workdays, as well as monitor and respond to discussion postings daily during the school week.

- Regularly share with home school(s) student data including but not limited to grades and attendance. This includes the use of school selected platforms and systems.

- Incorporate and comply with FERPA, AUP and communicate privacy guidelines to students.

- Select and use a variety of online tools for communication, productivity, collaboration, data and performance analysis, presentation, research, and online content delivery as appropriate to the content area and student needs.

- Use communication technologies in a variety of mediums and contexts for teaching and learning.

- Apply technical troubleshooting skills (downloading plug-ins, uploading assignments, etc.)

- Participate in all professional development and peer mentoring exercises throughout the duration of service.

- Develop key relationships in order to work closely with home school staff, students and parents of participating schools, guidance counselors and central iZone staff.

- Participate in activities to identify best practices, address challenges and assess efficacy.

**WORKING CONDITIONS & LOCATION:**

- The maximum class size of a full virtual course not exceed UFT contractual limits.

- Teachers shall not be assigned more than twenty five (25) teaching periods per week and may teach up to five (5) remote classes; however, the maximum number of distinct courses shall not exceed three (3).

- Teachers must confer with students synchronously during programmed periods each week, as well as be available for asynchronous teaching approaches including but not limited to office hours, individual and small group conferencing and providing direction for independent student

work. Facilitate learning through supplied curriculum that teachers may supplement.

- Teachers are expected to teach in person from 82-01 Rockaway Blvd, Ozone Park, NY 11416 or other DOE office.

**Hours:**

As per Article Six of the Collective Bargaining Agreement

**Salary:**

As per UFT Contract

**Work Year:**

As per Article Six of the Collective Bargaining Agreement

**APPLICATION INSTRUCTIONS:**

Please be sure application includes cover letter, resume and your 6-digit file number.

Please send application via email to the following email address: iLearnNYC@schools.nyc.gov with the Subject line: "Fulltime Remote Teacher application."

Applications will be accepted through:

# JUNE 3, 2022

# An Equal Opportunity Employer M/F/D

It is the policy of the Department of Education of the City of New York to provide equal employment opportunities without regard to actual or perceived race, color, religion, creed, ethnicity, national origin, alienage, citizenship status, age, marital status, partnership status, disability, sexual orientation, gender(sex), military status, unemployment status, caregiver status, consumer credit history, prior record of arrest or conviction(except as permitted by law), predisposing genetic characteristics, or status as a victim of domestic violence, sexual offenses and stalking, and to maintain an environment free of harassment on any of the above - noted grounds, including sexual

harassment or retaliation. For more information, please refer to the DOE Non - Discrimination Policy.

