No. 24-cv-08892 (AMD) (JRC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELIZABETH PARRINO,

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK, MELISSA AVILES- RAMOS,
Chancellor and KATHERINE RODI, Director of
Employee Relations,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

***STEVEN BANKS***

*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, 2-197*
*New York, N.Y.  10007*

*Of Counsel:  Shivani Damera*
*Tel:  (212) 356-2444*
*Matter No.: 2025-015580*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ....................................................................................2

       A.   The COVID-19 Vaccine Mandate Formerly
           Applicable to DOE Employees ............................................ 2

       B.   Amendment to the DOE Vaccine Mandate ...................................... 4

       C.   Plaintiff's Allegations ........................................................ 5

ARGUMENT

      POINT I

          PLAINTIFF'S SHRL AND CHRL CLAIMS MUST
          BE DISMISSED BECAUSE SHE FAILED TO
          FILE A TIMELY NOTICE OF CLAIM ..................................... 8

      POINT II

          PLAINTIFF'S SHRL AND CHRL CLAIMS ARE
          TIME-BARRED ................................................................ 9

      POINT III

          PLAINTIFF'S CLAIMS ARE BARRED BY
          WAIVER AND RELEASE .................................................. 10

      POINT IV

          PLAINTIFF FAILS TO STATE A CAUSE OF
          ACTION FOR RELIGIOUS DISCRIMINATION
          UNDER § 1983 .............................................................. 12

      POINT V

          PLAINTIFF FAILS TO STATE FAILURE TO
          ACCOMMODATE CLAIMS UNDER § 1983 ........................ 15

**Page**

A.    The DOE Could Not Have Granted Plaintiff's Request For A Religious Exemption From The Vaccine Mandate Without Enduring An Undue Hardship ................................................................. 15

B.    Plaintiff Cannot Plausibly Allege Claims for Failure to Engage in the Interactive Process Under § 1983 ................................................................. 18

POINT VI

PLAINTIFF FAILS TO PLEAD A FIRST AMENDMENT CLAIM ................................................ 18

A.    Plaintiff's Free Exercise Claim is Foreclosed by Second Circuit Precedent. ............................ 18

B.    Plaintiff's Establishment Clause Claim Fails ................................. 19

POINT VII

PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HER EQUAL PROTECTION RIGHTS WERE VIOLATED ................................................ 20

POINT VIII

PLAINTIFF FAILS TO STATE A RETALIATION CLAIM ................................................................ 22

POINT IX

PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM ................................................................ 25

POINT X

PLAINTIFF FAILS TO STATE A MONELL CLAIM ................................................................ 27

CONCLUSION ................................................................ 28

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                        **Pages**

Adams v. NY State Unified Ct. Sys.,
     2023 U.S. Dist. LEXIS 138218
     (S.D.N.Y. 2023) ........................................................................................................23, 24

Agostini v. Felton,
     521 U.S. 203 (1997).........................................................................................................20

Amorosi v. South Colonie Ind. Cent. School Dist.,
     9 N.Y.3d 367 (2007) ..........................................................................................................9

Anemone v. Metro. Transp. Auth.,
     629 F.3d 97 (2d Cir. 2011).................................................................................................26

Appel v. Spiridon,
     531 F.3d 138 (2d Cir. 2008)...............................................................................................22

Baker v. Home Depot,
     445 F.3d 541 (2d Cir. 2006)...............................................................................................15

Baker-Pacius v. Dept. of Educ.,
     2026 U.S. Dist. LEXIS 51413 (E.D.N.Y. Mar. 12, 2026).........................................................14

Beckles v. NY City Dept. of Educ.,
     2025 U.S. Dist. LEXIS 149503 (E.D.N.Y. Aug. 4, 2025).........................................................17

Beickert v. NY City Dept. of Educ.,
     2023 U.S. Dist. LEXIS 170719
     (E.D.N.Y. 2023)......................................................................................................13, 17, 25

Bermudez v. City of NY,
     783 F. Supp. 2d 560 (S.D.N.Y. 2011)........................................................................14, 22, 27

Birkholz v. City of New York,
     No. 10 Civ. 4719 (NGG) (SMG), 2012 U.S. Dist. LEXIS 22445
     (E.D.N.Y. Feb. 17, 2012).....................................................................................................8

Brodt v. City of NY,
     4 F. Supp. 3d 562 (S.D.N.Y. 2014) ................................................................................12, 15

Broecker v. N.Y.C. Dep't of Educ.,
     2022 U.S. Dist. LEXIS 25104 (E.D.N.Y. Feb. 11, 2022)........................................................25

Broecker v N.Y. City Dept. of Educ.,
     573 F. Supp. 3d 878 (E.D.N.Y. 2021) ...............................................................................26

**Cases**                                                                                                                  **Pages**

Broecker v. NY City Dept. of Educ.,
    585 F. Supp. 3d 299 (E.D.N.Y. 2022) .................................................................13, 26

Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.,
    17 N.Y.3d 269 (2011) ..............................................................................................11

Chak v. N.Y. State Dep't of Educ.,
    2024 U.S. Dist. LEXIS 54148 (E.D.N.Y. Mar. 26, 2024)................................20, 21

Choi v. Hoyt de Leon Corp.,
    2023 U.S. Dist. LEXIS 155615 (E.D.N.Y. 2023).....................................................10

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,
    508 U.S. 520 (1993)................................................................................................19

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)................................................................................................27

Cooper v. Franklin Templeton Invs.,
    U.S. App. LEXIS 14244 (2d Cir. 2023) .................................................................13

Coughlin v. N.Y.S. Unified Court Sys.,
    2023 U.S. Dist. LEXIS 192576
    (E.D.N.Y. 2023)......................................................................................................19

D'Cunha v. Northwell Health Sys.,
    2023 U.S. Dist. LEXIS 33343 (S.D.N.Y. 2023)......................................................13

Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.,
    2023 U.S. Dist. LEXIS 84888,
    (S.D.N.Y. 2023) .....................................................................................................17

Diesel v. Town of Lewisboro,
    232 F. 3d 92 (2d Cir. 2000)....................................................................................21

Elgalad v. New York City Dep't of Educ.,
    No. 17 Civ. 4849 (VSB), 2018 U.S. Dist. LEXIS
    162838 (S.D.N.Y. Sept. 24, 2018)...........................................................................8

Employment Div. v. Smith,
    494 U.S. 872 (1990)................................................................................................19

Engquist v. Oregon Dept. of Agric.,
    553 U.S. 591 (2008)................................................................................................22

| **Cases** | **Pages** |
|---|---|

Fierro v. NY City Dept. of Educ.,
   994 F. Supp. 2d 581 (S.D.N.Y. 2014)....................................................................22

Frank G. v. Bd. of Educ. of Hyde Park,
   459 F.3d 356 (2d Cir. 2006)..............................................................................16

Freud v. New York City Dep't of Educ.,
   2022 U.S. Dist. LEXIS 54353 (S.D.N.Y. Mar. 25, 2022) .......................................21

Fugelsang v. Dept. of Educ. of NY City,
   2025 U.S. Dist. LEXIS 61440
   (E.D.N.Y. Mar. 31, 2025) ................................................................................17

Gahfi v. NY City Dept. of Educ.,
   2025 U.S. Dist. LEXIS 37633 (E.D.N.Y. 2025)....................................................9

Garland v. N.Y.C. Fire Dep't,
   2024 U.S. App. LEXIS 2651 (2d Cir. Feb. 6, 2024) ............................................25

Glascoe v. Solomon,
   No. 18 Civ. 8284 (AT), 2020 U.S. Dist. LEXIS 46930
   (S.D.N.Y. March 17, 2020)...............................................................................8

Gomez-Kadawid v. Lee,
   2023 U.S. Dist. LEXIS 102935 (S.D.N.Y. 2023).................................................9

Gonzalez v. City of N.Y.,
   2024 U.S. Dist. LEXIS 56814 (E.D.N.Y. Mar. 28, 2024).......................................25

Greenbaum v. NY City Tr. Auth.,
   2022 U.S. App. LEXIS 22589 (2d Cir. 2022) .....................................................18

Groff v. Dejoy,
   U.S. Supreme Court Docket 22-174, June 29, 2023 ..............................................16

Groff v. DeJoy,
   600 U.S. 447 (2023)........................................................................................16

Hurley v. Dept. of Educ. of the City of NY,
   2025 U.S. Dist. LEXIS 188282 (E.D.N.Y. Sep. 23, 2025)...............................15, 17

Interpharm, Inc. v. Wells Fargo Bank, N.A.,
   655 F.3d 136 (2d Cir. 2011)..............................................................................11

**Cases**                                             **Pages**

Jeanty v. Newburgh Beacon Bus Corp.,
No. 17-CV-9175, 2018 U.S. Dist. LEXIS 197248
(S.D.N.Y. Nov. 19, 2018) ............................................................................................2

Johnson v. Andy Frain Servs., Inc.,
638 F. App'x. 68 (2d Cir. 2016) ...............................................................................14

Kane v. De Blasio,
623 F. Supp. 3d 339 (S.D.N.Y. 2022)..................................................................17, 20

Kane v. DiBlasio,
19 F.4th 152 (2d Cir. 2021) ...........................................................................4, 19, 20

Larson v. Valente,
456 U.S. 228 (1982)...................................................................................................20

Leibowitz v. Cornell Univ.,
584 F.3d 487 (2d Cir. 2009)......................................................................................12

Littlejohn v. City of NY,
795 F.3d 297 (2d Cir. 2015)......................................................................................13

Mandell v. Cty. of Suffolk,
316 F.3d 368 (2d Cir. 2003)......................................................................................14

Martinez v. City of New York,
No. 06 CV 5671 (WHP),
2008 U.S. Dist. LEXIS 49023 (S.D.N.Y. June 27, 2008),
aff'd sub nom, Martinez v. Muentes, 340 F. App'x 700 (2d Cir. 2009)................................27

McDonnell Douglas v. Green,
411 U.S. 792 (1973).................................................................................................12

Monell v. Dep't of Social Services,
436 U.S. 658 (1978).................................................................................................27

Mumin v City of NY,
No. 1:23-cv-03932, 2024 U.S. Dist. LEXIS 228994
(S.D.N.Y. Dec. 17, 2024).........................................................................................14

New Yorkers for Religious Liberty, Inc. v. City of NY,
125 F.4th 319 (2d Cir. 2024) .........................................................................19, 20, 25

Niles v. N.Y.C. Hum. Res. Admin.,
2024 U.S. Dist. LEXIS 22588
(E.D.N.Y. 2024)........................................................................................................23

**Cases**                                                                                       **Pages**

Okwedy v. Molinari,
    69 Fed. App'x 482 (2d Cir. 2003)........................................................................19

Picinich v. N.Y.C. Dep't of Educ.,
    2018 U.S. Dist. LEXIS 122959 (E.D.N.Y. July 11, 2018)......................................21

Ruiz v. Cty. Of Rockland,
    609 F.3d 486 (2d Cir. 2010)................................................................................14

Ruskay v. Waddell,
    552 F.2d 392 (2d Cir. 1977)................................................................................10

Sheng v. M&TBank Corp.,
    848 F.3d 78 (2d Cir. 2017).................................................................................18

Simms v. City of New York,
    480 F. App'x 627 (2d Cir. 2012) ........................................................................27

Trabacchi v. Dep't of Educ.,
    2026 U.S. Dist. LEXIS 93563 (E.D.N.Y. Apr. 28, 2026) .......................................26

TWA v. Hardison,
    432 U.S. 63 (1977).............................................................................................16

Vasquez v. City of NY,
    2024 U.S. Dist. LEXIS 58731 (E.D.N.Y. 2024).......................................13, 19, 25

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015).................................................................................13

Vesterman v. NY City Dept. of Educ.,
    2026 U.S. App. LEXIS 15985 (2d Cir. June 3, 2026) ......................................24, 26

We The Patriots USA, Inc. v. Hochul,
    17 F.4th 266 (2d Cir. 2021) ........................................................................ 13, 18-19

West v. Atkins,
    487 U.S. 42 (1988)............................................................................................18

Westbrooke v. Bellevue Hosp. Ctr.,
    2018 U.S. Dist. LEXIS 149308
    (S.D.N.Y. 2018) ...............................................................................................10

Williams v. NY City Health & Hosp. Corp.,
    2010 U.S. Dist. LEXIS 71576
    (E.D.N.Y. 2010)................................................................................................14

**Cases**                                                                              **Pages**

Zahra v. Town of Southold,
48 F.3d 674 (2d Cir. 1995)..................................................................................21

**Statutes**

20 U.S.C. § 1400, et seq....................................................................................16

42 U.S.C. § 1983.................................................................................1, 12, 15, 18, 27

42 U.S.C. § 2000e, et seq......................................................................................12

Fed. R. Civ. P. 12(b) ..........................................................................................1, 17

N.Y. Educ. Law § 296, et seq. ................................................................................1

N.Y. Educ. Law § 3020-a ...........................................................................23, 25, 26

N.Y. Educ. Law § 3813 ..........................................................................................9

N.Y. Educ. Law § 3813(1)....................................................................................8, 9

N.Y. Educ. Law § 3813(2-b) .................................................................................9

N.Y. Labor Law § 27-a.........................................................................................17

NYC Admin. Code § 8-107, *et seq*. .......................................................................1

## PRELIMINARY STATEMENT

Plaintiff, Elizabeth Parrino, a former employee of the New York City Department of Education ("DOE"), commenced this action alleging that in denying her request for a religious exemption from the COVID-19 Vaccine Mandate applicable to DOE employees, and by subsequently terminating her employment due to her failure to demonstrate proof of COVID-19 vaccination, the DOE discriminated against her. Plaintiff asserts claims under the New York State Human Rights Law, New York Executive Law § 296, *et seq.* ("SHRL"), the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.* ("CHRL"), and 42 U.S.C. § 1983, and alleges DOE violated her rights under the First, Fifth and Fourteenth Amendments to the United States Constitution for selective enforcement and violations of her right to due process and to freely exercise her religion.

Defendants now move, pursuant to Rule 12(b), Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety on the grounds that: (1) Plaintiff failed to file a timely notice of claim, (2) Plaintiff's SHRL and CHRL claims are time-barred pursuant to the one-year statute of limitations for claims against the DOE, (3) Plaintiff signed a waiver and release of all claims against DOE in exchange for a continuation of her health benefits and the right to return to her position should she elect to get vaccinated, and (4) Plaintiff does not otherwise state claims upon which relief can be granted. For these reasons, as set forth more fully below, Plaintiff's Amended Complaint should be dismissed in its entirety.

**STATEMENT OF FACTS[1]**

**A.      The COVID-19 Vaccine Mandate Formerly Applicable to DOE Employees**

On August 24, 2021, former Mayor Bill de Blasio and Dr. Dave Chokshi, then Commissioner of the Department of Health and Mental Hygiene ("DOHMH"), announced that DOE employees would be subject to a Vaccine Mandate. See COVID-19 Vaccine Mandate then applicable to DOE employees at https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf (last accessed on July 10, 2026). The Vaccine Mandate was amended on September 15, 2021. Id.

Under this policy, DOE employees were required to submit proof to the DOE, by September 27, 2021, that they were fully vaccinated against COVID-19; had received a single-dose vaccine or the second dose of a two-dose vaccine; or had received the first dose of a two-dose vaccine, with the additional requirement to provide proof of the second dose thereafter. Id. On September 28, 2021, the Vaccine Mandated was amended to provide that all "DOE employees" were required to provide proof of vaccination against COVID-19 no later than October 1, 2021. See Amended COVID-19 Vaccine Mandate then applicable to DOE employees at https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf (last accessed on July 10, 2026). Notably, the Vaccine Mandate has been repeatedly upheld as lawful by every Court that has considered it. Thus, the Vaccine Mandate is unassailable and legally sound.

---

[1] For the purpose of this motion only, the well-pled factual allegations in the Complaint are accepted as true. This statement of facts is derived from the allegations in and documents annexed to the Complaint and the lettered exhibits annexed to the Declaration of Shivani R. Damera, dated July 10, 2026, accompanying this memorandum of law. The Court may properly consider the documents annexed to the Damera Declaration because they were incorporated by reference in the complaint or are integral to Plaintiff's claims. See Jeanty v. Newburgh Beacon Bus Corp., 2018 U.S. Dist. LEXIS 197248, *10 (S.D.N.Y. Nov. 19, 2018) (quoting Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)).

2

On September 1, 2021, the United Federation of Teachers ("UFT") filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") over the impact of the Vaccine Mandate. PERB then appointed an arbitrator, and several days of mediation sessions were held. See Arbitration Agreement, annexed to the Declaration of Shivani R. Damera ("Damera Decl.") as Exh. A, at 4. On September 10, 2021, the arbitrator issued a decision ("Arbitration Agreement") which established: (1) a process for Vaccine Mandate exemptions and accommodation requests; (2) options for DOE employees to voluntarily separate from service with certain benefits or extend leave without pay ("LWOP") available for employees who did not comply with the Vaccine Mandate; and, (3) that DOE could "unilaterally separate employees" who had not complied with the Vaccine Mandate or did not have an approved exemption or accommodation or had not either opted for separation or to extend their LWOP pursuant to the provisions set forth in the Arbitration Agreement. See generally id.

The process established by the Arbitration Agreement applied to medical and religious exemptions as well as to accommodations for those who, having received a full course of vaccination, remained unable to mount an immune response. Id at 7. It also set forth that employees who had not requested an exemption, or whose request has been denied, would be placed on LWOP by DOE starting September 28, 2021. Id. at 13. While on LWOP, employees continued to be eligible for health insurance. Id. at 15. Employees who submitted proof of vaccination to DOE before November 30, 2021, were eligible to return to their school within one week of submitting their documentation. Id. at 14.

The Arbitration Agreement also set forth a process for separation from DOE employment with enhanced payment of accrued paid time off, or extension of LWOP with health benefits. Id. DOE employees who did not comply with the Vaccine Mandate could have opted to

3

either separate from service by October 29, 2021, and receive enhanced payment of accrued paid time off and remain eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from another source, or as an alternative option, employees could have elected, by November 30, 2021, to extend their LWOP through September 5, 2022 and maintain health coverage. Id. at 16-17. Those employees who chose to extend their LWOP and ultimately did not comply with the Vaccine Mandate Order by the end of the leave period were deemed to have voluntarily resigned. Id. In addition, the Arbitration Agreement provided that starting on December 1, 2021, DOE could unilaterally separate employees who remained out of compliance with the Vaccine Mandate and had not applied for either the extended leave or separation. Id.

Pursuant to an order issued by the Second Circuit in Kane v. DiBlasio, 19 F.4th 152, 176-177 (2d Cir. 2021), DOE employees whose requests for religious exemptions to the Vaccine Mandate had been denied were entitled to "fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel." Entitlement to "fresh consideration" was then extended to all DOE employees who had submitted reasonable accommodation requests for religious exemptions to the Vaccine Mandate. The central citywide panel ("Citywide Panel") had been created specifically in response to the DOHMH's issuance of the City's vaccine requirement in order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency.

**B.    Amendment to the DOE Vaccine Mandate**

On February 9, 2023, the Board of Health ("BOH") amended the Vaccine Mandate. Recognizing that "99% of all DOE employees [had] completed a primary series of vaccination"

4

the BOH repealed the requirement that new DOE staff provide proof of COVID-19 vaccination, and amended the requirement such that DOE staff and City employees who worked in-person in a DOE school setting, DOE building, or charter school setting were no longer required to provide proof of vaccination to the DOE. See https://www.nyc.gov/assets/doh/downloads/pdf/notice/2023/boh-order-amend-covid-vaccine-req-doe-employees.pdf (last accessed July 6, 2026).

### C.      Plaintiff's Allegations

Plaintiff alleges that she was a tenured teacher and that she had been hired by the DOE in 2012. See Am. Compl., at ¶¶ 11, 19. Plaintiff alleges that in August 2020,  she applied for a medical accommodation to work remotely due to increased risk for severe illness from COVID-19. Id. at ¶ 21. The DOE approved Plaintiff's medical accommodation, and Plaintiff  alleges that she was permitted to work remotely from September 2020 to June 2021. Id.

Plaintiff alleges that on September 10, 2021, DOE sent her an "Impact Bargaining Agreement," which was issued by Arbitrator Scheinman.[2]  Id. at ¶ 23.  Plaintiff alleges that the Impact Bargaining Agreement "created a lawless Leave Without Pay ("LWOP") that removed all [DOE] employees from their jobs involuntarily if they did not submit a COVID vaccination card to the [DOE] by October 4, 2021." Id. Plaintiff further alleges that while Arbitrator Scheinman insisted that the terms of employment for DOE employees had been changed and that the Impact Bargaining Agreement was not disciplinary, "both of [those] statements were false and part of the conspiracy of harm brought by the City and the DOE against teachers such as [her]." Id. at ¶ 24.

Plaintiff alleges that she "has not become vaccinated with a COVID-19 vaccine because she holds sincere religious beliefs that prohibit her from getting vaccinated." Id. at ¶ 35.

---

[2] Plaintiff's reference to and attachment of the "Impact Bargaining Agreement" is the same as the Arbitration Agreement referenced above.

Plaintiff submitted a religious accommodation request on September 19, 2021. See RA Request, annexed to the Damera Decl. as Exh. B. Specifically, in Plaintiff's letter in support of her religious accommodation request, Plaintiff stated that she would not submit to the COVID-19 vaccine because the "Holy Spirit [] powerfully conveyed to [her] conscience that [she] shall not accept the COVID-19 vaccine . . . [and] [i]f [she] were to go against the Holy Spirit, [she] would be sinning and endangering [her] relationship with God and violating [her] conscience." Plaintiff's letter further states that, "[d]isobeying [her] conscience is a sin [and she] cannot willingly sin against God." See RA Request, Exh. B, at 3.

Plaintiff alleges that her religious accommodation request was denied by the DOE. See Am. Compl., at ¶ 35. Plaintiff alleges that she appealed to the Scheinman Appeal Panel, and that her appeal was denied. Id. Plaintiff alleges that on October 4, 2021, she was placed on LWOP. Id. at ¶ 34. Plaintiff alleges that after she was placed on LWOP she was "inexplicably . . . never informed that she also lost her UFT membership and her insurances – Life, Car, etc." Id.

Plaintiff alleges that, on November 28, 2021, the Second Circuit found that the appeals process set forth in the Arbitration Agreement was "unconstitutional" and that the Citywide Panel was created to comply with the Second Circuit's mandate that religious accommodation requests receive "fresh consideration." Id. at ¶ 36. Plaintiff further alleges that the court's determination that the appeals process set forth in the Arbitration Agreement was "unconstitutional", "also [made] the LWOP invalid as a matter of law." Id.

Plaintiff alleges that she pursued another review of her request by appealing the denial of her request for an accommodation to the Citywide Panel. Id. at ¶ 35. Plaintiff alleges that the Citywide Panel denied her request for a religious accommodation "because of 'undue hardship'—unexplained." Id.

6

On February 20, 2022, Plaintiff signed a waiver and release with the DOE, agreeing that if "[she] [has] not returned by September 6, 2022, [she] shall be deemed to have voluntarily resigned and knowingly waive[s] [her] her rights to challenge such resignation," in "exchange for the right to return and extended health benefits." See Pl.'s Waiver and Release, annexed to the Damera Decl. as Exh. C.

Plaintiff alleges that on or about April 28, 2022, she was informed that the DOE's Office of Personnel Investigations ("OPI") had tagged her personnel file and fingerprints with a Problem code in October 2021 which, she alleges, meant she would not be able to work in any position for the DOE or any vendor because she was deemed guilty of misconduct/insubordination. Am. Compl., at ¶¶ 40-41.

Although Plaintiff alleges she was terminated, Plaintiff was deemed to have voluntarily resigned since she had not received a dose of the COVID-19 vaccine. Id. at ¶¶ 6, 41, 51, 64; Pl.'s Waiver and Release, Exh. C. Plaintiff alleges that after the Vaccine Mandate ended and vaccination was voluntary, "no one at the DOE told [her] she could re-apply for her job." Am. Comp., at ¶ 42. Plaintiff alleges that she still requested to be reinstated to her former position but that she received no reply. Id.; see also ECF Doc. No. 24, Pl.'s Exh. L. Finally, Plaintiff alleges that she filed a Notice of Claim on March 27, 2023. Am. Compl., at ¶ 43; see also Pl.'s Notice of Claim, annexed to the Damera Decl. as Exh. D.

7

**ARGUMENT**

**POINT I**

**PLAINTIFF'S SHRL AND CHRL CLAIMS MUST BE DISMISSED BECAUSE SHE FAILED TO FILE A TIMELY NOTICE OF CLAIM**

A pre-requisite under the Education Law for claims brought against the DOE pursuant to the SHRL or CHRL is that a plaintiff must file and serve a notice of claim "within ninety days after the claim arises." See Birkholz v. City of New York, 2012 U.S. Dist. LEXIS 22445, at *41 (E.D.N.Y. Feb. 17, 2012); see also Elgalad v. New York City Dep't of Educ., 2018 U.S. Dist. LEXIS 162838, at *10 (S.D.N.Y. Sept. 24, 2018) ("[i]t is well settled in the Second Circuit that Education Law § 3813(1) is a statutory condition precedent to a plaintiff's bringing of a proceeding against a school district or board of education") (citing N.Y. Educ. Law § 3813(1)). A plaintiff's failure to plead compliance the requirement of Education Law § 3813(1) is a fatal defect mandating dismissal of the action." See Elgalad, 2018 U.S. Dist. LEXIS 162838, at *10. Even though Plaintiff is proceeding pro se, courts do not have the "power to disregard a failure to comply with notice of claim requirements, even to avoid a harsh result such as dismissal of an action." See Glascoe v. Solomon, 2020 U.S. Dist. LEXIS 46930, at *27 (S.D.N.Y. March 17, 2020) (dismissing pro se plaintiff's SHRL and CHRL claims when she "failed to plead that she filed a notice of claim").

Plaintiff alleges that she filed a notice of claim on March 27, 2023. See Am. Compl., at ¶ 43. However, the most recent conduct about which Plaintiff complains in the Notice of Claim ("NOC") allegedly occurred on April 28, 2022, **eleven months before** Plaintiff filed the NOC. Plaintiff alleges that, on that date, she became aware of an email sent on February 9, 2022, regarding her "fingerprints being placed into the 'Problem Code' at the Human Resources' Office

of Personnel Investigations." See Pl.'s Notice of Claim, Exh. D. Plaintiff's claim with respect to her "fingerprints being placed" in any alleged "Problem Code," thus, arose on February 9, 2022. Since (1) Plaintiff failed to file a timely notice of claim, i.e. within ninety days of the date when her claims arose or when she alleges to have become aware of the complained-of act; and (2) Federal courts lack authority to grant Plaintiff leave to file a late notice of claim, all claims Plaintiff brings pursuant to the SHRL and CHRL must be dismissed with prejudice for failure to file a timely notice of claim. See Gomez-Kadawid v. Lee, 2023 U.S. Dist. LEXIS 102935, at *27 (S.D.N.Y. 2023).

Moreover, to the extent Plaintiff may attempt to rely on her allegation that the DOE did not respond to an alleged February 13, 2023, email (Am. Compl. at ¶ 42; ECF Doc. No. 24, Pl.'s Exh. L) as the date which starts the clock for filing a notice of claim, such reliance is improper and fails as a matter of law because Plaintiff does not include any mention of the DOE's alleged failure to respond to an email in her notice of claim. See Gahfi v. NY City Dept. of Educ., 2025 U.S. Dist. LEXIS 37633, at *8 (E.D.N.Y. 2025) ("Any claim for relief or theory of liability not directly or indirectly mentioned in the notice of claim against the municipality may not be included in subsequent lawsuits.").

## POINT II

### PLAINTIFF'S SHRL AND CHRL CLAIMS ARE TIME-BARRED

New York Education Law § 3813 has a one year statute of limitation for non-tort claims against the DOE. See N.Y. Educ. Law §§ 3813(1) and 3813(2-b); see also Amorosi v. South Colonie Ind. Cent. School Dist., 9 N.Y.3d 367, 373 (2007). Plaintiff commenced this action on December 30, 2024. Therefore, any SHRL and CHRL claims based on acts Plaintiff alleges to have occurred prior to December 30, 2023, are time-barred.

9

In the Amended Complaint, the most recent discriminatory conduct alleged is Plaintiff's claim that the DOE did not respond to an alleged February 13, 2023, email, wherein Plaintiff claims she sought reinstatement after the Vaccine Mandate was amended. See Am. Compl., at ¶ 42; see also ECF Doc. No. 24, Pl.'s Exh. L. Because Plaintiff did not commence this action within one year of the most recently-alleged conduct, her SHRL and CHRL claims are untimely and must be dismissed.

## POINT III

### PLAINTIFF'S CLAIMS ARE BARRED BY WAIVER AND RELEASE

The Amended Complaint should be dismissed because on February 20, 2022, Plaintiff voluntarily signed a waiver and release, the express terms of which bar her from bringing the claims asserted in this action. See Pl.'s Waiver and Release, Exh. C.

"Under New York law, a release is governed by principles of contract law and a court should enforce a valid release by its clear terms." Westbrooke v. Bellevue Hosp. Ctr., 2018 U.S. Dist. LEXIS 149308, at *10 (S.D.N.Y. 2018) (internal quotations omitted). Similarly federal courts have "articulated a strong policy in favor of enforcing settlement agreements and releases." Id. (internal quotations omitted) (citing Ruskay v. Waddell, 552 F.2d 392, 398 (2d Cir. 1977)). It is, therefore, "appropriate to grant a motion to dismiss on the basis of a binding release agreement where . . . the terms of the agreement are clear and unambiguous." Id. (internal quotations omitted). Furthermore, a "valid release constitutes a complete bar to an action on a claim which is the subject of the release, although a "release may be invalidated, however, for any of the traditional bases for setting aside written agreements, namely duress, illegality, fraud, or mutual mistake." Choi v. Hoyt de Leon Corp., 2023 U.S. Dist. LEXIS 155615, at *11 (E.D.N.Y. 2023). A "signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress, or some other

10

fact which will be sufficient to void the release." See Interpharm, Inc. v. Wells Fargo Bank, N.A., 655 F.3d 136, 142 (2d Cir. 2011) (quoting Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V., 17 N.Y.3d 269, 276 (2011)). Plaintiff has not met that burden.

The Waiver and Release Plaintiff signed states, in pertinent part:

> I, **ELIZABETH PARRINO**, opt to extend my leave without pay due to vaccination status through September 6, 2022. I understand that by selecting to extend such leave, I will be eligible to maintain health insurance through September 6, 2022.
>
> I understand that if I have not returned by September 6, 2022, I shall be deemed to have voluntarily resigned and knowingly waive my rights to challenge such resignation, including, but not limited to, through a contractual or statutory disciplinary process. I understand that upon the effective date of such resignation, as it relates to the DOE, I lose all entitlements to reversion, retention, and tenure.

See Pl.'s Waiver and Release. Exh. C.  The Waiver and Release further states:

> In exchange for the right to return and extended health benefits as set forth herein, I agree to waive and release the DOE and any of its present or former employees or agents (collectively the "Released Parties"), from any and all claims, liabilities, or causes of action which were or could have been asserted by me against any of the Released Parties based upon anything that has happened up to now and including the date of the execution of this Attestation, including, but not limited to, any right or claim that may exist or arise up to and including the date that this Attestation is signed.

Id. (emphasis added).

The claims Plaintiff attempts to bring arose directly from the denial of her religious accommodation request. That denial, necessarily, occurred not only prior to the date she was deemed to have voluntarily resigned, but also prior to the date she signed the Waiver and Release on February 20, 2022. By the express terms of the Waiver and Release, Plaintiff has waived the

11

right to challenge her voluntary resignation and release any and all claims against the DOE, including any claims relating to or arising out of the denial of her religious accommodation request. By accepting the benefits of this agreement—i.e., an extension of her leave without pay period, the right to return to her DOE employment, and extended health benefits through September 6, 2022—and failing to repudiate the agreement, Plaintiff ratified the contract. Plaintiff has, therefore, waived and released the claims against the DOE and the Amended Complaint must be dismissed.

**POINT IV**

**PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR RELIGIOUS DISCRIMINATION UNDER § 1983**

Plaintiff appears to allege religious discrimination under 42 U.S.C. § 1983.[3] See Am. Compl., at ¶ 61 (alleging that Defendants "unlawfully discriminat[ed] against [her] on the basis of her religion."). Discrimination claims under § 1983 are evaluated under the same standards as such claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). See Brodt v. City of NY, 4 F. Supp. 3d 562, 572 (S.D.N.Y. 2014).

To state a claim for discrimination under § 1983, a plaintiff must plead: (1) she was within a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973); see also Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). To defeat a motion to dismiss on a § 1983 discrimination claim, the facts alleged in the Amended Complaint must provide at least

---

[3] As noted in Point II, supra, any alleged religious discrimination based on Plaintiff's reasonable accommodation request is time-barred under the SHRL and CHRL.

12

minimal support for the proposition that the employer was motivated by discriminatory intent. See Cooper v. Franklin Templeton Invs., 2023 U.S. App. LEXIS 14244, at *5 (2d Cir. 2023).

As an initial matter, the Vaccine Mandate has consistently been upheld as a lawful condition of employment for employees of the DOE and City of New York ("City"). On this point, every Court that has encountered this question has held that the Vaccine Mandate is lawful condition of employment for DOE and City employees. See, e.g., Broecker v. NY City Dept. of Educ., 585 F. Supp. 3d 299, 314 (E.D.N.Y. 2022); Beickert v. NY City Dept. of Educ., 2023 U.S. Dist. LEXIS 170719, at *11 (E.D.N.Y. 2023); Vasquez v. City of NY, 2024 U.S. Dist. LEXIS 58731, at *24 (E.D.N.Y. 2024). When an employee fails to satisfy a condition of her employment, she is no longer qualified to serve as a public employee. See We The Patriots USA, Inc. v. Hochul, 17 F.4th 266 (2d Cir. 2021). By failing to comply with the Vaccine Mandate, Plaintiff failed to satisfy a condition of her employment, was no longer qualified for employment with DOE, and once her extended LWOP period was over, she was deemed to have voluntary resigned.

Furthermore, Plaintiff fails to state a claim of religious discrimination because she does not plausibly allege facts to suggest that her purported religion was a motivating factor in DOE's decision to deny her religious accommodation request or allegedly terminate her employment. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). In her Amended Complaint, Plaintiff does not allege that she was criticized in "religiously degrading terms," that "invidious comments" were made about her or others who held the same alleged religious belief, or that there was different or more favorable treatment of others who did not hold her religious beliefs. See D'Cunha v. Northwell Health Sys., 2023 U.S. Dist. LEXIS 33343, at *6 (S.D.N.Y. 2023) (quoting Littlejohn v. City of NY, 795 F.3d 297, 312 (2d Cir. 2015)). Plaintiff's conclusory allegations that she was discriminated because of her religious beliefs because she was

13

"ostracized and humiliated by her peers both inside and outside of the workplace" (Am. Compl., at ¶ 55) is insufficient to create an inference of discrimination. See Bermudez v. City of NY, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) (finding that where plaintiff does not provide any details or examples to support her allegation, it cannot be inferred from plaintiff's allegations that defendant's actions were due to race); see also Williams v. NY City Health & Hosp. Corp., 2010 U.S. Dist. LEXIS 71576, at *13-14 (E.D.N.Y. 2010).

To the extent Plaintiff seeks to raise an inference of discrimination by alleging that other teachers were treated more favorably because they were not in Plaintiff's protected group, she must allege facts that indicate she "was similarly situated in all material respects to the individuals with whom [s]he seeks to compare [her]self." See Johnson v. Andy Frain Servs., Inc., 638 F. App'x. 68, 70 (2d Cir. 2016) (quoting Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)). Plaintiff alleges that her religious accommodation request was denied, "yet other teachers similarly situated were granted exemption/accommodation for their religious beliefs which prohibited getting vaccine." See Am. Compl., at ¶ 45. This allegation is wholly conclusory because Plaintiff does not allege, as she must, a single fact to plausibly suggest that these "other teachers," including Assistant Principal ("RF"), were similarly situated in all material respects to her, and were granted an exemption or accommodation to the Vaccine Mandate. See Baker-Pacius v. Dept. of Educ., 2026 U.S. Dist. LEXIS 51413, at *27 (E.D.N.Y. Mar. 12, 2026); see also Ruiz v. Cty. Of Rockland, 609 F.3d 486, 494 (2d Cir. 2010); Mumin v City of NY, 2024 U.S. Dist. LEXIS 228994, at *32-33 (S.D.N.Y. Dec. 17, 2024). Moreover, Plaintiff's own allegation that Defendants did provide religious exemptions to others (Am. Compl., at ¶¶ 45, 50) "cuts against any reasonable inference that Defendants terminated Plaintiff or others out of a reluctance to

14

provide a religious accommodation." See Hurley v. Dept. of Educ. of the City of NY, 2025 U.S. Dist. LEXIS 188282, at *12 (E.D.N.Y. Sep. 23, 2025).

Accordingly, for the reasons set forth above, any § 1983 claims of religious discrimination must be dismissed.

**POINT V**

**PLAINTIFF FAILS TO STATE FAILURE TO ACCOMMODATE CLAIMS UNDER § 1983**

Discrimination claims under § 1983 are evaluated under the same standards as such claims under Title VII. See Brodt, 4 F. Supp. 3d at 572. To state a claim for religious discrimination based on failure to accommodate a religious belief under Title VII, Plaintiff must set forth factual allegations demonstrating that (1) she holds a bona fide religious belief that conflicts with an employment requirement; (2) she informed the DOE of her bona fide religious belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement. See Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006). If a plaintiff establishes a prima facie case, the "employer must offer the employee a reasonable accommodation, unless doing so would cause an undue hardship." See Baker at 546 (internal quotations omitted).

**A.      The DOE Could Not Have Granted Plaintiff's Request For A Religious Exemption From The Vaccine Mandate Without Enduring An Undue Hardship**

Plaintiff alleges that the DOE "failed to provide a reasonable accommodation and as a result, discriminated against plaintiff on the basis of her religion."[4] Am. Compl., at ¶ 70. Specifically, Plaintiff alleges that:

> Defendant[] had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based

---

[4] As noted in Point II, supra, any alleged religious discrimination or failure to accommodate claims based on Plaintiff's reasonable accommodation request is time-barred under the SHRL and CHRL.

15

> upon an **unconstitutional ruling that cited "undue burden"** without any further details or reason, and terminated her employment. This directly contradicts the ruling in <u>Groff v. Dejoy</u>, U.S. Supreme Court Docket 22-174, June 29, 2023.

<u>Id</u>. at ¶¶ 51, 64 (emphasis added) (citing <u>Groff v. DeJoy</u>, 600 U.S. 447, 468, 471, 472 (2023)).

Assuming, *arguendo*, that Plaintiff plausibly alleged a sincerely held religious belief (which she does not), the DOE could not have accommodated Plaintiff without suffering an undue hardship as a matter of law. In <u>Groff</u>, the Supreme Court clarified the Title VII "undue-hardship" standard for accommodating religious accommodation requests that had previously been established many years earlier in <u>TWA v. Hardison</u>, 432 U.S. 63 (1977). The Supreme Court explained that "courts must apply the [undue hardship] test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" <u>See</u> <u>Groff</u>, 600 U.S. at 470-71. The Supreme Court further explained that "courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." <u>Id</u>. at 471. As explained below, there can be little, if any, doubt that the "practical impact" of "the particular accommodation[] at issue" (exemption from the Vaccine Mandate) imposed an undue hardship on the DOE and its mission.

At the time Plaintiff submitted her request to be exempted from the Vaccine Mandate, Plaintiff was employed as a classroom teacher, specifically, and significantly, a special education teacher in a New York City public school. <u>See</u> Am. Compl., at ¶ 11; <u>see also</u> Pl.'s Waiver and Release, Exh. B; <u>Frank G. v. Bd. of Educ. of Hyde Park</u>, 459 F.3d 356, 363 (2d Cir. 2006) (explaining that the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq, requires "special education and related services tailored to meet the unique needs of a particular child.") (internal quotation marks omitted). Safety within any work environment,

16

especially an educational work environment, is of absolute importance. See N.Y. Labor Law § 27-a (DOE, as a government employer, has a duty to maintain a safe workplace). Other than requesting a blanket exemption, Plaintiff does not allege that she requested any other accommodation. However, "[e]ven if [Plaintiff] took precautions such as wearing gloves, masks, and a face shield, her presence as an unvaccinated individual would have presented a risk to the vulnerable and still primarily unvaccinated student population and other employees." See Beickert, 2023 U.S. Dist. LEXIS 170719, at *14-17; Kane v. de Blasio, 623 F. Supp. 3d 339, 363 (S.D.N.Y 2022); Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C., 2023 U.S. Dist. LEXIS 84888, at *5 n.4, *6 n.7 (S.D.N.Y. 2023). Accordingly, Plaintiff's unvaccinated presence would have constituted an undue hardship by creating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment, and warrants dismissal of Plaintiff's claims. See Beickert, 2023 U.S. Dist. LEXIS 170719, at *13-15 (finding that it was appropriate for the DOE to assert an "undue hardship" defense in connection with the DOE's rule 12(b) motion to dismiss a denial of religious accommodation claim by another special education classroom teacher); Fugelsang v. Dept. of Educ. of NY City, 2025 U.S. Dist. LEXIS 61440, at *9 (E.D.N.Y. Mar. 31, 2025); Hurley, 2025 U.S. Dist. LEXIS 188282, at *21; Beckles v. NY City Dept. of Educ., 2025 U.S. Dist. LEXIS 149503, at *5 (E.D.N.Y. Aug. 4, 2025). Contrary to Plaintiff's assertions (Am. Compl., at ¶¶ 35, 51), Defendants explained this reasoning to Plaintiff in the email it sent to her. See e.g., ECF Doc. No. 24, Pl.'s Exh. G ("DOE has demonstrated that it would be an undue hardship to grant this accommodation . . . given the need for a safe environment for in-person learning.").

**B.      Plaintiff Cannot Plausibly Allege Claims for Failure to Engage in the Interactive Process Under § 1983**

To the extent that Plaintiff asserts a claim for failure to engage in the interactive process because "Defendants never engaged in a dialogue about Plaintiff's accommodation or reassignment" (Am. Compl., at ¶ 67) to her, that claim must be dismissed because there is no independent claim for such a failure under § 1983.[5] See Sheng v. M&TBank Corp., 848 F.3d 78, 87 (2d Cir. 2017); see also Greenbaum v. NY City Tr. Auth., 2022 U.S. App. LEXIS 22589, at *15 (2d Cir. 2022); West v. Atkins, 487 U.S. 42, 48 (1988).[6]

**POINT VI**

**PLAINTIFF FAILS TO PLEAD A FIRST AMENDMENT CLAIM**

The Amended Complaint does not contain sufficient allegations to support Plaintiffs' First Amendment Free Exercise or Establishment claims and those claims should be dismissed.

**A.      Plaintiff's Free Exercise Claim is Foreclosed by Second Circuit Precedent.**

Although not entirely clear, Plaintiff appears to claim that DOE's denial of her religious accommodation request violated the Free Exercise Clause of the United States Constitution. See Am. Compl., at ¶¶ 48, 53. However, this claim is foreclosed by Second Circuit precedent, which makes clear that the "Vaccine Mandate, in all its iterations, [wa]s neutral and generally applicable," and did not violate the United States Constitution. See, e.g., We the Patriots

---

[5] As noted in Point II, supra, any failure to accommodate claims based on Plaintiff's reasonable accommodation request is time-barred under the SHRL and CHRL.

[6] There is no explicit caselaw stating that a Plaintiff cannot assert an independent claim for failure to engage in the interactive process under § 1983. However, because § 1983 claims are analyzed under the same framework as Title VII claims and there is no independent cause of action for failure to engage in the interactive process under Title VII, Plaintiff likewise cannot raise such a claim under § 1983.

USA, Inc. v. Hochul, 17 F.4th 266, 290 (2d Cir. 2021); New Yorkers for Religious Liberty, Inc. v. City of NY, 125 F.4th 319, 330 (2d Cir. 2024); Kane v. De Blasio, 19 F.4th 152, 164-167 (2d Cir. 2021).

To prevail on a Free Exercise Clause claim, a plaintiff must establish "that the object of the [challenged law] is to infringe upon or restrict practices because of their religious motivation," or that its "purpose...is the suppression of religion or religious conduct. It is not a violation of the Free Exercise Clause to enforce a generally applicable rule, policy or statute that burdens a religious practice as long as the government can 'demonstrate a rational basis for [the] enforcement' of the rule, policy or statute, and the burden is only an incidental effect, rather than the object, of the law." See Okwedy v. Molinari, 69 Fed. App'x 482, 484 (2d Cir. 2003) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)); see also Employment Div. v. Smith, 494 U.S. 872, 879 (1990).

As set forth above, the Vaccine Mandate applies equally to all DOE employees. As such, the relevant inquiry is whether there is a rational basis for the enforcement of the Mandate. That hurdle is easily met. See Coughlin v. N.Y.S. Unified Court Sys., 2023 U.S. Dist. LEXIS 192576, at *16 (E.D.N.Y. 2023). The Vaccine Mandate was "a reasonable exercise of the State's power to act to protect the public health," and, consequently, survives rational basis review. See Vasquez, 2024 U.S. Dist. LEXIS 58731, at *4. As such, Plaintiff's Free Exercise Clause claim fails and should be dismissed.

## B.    Plaintiff's Establishment Clause Claim Fails

To the extent that Plaintiff attempts to allege an Establishment Clause violation (see Am. Compl., at ¶¶ 10, 48, 53), that claim also fails. To establish such a claim, a plaintiff must plead facts suggesting the government "enact[ed] [] laws that have the 'purpose' or 'effect' of 'advancing or inhibiting religion,'" or laws that show a "'denominational preference' by preferring

19

one religion over another." <u>New Yorkers for Religious Liberty, Inc.</u>, 121 F.4th at 460 (quoting first <u>Agostini v. Felton</u>, 521 U.S. 203, 222-23 (1997); and then quoting <u>Larson v. Valente</u>, 456 U.S. 228, 244-46 (1982)).

As an initial matter, in noting that "there is a long history of vaccination requirements in this country and in [the Second] Circuit," the court in <u>Kane</u> held that the Vaccine Mandate does not violate the Establishment Clause. <u>Kane</u>, 623 F. Supp. 3d 339, 358-59 (collecting cases). Further, other than her own conclusory allegations, Plaintiff fails to plausibly plead facts suggesting that the Vaccine Mandate advanced or inhibited religion or showed preference to any particular religion. <u>See</u> <u>generally</u> Am. Compl. Indeed, the Second Circuit has determined that the processes followed by the Citywide Panel did not violate the Establishment Clause in any manner whatsoever. <u>See</u> <u>New Yorkers for Religious Liberty, Inc.</u>, 121 F.4th at 460-61. Thus, to the extent this Court determines that Plaintiff asserted an Establishment Clause claim, it must be dismissed.

## POINT VII

### PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HER EQUAL PROTECTION RIGHTS WERE VIOLATED

Plaintiff asserts an equal protection claim based on selective enforcement. <u>See</u> Am. Compl., at ¶¶ 71-76. Specifically, Plaintiff alleges that Defendants "selectively treated [her] differently from other similarly situated employees" because she was treated worse than tenured educators in New York State because "New York City was the only location in New York State which mandated vaccine or termination for public employees" and the "only place where tenured educators were suspended without pay and terminated without a 3020-a hearing." <u>Id</u>. at ¶¶ 72, 74.

"The Second Circuit has articulated two theories of equal protection based on selective enforcement." <u>Chak v. N.Y. State Dep't of Educ.</u>, 2024 U.S. Dist. LEXIS 54148, at *8 (E.D.N.Y. Mar. 26, 2024). To prevail under the first theory, commonly referred to as a *LeClair*

20

equal protection claim, Plaintiff must show that she (1) was selectively treated, when compared with others similarly situated; and (2) that such selective treatment was "motivated by an intention to discriminate on the basis of impermissible considerations such as race, religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure a person." Id. at *8-9; see also Diesel v. Town of Lewisboro, 232 F. 3d 92, 103 (2d Cir. 2000) (internal citation omitted). To prevail under the second theory, Plaintiff must show that she (1) "was intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment." See Chak, 2024 U.S. Dist. LEXIS 54148, at *10. This second theory is commonly referred to as a "class of one" equal protection claim. Id. at *8.

Plaintiff cannot prevail on either theory because, as set forth in Point IV, supra, she fails to allege any comparators who share reasonably close facts and circumstances, or an "extremely high degree" of similarity to her. See Chak, 2024 U.S. Dist. LEXIS 54148, at *11; Picinich v. N.Y.C. Dep't of Educ., 2018 U.S. Dist. LEXIS 122959, at *6 (E.D.N.Y. July 11, 2018) (a prerequisite to claims under the equal protection clause are that similarly situated individuals were treated more favorably); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Moreover, to the extent Plaintiff raises a *LeClair* equal protection claim, Plaintiff does not make any non-conclusory allegations that Defendants were motivated to punish or inhibit the exercise of her constitutional rights, or by a malicious or bad faith intent to injure her. Indeed, Plaintiff's placement on LWOP and subsequent termination were in accordance with the Arbitration Agreement. See Arbitration Agreement, Exh. A. In short, Plaintiff's allegations are nothing more than "naked assertions" which "are insufficient to survive the pleading stage." Freud v. New York City Dep't of Educ., 2022 U.S. Dist. LEXIS 54353, at *20-21 (S.D.N.Y. Mar. 25, 2022).

21

Plaintiff's "class of one" equal protection claim fails because " the 'class of one' theory does not apply in the public employment context." See Fierro v. NY City Dept. of Educ., 994 F. Supp. 2d 581, 591 (S.D.N.Y. 2014) (citing Engquist v. Oregon Dept. of Agric., 553 U.S. 591, 594 (2008); Appel v. Spiridon, 531 F.3d 138, 139 (2d Cir. 2008)). Specifically, the Supreme Court held that with respect to public employers, "the rule that people should be 'treated alike under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted [to the public employer]." See Engquist, 553 U.S. at 603. Thus, the fact that teachers outside of New York City were allegedly subject to a different process or were not subject to the Vaccine Mandate does not implicate the "class of one" theory of equal protection. See Am. Compl., at ¶ 74.

**POINT VIII**

### PLAINTIFF FAILS TO STATE A RETALIATION CLAIM[7]

Plaintiff alleges that being placed on suspension without pay, secretly charged with misconduct/insubordination, falsely informed that the terms of her employment had changed, flagged with a problem code, and not given a hearing constituted "retaliatory discrimination." See Am. Compl., at ¶ 56. To establish a prima facie case of retaliation, a plaintiff must plausibly allege that (1) she participated in a protected activity known to the defendant, (2) an adverse action was taken against her, and (3) a causal connection exists between the protected activity and the adverse action. See Bermudez, 783 F. Supp. 2d at 575. Assuming, for the purposes of this motion, that Plaintiff engaged in a protected activity when she submitted a reasonable accommodation request,

---

[7] As noted in Point II, supra, any retaliation claims based on Plaintiff's reasonable accommodation request is time-barred under the SHRL and CHRL.

22

and that she suffered adverse actions in the form of being placed on LWOP, having a "problem code" placed on her personnel file, and not being given a proper § 3020-a hearing, Plaintiff still cannot demonstrate a causal connection between her request and the alleged adverse actions.

Plaintiff concedes that, on September 10, 2021, *before she sought a religious accommodation,* that DOE sent her the Arbitration Agreement, thereby informing her that all employees would be placed on LWOP and then terminated from their jobs if they failed to comply with the Vaccine Mandate or did not receive an exemption. See Am. Compl., at ¶ 23. After Plaintiff's exemption request was denied and she refused to comply with the Vaccine Mandate, the DOE "acted in compliance with their previously announced policy." Adams v. NY State Unified Ct. Sys., 2023 U.S. Dist. LEXIS 138218, at *11 (S.D.N.Y. 2023). Plaintiff's placement on LWOP and subsequent voluntary resignation "followed ineluctably from the policy that [DOE] announced before [Plaintiff] applied for an exemption; it was neither personal to her nor based on any protected activity." Id. Because the DOE's policy was "set in motion" before Plaintiff "requested a religious accommodation," the adverse actions she complains about cannot be the basis of a retaliation claim. See id.; see also Niles v. N.Y.C. Hum. Res. Admin., 2024 U.S. Dist. LEXIS 22588, at *23 (E.D.N.Y. 2024) (being placed on leave for failing to get vaccinated, after requesting an accommodation and closely after emailing EEO a "complaint of discrimination and retaliation," did not plead retaliation because the vaccine policy was implemented prior to either protected act.).

Moreover, with respect to the "Problem Code," Plaintiff does not allege any facts that plausibly indicate that it was placed on her file because she submitted her religious accommodation requests versus some other act of misconduct that she may have committed. To the extent the "Problem Code" could be considered to be related to her religious accommodation

23

request, it, at most, simply reflects her non-compliance with the Vaccine Mandate and Plaintiff does not allege any facts to the contrary. Although Defendants contest that a "Problem Code" was placed on Plaintiff's file, any such code would be a true and accurate reflection of Plaintiff's non-compliance and simply unrelated to Plaintiff's request for a religious exemption. As a result, Plaintiff cannot plausibly allege a causal connection between the "Problem Code" and her request for a religious exemption to the Vaccine Mandate because it would have been placed on her file regardless of whether she requested a religious exemption. See Adams, 2023 U.S. Dist. LEXIS 138218, at *11 (concluding that plaintiff could not allege causation between submitting her exemption request and termination because "even if [plaintiff] had not submitted the exemption application at all, she still would have been terminated based on her failure to get vaccinated."); see also Vesterman v. NY City Dept. of Educ., 2026 U.S. App. LEXIS 15985, at *6-8 (2d Cir. June 3, 2026) (finding no stigma plus claim because plaintiff failed to alleged that the code was not for performance neutral issues like failure to satisfy a qualification).

Finally, to the extent Plaintiff alleges that the September 2021 email exchange (Pl.'s Exh. F) shows "animus and retaliatory discrimination," that argument must be rejected. See Am. Compl., at ¶ 89. Plaintiff speciously claims that these emails show that DOE "wanted any employee who submitted a religious accommodation request to be denied, terminated, [and] removed from salary" and that "Banks seemed to believe that all teachers who claimed a sincere religious belief in order to remain unvaccinated were basically lying." Id. Contrary to these assertions, the email exchange referenced and attached does not show discriminatory or retaliatory animus of any type. Instead, it shows that certain individuals within the Office of Labor Relations sought scientific findings to ensure that accommodations were being granted on accurate bases, and not for grounds which they had ample reason to believe were scientifically questionable, if not

24

downright false. Their involvement in these discussions do not in any way implicate any concerted effort to terminate tenured teachers, like Plaintiff, who requested religious exemptions.

Accordingly, Plaintiff's retaliation claim fails and should be dismissed.

### POINT IX

### PLAINTIFF FAILS TO STATE A DUE PROCESS CLAIM

Plaintiff alleges that Defendants failed to provide her with due process by depriving her of constitutional rights given to her as part of her tenure status. See Am. Compl., at ¶¶ 97-105. Specifically, Plaintiff appears to argue that she was entitled to a New York Education Law § 3020-a hearing before she was disciplined by being placed on LWOP and having a "Problem Code" placed on her file. Id. at ¶¶ 97-102..

As noted above, the Second Circuit has unequivocally held that the Vaccine Mandate was a valid, lawful "condition of employment" for DOE employees such as Plaintiff, as well as for employees of City agencies. See New Yorkers for Religious Liberty, Inc., 121 F.4th at 459; Broecker v. N.Y.C. Dep't of Educ., 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022) (holding that the COVID-19 vaccine mandate applicable to New York City Department of Education employees created a "lawful condition of employment."); Gonzalez v. City of N.Y., 2024 U.S. Dist. LEXIS 56814, at *19 (E.D.N.Y. Mar. 28, 2024) ("federal courts throughout the Second Circuit have approved vaccine mandates as a lawful condition of employment, and this Court and the Second Circuit have approved the [COVID-19] vaccine mandate"); Beickert, 2023 U.S. Dist. LEXIS 170719, at *13 (holding that "the Vaccine Mandate [is] a proper condition of employment"); Garland v. N.Y.C. Fire Dep't, 2024 U.S. App. LEXIS 2651, at *7 (2d Cir. Feb. 6, 2024); Vasquez, 2024 U.S. Dist. LEXIS 58731, at *24. As such, Plaintiff was not entitled to a hearing, pursuant to New York Education Law § 3020-a. Dismissal or placement on LWOP for

25

failure to comply with the Vaccine Mandate was not disciplinary. Rather, non-compliance with the Vaccine Mandate constituted a failure to satisfy a "condition of employment" that did not implicate New York Education Law § 3020-a. See Trabacchi v. Dep't of Educ., 2026 U.S. Dist. LEXIS 93563, at *21-22 (E.D.N.Y. Apr. 28, 2026).

Although not specifically pled, there is simply no question that the Vaccine Mandate "provided constitutionally sufficient due process to New York City employees who were placed on LWOP status or terminated." Trabacchi, 2026 U.S. Dist. LEXIS 93563, at *19. As the Broecker court held, the pre-deprivation and post-deprivation process DOE plaintiffs have been afforded upon being placed on LWOP and subsequently being terminated were, and remain, constitutionally adequate. See Broecker v N.Y. City Dept. of Educ., 573 F. Supp. 3d 878, 888 (E.D.N.Y. 2021).

Finally, to the extent Plaintiff alleges a stigma plus claim (Am. Compl., at ¶ 57), such a claim fails as a matter of law because "[a]n Article 78 proceeding provides the requisite post-deprivation process—even if [a plaintiff] failed to pursue it." See Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011). Moreover, Plaintiff's stigma-plus claim fails because she does not plausibly allege that (1) the purported problem code is "anything other than an accurate reflection of her noncompliance with the Vaccine Mandate," (2) that a problem code is "exclusively" used to denote misconduct or incompetence and not also for "performance- neutral issues, like an employee's failure to satisfy a qualification of employment related to job performance," and (3) the alleged problem code made her "ineligible to continue in the education field" outside of the DOE. See Vesterman, 2026 U.S. App. LEXIS 15985, at *6-8. Accordingly, the Court should dismiss any stigma-plus claim.

26

**POINT X**

<u>PLAINTIFF FAILS TO STATE A MONELL
CLAIM</u>

For the reasons set forth above, Plaintiff's <u>Monell</u> claim must also be dismissed. To maintain a § 1983 action against a municipality, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." <u>See</u> <u>Bermudez</u>, 783 F. Supp. 2d at 575. To state a claim for municipal liability pursuant to <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658 (1978), a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." <u>See</u> <u>Simms v. City of New York</u>, 480 F. App'x 627, 629 (2d Cir. 2012) (citation and internal quotation marks omitted).

In this case, for the reasons articulated above and in Points VI, VII, and IX, <u>supra</u>, Plaintiff has failed to show that her First, Fifth, or Fourteenth Amendment rights were violated and, therefore, any derivative <u>Monell</u> claim should be dismissed. <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be Monell liability); <u>Martinez v. City of New York</u>, No. 06 CV 5671 (WHP), 2008 U.S. Dist. LEXIS 49023, at *12 (S.D.N.Y. June 27, 2008) ("[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), <u>aff'd sub nom</u>, <u>Martinez v. Muentes</u>, 340 F. App'x 700 (2d Cir. 2009). Accordingly, Plaintiff's <u>Monell</u> claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their motion to dismiss the Amended Complaint in its entirety with prejudice and deny the relief requested therein, together with costs, and grant such other and further relief as this Court deems just and proper.

Dated:          New York, New York
                July 10, 2026


                                        **STEVEN BANKS**
                                        Corporation Counsel of the City of New York
                                        Attorney for Defendant
                                        100 Church Street, Room 2-197
                                        New York, New York 10007
                                        (212) 356-2444


                                        By:     /s/  *Shivani Damera*
                                                _____
                                                Shivani R. Damera
                                                Assistant Corporation Counsel

28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

ELIZABETH PARRINO,                                          24-CV-08892 (AMD) (JRC)

                                        Plaintiff,

              -against-

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK, MELISSA AVILES- RAMOS,
Chancellor and KATHERINE RODI, Director of Employee
Relations,

                                        Defendants.

------------------------------------------------------------------------ X


      **Shivani R. Damera**, an attorney duly admitted to practice before the United States

District Court for the Eastern District of New York, certifies pursuant to Local Civil Rule 7.1(c)

of the Local Rules of the United States District Courts for the Southern and Eastern Districts of

New York, that the total number of words in the Memorandum of Law in Support of Defendants'

Motion to Dismiss the Amended Complaint, exclusive of the cover page, captions, table of

authorities, table of contents, and signature block, is 8,527 words, according to the "Word Count"

function of Microsoft Word, the word-processing system used to prepare the document. Thus, the

document complies with the word count limit of no more than 8,750 words set forth in Rule 7.1(c).


Dated:          New York, New York
                July 10, 2026


                                        /s/   *Shivani Damera*
                                        Shivani R. Damera
                                        Assistant Corporation Counsel


29